Carolyn Hunt Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com

Attorneys for Plaintiffs, the Collective and
Putative Class

*Additional Counsel on the following page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIDERO SOTO and STEVEN STRICKLEN, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>O.C. COMMUNICATIONS, INC.;<br><br>          Defendant. | Case No.: 3:17-cv-00251-VC<br><br>**NOTICE OF MOTION AND PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(b)**<br><br>Date:   August 31, 2017<br>Time:   10:00 a.m.<br>Ctrm.:  4<br><br>Filed: January 18, 2017<br>Judge: Vince Chhabria |

Shanon J. Carson (*pro hac vice*)
Sarah R. Schalman-Bergen (*pro hac vice*)
Camille Fundora (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel:  (215) 875-3000
Fax:  (215) 875-4604


Attorneys for Plaintiffs, the Collective
and Putative Class

1  TO ALL PARTIES AND ATTORNEYS OF RECORD:

2        NOTICE IS HEREBY GIVEN that on August 31, 2017 at 10:00 a.m. in Courtroom 4

3  before Judge Vince Chhabria of the United States District Court, Northern District of California,

4  Plaintiffs Desidero Soto and Steven Stricklen ("Plaintiffs") move the Court, pursuant to 29 U.S.C.

5  § 216(b) of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), for conditional

6  certification to proceed as a collective action and facilitate notice ("Section 216(b) Motion").

7        This Section 216(b) Motion is based on this notice, the following supporting authority and

8  arguments, the Declaration of Carolyn H. Cottrell in Support of Plaintiffs' Motion for Conditional

9  Certification and to Facilitate Notice Under 29 U.S.C. § 216(b) ("Cottrell Decl."), the declarations

10  of the two named Plaintiffs who have opted in to this case, and the declarations of opt-in Plaintiffs

11  Andre Holmes Carlos Rios, Trever Tranberg, Jacky Charles, Steeve Fondrose, Mohammed Idress,

12  Mike Pfeffer, and Pedro Vieira, and the deposition testimony of O.C. Communications, Inc.'s Rule

13  30(b)(6) corporate representative, Chief Operating Officer, Larry Wray.

14        Accompanying this motion are also: (1) Plaintiffs' Proposed Order Granting Plaintiffs'

15  Motion for Conditional Class Certification and to Facilitate Notice under 29 U.S.C. § 216(b); (2)

16  Plaintiffs' Proposed Notice of Collective Action Lawsuit; and (3) Plaintiffs' Proposed Opt-in

17  Consent Form.

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………………………... 1

II.     FACTUAL BACKGROUND…………………………………………………… 3

    A.   OCC and Its Technician Employees. ....................................................................... 3

    B.   Working as an OCC Technician.............................................................................. 4

    C.   OCC's Technician Compensation Model................................................................. 8

III.   ARGUMENT……………………………………………………………………... 12

    A.   The FLSA Permits Collective Actions to Prohibit Unlawful Labor Practices............... 12

    B.   Collective Action Certification is a Two-Stage Process. ........................................... 14

    C.   This Case Should Be Conditionally Certified Because Plaintiffs Satisfy the "Similarly Situated" Standard................................................................................................. 15

        1.     Collective Members Have Similar Job Duties, Responsibilities, Work Hours, and Compensation......................................................................16

        2.     OCC Uniformly Victimizes Collective Members in the Same Way. ...................17

        3.     Similar Cases Have Been Certified. ....................................................19

    D.   Notice is Appropriate and Necessary to Protect Collective Members' Rights. ............. 20

    E.   The Statute of Limitations Should Be Tolled for Collective Members. ........................ 21

IV.   CONCLUSION…………………………………………………………………….. 22

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Federal Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*

242 F.R.D. 530 (N.D. Cal. 2007)..................................................................15, 20, 21

*Balarezo v. NTH Connect Telcom, Inc.*

No. C 07-5243 JF (PVT), 2008 WL 1944116 (N.D. Cal. 2008). ................................19

*Beasley v. Custom Commc'ns, Inc.*,

No. 5:15-CV-583-F, 2016 WL 5468255 (E.D.N.C. Sept. 28, 2016)...........................20

*Bonner v. SFO Shuttle Bus Co.*

No. C13–1606 THE, 2013 WL 6139758 (N.D. Cal. 2013)....................................13, 14

*Brewer v. Gen. Nutrition Corp.*

No. 11–CV–03587 YGR, 2013 WL 100195 (N.D. Cal. 2013) ...............................13, 14

*Brown v. Permanente Med. Grp.*

2017 WL 1536493 (N.D. Cal. 2017) ......................................................13, 15, 16, 20

*Daniels v. Aeropostale W., Inc.*

No. C 12-05755 WHA, 2013 WL 1758891 (N.D. Cal. 2013)................................13, 14

*Escobar v. Whiteside Const. Corp.*

No. C 08-01120 WHA, 2008 WL 3915715 (N.D. Cal. 2008)...........................13, 15, 19

*Flores v. Velocity Exp., Inc.*

No. 12–cv–05790–JST, 2013 WL 2468362 (N.D. Cal. 2013) ...............................13, 14

*Gomez v. H.R. Gunland Ranches, Inc.*

No. CV F 10–1163 LJO MJS, 2010 WL 5232973 (E.D. Cal. 2010)...........................19

*Gounev v. Delta Mech., Inc.*

2015 WL 116587119 (S.D. Cal. 2015)....................................................................19

*Guilbaud v. Sprint/United Mgmt. Co., Inc.*

2014 WL 10676582 (N.D. Cal. 2014) ................................................................passim

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

*Harris v. Vector Mktg. Corp.*

  716 F. Supp. 2d 835 (N.D. Cal. 2010) ....................................................... 13, 14, 15, 16

*Hill v. RL Carriers, Inc.*

  690 F. Supp. 2d 1001(N.D. Cal. 2010) ........................................................... 12, 14, 15

*Hoffman-La Roche, Inc., v. Sperling*

  493 U.S. 165 (1989) ...................................................................................... 13, 14, 20

*Jason v. Falcon Data Com, Inc.*

  No. 09-cv-03990 (JG)(ALC), 2011 WL 2837488 (E.D.N.Y. 2011) ........................................... 20

*Joiner v. Groupware Int'l, Inc.*

  No. 8:09–cv–1943–T–26MAP, 2010 WL 2136533 (M.D. Fla. 2010) ........................................... 20

*Leuthold v. Destination Am.*

  224 F.R.D. 462 (N.D. Cal. 2004) .................................................................................. 15

*Lewis v. Wells Fargo & Co.*

  669 F. Supp. 2d 1124 (N.D. Cal. 2009) ................................................................ 13, 14, 15

*Luque v. AT&T Corp.*

  No. C 09–05885 CRB, 2010 WL 4807088 (N.D. Cal. 2010) ........................................................ 13, 14

*Luviano v. Multi Cable, Inc.*

  No. 2:15-cv-05592-BRO (FFM) (C.D. Cal. 2013) ........................................................................ 19

*Misra v. Decision One Mortg. Co., LLC*

  673 F. Supp. 2d 987 (C.D. Cal. 2008) ........................................................................................ 16

*Ramirez v. Ghilotti Bros. Inc.*

  941 F. Supp. 2d 1197 (N.D. Cal. 2013) ................................................................ 12, 13, 14, 15

*Rother v. Lupenko*

  515 Fed. Appx. 672 (9th Cir. 2013) ............................................................................................ 12

*Shaia v. Harvest Mgmt. Sub LLC*

  306 F.R.D. 268 (N.D. Cal. 2015) ................................................................................................ 14

*Taylor v. Bear Commc'ns, LLC*

   No. 4:12–CV–01261–BCW, 2013 WL 3270971 (W.D. Mo. 2013) ................................ 19

*Tennessee Coal Iron & R. Co., v. Muscoda Local No. 123*

   321 U.S. 590 (1944) ................................................................................................................ 12

*Williams v. Grayco Cable Servs., Inc.*

   187 F. Supp. 3d 760 (S.D. Tex. 2016) ................................................................................ 19

*Wren v. RGIS Inventory Specialists*

   2007 WL 4532218 (N.D. Cal. 2007) .................................................................................. 15

*Zaborowski v. MHN Gov't Servs., Inc.*

   2013 WL 1787154 (N.D. Cal. 2013) .......................................................................... 13, 14

**Federal Statutes**

29 U.S.C. §§ 215(a)(5) ................................................................................................................ 13

29 C.F.R. § 516.2(a)(7) .............................................................................................................. 13

29 C.F.R. § 531.35 ...................................................................................................................... 18

29 C.F.R. § 790.21(b)(2) ...................................................................................................... 14, 21

29 C.F.R. §§ 785.18 .................................................................................................................... 12

29 C.F.R. §§ 785.19(a) ............................................................................................................... 12

29 U.S.C. § 202(a)(b) ................................................................................................................. 12

29 U.S.C. § 206 .......................................................................................................................... 18

29 U.S.C. § 207 (g) .................................................................................................................... 18

29 U.S.C. § 207(a) ................................................................................................................ 12, 18

29 U.S.C. § 211(c) ...................................................................................................................... 19

29 U.S.C. § 216(b) ................................................................................................................. 2, 13

29 U.S.C. §§ 206 ........................................................................................................................ 12

29 U.S.C. §§ 207(a)(1) ............................................................................................................... 12

29 U.S.C. §§ 211(c) .................................................................................................................... 13

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

**State Statutes**

Cal. Lab. Code § 226 ........................................................................................................17

**Other Authorities**

DANIEL C. LOPEZ, *Collective Confusion: Flsa Collective Actions*

*Rule 23 Class Actions, and the Rules Enabling Act*

61 HASTINGS L.J. 275(2009) ...........................................................................................2

The Fair Labor Standards Act 3-9

(Ellen C. Kearns et al. eds., 1999)

H.R. Rep. No. 75-2182 (1937) ..........................................................................................2

# I.    __INTRODUCTION__

Plaintiffs and proposed Collective members are former and current non-exempt employees of Defendant O.C. Communications, Inc. ("OCC").  OCC is a national fulfillment contractor for low-voltage installations, providing cable and communication equipment installations on behalf of cable operators throughout the United States.  Plaintiffs and proposed Collective members worked for OCC as Technicians and carried out OCC's installation service business.

This lawsuit concerns OCC's violation of Federal and California labor laws.  Throughout the relevant time period, OCC eschewed its obligations under the FLSA by not paying Plaintiffs and proposed Collective members proper wages, including minimum and overtime wages. Specifically: (1) OCC caps the amount of time for which it compensates Technicians on a given activity, including but not limited to specific job tasks as well as drive time, regardless of how long the activity *in fact* takes; (2)   OCC pressures Technicians to underreport the amount of time worked, instructs Technicians to alter their time cards to underreport their hours, and manipulates time cards to decrease the amount of minimum and overtime wages due; (3) OCC unilaterally deletes piece-rate codes submitted by Technicians, even when the task was completed; (4) OCC unilaterally changes code entries for piece rates to lower-paying piece rates; (5) OCC instructs Technicians not to enter piece rates for job tasks that were completed; (6) OCC requires Technicians to deduct a thirty-minute meal period from their hours, even when OCC knows the Technicians do not, and by virtue of their schedules could not, take a meal period; (7) OCC fails to provide and otherwise denies Technicians the opportunity to take meal and rest breaks, and fails to pay premium pay for missed meal and rest breaks; and (8) OCC requires Technicians to incur significant expenses for OCC's sole benefit, resulting in unlawful kickbacks to OCC that reduces Technicians' minimum and overtime wages. OCC further fails to maintain proper time records of such work, thereby violating the FLSA's record-keeping requirements.

Plaintiffs now seek conditional certification of this collective action.  Plaintiffs also seek Court-facilitated notice so that other similarly situated employees may "opt in" to this lawsuit.  This case is ideally suited for collective action.  It involves modest, hourly wage earners who do not have

the means to individually challenge their employer's compensation policies. OCC's Technicians are the kind of workers that the FLSA was designed to protect.[1] Specifically, Plaintiffs seek to notify:

> All current and former non-exempt hourly employees of OCC working as Technicians throughout the United States from January 18, 2014, until the resolution of this action (the "Collective").

To date, 170 potential Opt-In Plaintiffs have already submitted consent forms to join the lawsuit. Dkt. Nos. 1, 8-11, 13-22, 24-28, 30, 34-38, 48, 51, 54, 61-63, 65-66, 69-71, 74-97, 99, 101-104. These proposed Collective members are similarly situated because they: (1) have similar job positions and requirements; (2) are subject to similar employment terms; and (3) are subject to OCC's common policies and practices, regardless of geographic laction, as described herein, that violate the FLSA.

Under the FLSA, individuals may bring collective actions on behalf of all others "similarly situated." 29 U.S.C. § 216(b). Courts grant conditional certification for court-facilitated notice based upon the pleadings and limited evidence showing a common illegal policy. Plaintiffs meet this lenient standard with the detailed allegations in the Collective and Class Action Complaint ("Complaint"),[2] the declarations of the two named Plaintiffs, the declarations of 8 additional opt-in Plaintiffs,[3] the declaration of Carolyn H. Cottrell, and the deposition testimony of OCC's Rule 30(b)(6) corporate designee, Chief Operations Officer, Larry Wray.

Thousands of other employees may be eligible to join this Collective action. Because there are many other workers who may not be aware of this lawsuit and their right to proceed in this forum, Plaintiffs respectfully request that the Court conditionally certify the proposed Collective, direct notice to be sent to the proposed Collective members, and toll the statute of limitations to May 18, 2017 to preserve all claims.

---

[1] *See* DANIEL C. LOPEZ, *Collective Confusion: Flsa Collective Actions, Rule 23 Class Actions, and the Rules Enabling Act,* 61 HASTINGS L.J. 275, 281(2009) (citing The Fair Labor Standards Act 3-9 (Ellen C. Kearns et al. eds., 1999) and H.R. Rep. No. 75-2182, at 6 (1937)) ("It was believed that a nationwide statutory floor was needed to ensure humane working conditions for workers on the lowest rung of the socio-economic ladder and that state laws would be toothless without this federal floor. Large employers would suppress wages, lower the price of their goods, and ultimately find a market for those cheap goods in states that attempted to maintain high labor standards.").
[2] *See* ECF 1.

## II. **FACTUAL BACKGROUND**

### A. **OCC and Its Technician Employees.**

OCC is a national fulfillment contractor for low-voltage installations, providing cable and communication equipment installations on behalf of cable operators throughout the United States.[4] To carry out its installation services, OCC employs "Technicians" – individuals who are classified as non-exempt and compensated on a hybrid hourly and piece rate basis.[5] Technicians' job duties, working hours and conditions, as well as OCC's compensation model, are the same or substantially similar across the United States.[6]

Technicians' duties include but are not limited to: driving to customers; installing cable, telephone, and internet service; making repairs; troubleshooting; and educating customers.[7] Plaintiffs Desidero Soto and Steven Stricklen worked as Technicians for OCC between 2014 and 2016.[8] To perform these basic job duties, Technicians must purchase their own tools, such as a wireless drill,

---

[4] *See* Pl.s' Compl., ¶ 20; Declaration of Steven Stricklen ("Stricklen Decl."), ¶ 6; Declaration of Carlos Rios ("Rios Decl."), ¶ 6; Declaration of Desidero Soto ("Soto Decl."), ¶ 7; Declaration of Andre Holmes ("Holmes Decl."), ¶¶ 5; Declaration of Trever Tranberg ("Tranberg Decl."), ¶ 2; Declaration of Jacky Charles ("Charles Decl."), ¶ 6; Declaration of Steeve Fondrose ("Fondrose Decl."), ¶ 6; Declaration of Mohammed Idress ("Idress Decl."), ¶ 6; Declaration of Mike Pfeffer ("Pfeffer Decl."), ¶ 6; Declaration of Pedro Vieira ("Vieira Decl."), ¶ 6; Deposition Transcript of Defendant's Person Most Knowledgeable, Larry Wray ("Wray Depo Tr.") at 16:4-17:1.

[5] *See* Pl.s' Compl., ¶¶ 21-22, 24; Stricklen Decl., ¶¶ 5, 20-24, 26; Rios Decl., ¶¶ 4, 17-19; Soto Decl., ¶¶ 5, 22; Holmes Decl., ¶¶ 2-3, 6-10; Tranberg Decl., ¶¶ 5, 18-20; Charles Decl., ¶¶ 4, 20-26; Fondrose Decl., ¶¶ 4, 20-24; Idress Decl., ¶¶ 4, 19-22, 25; Pfeffer Decl., ¶¶4, 11-14, 17; Vieira Decl., ¶¶ 4, 22-28; Wray Depo Tr. at 172:10-12.

[6] *See* Pl.s' Compl., ¶ 21; Stricklen Decl., ¶¶ 7, 8; Rios Decl., ¶¶ 7, 8; Soto Decl., ¶¶ 8, 9; Holmes Decl., ¶¶ 5, 11; Tranberg Decl., ¶¶ 7; Charles Decl., ¶¶ 7, 9; Fondrose Decl., ¶¶ 7, 8; Idress Decl., ¶¶ 7, 8; Pfeffer Decl., ¶ 7, 8; Vieira Decl., ¶¶ 7, 8; Wray Depo Tr. at 65:14-19; 74:18-76:2; 79:9-80:24; 134:9-17; 171:12-172:12.

[7] *See* Pl.s' Compl., ¶ 21; Stricklen Decl., ¶ 7; Rios Decl., ¶ 7; Soto Decl., ¶ 8; Holmes Decl., ¶ 5; Tranberg Decl., ¶ 7; Charles Decl., ¶ 7; Fondrose Decl., ¶ 7; Idress Decl., ¶ 7; Pfeffer Decl., ¶ 7; Vieira Decl., ¶ 7; Wray Depo Tr. at 171:12-172:12.

[8] *See* Pl.s' Compl., ¶ 23; Stricklen Decl., ¶¶ 2-3; Soto Decl., ¶¶ 3-4.

---

drill bits, pliers, screwdrivers, staple guns, nails, splitters, net gear, many types of cable, gasoline for

trucks, boots and pants.[9]

### B.  Working as an OCC Technician.

Technicians' workdays begin early; typically between 6:00 a.m. and 7:00  a.m.[10] At this time,

Technicians report to an OCC warehouse, where they gather equipment for the day.[11] If Technicians

do not have enough equipment on hand, they wait in line with the other Technicians to

gather additional equipment from the warehouse.[12] Technicians are not compensated for this pre-

shift activity.[13]

Similarly, two to six days per week, Technicians are required to report to the warehouse one

hour before their usual start time so that OCC can perform an inventory of their vehicles.[14] At this

time, Technicians would  be  required  to  pick  up  additional  equipment  OCC  deemed  necessary.[15]

---

[9] *See* Pl.s' Compl., ¶ 39; Stricklen Decl., ¶¶ 24-25; Rios Decl., ¶ 20; Soto Decl., ¶ 26; Holmes Decl., ¶¶ 30-32; Tranberg Decl., ¶ 29; Charles Decl., ¶ 27; Fondrose Decl., ¶ 25; Idress Decl., ¶ 23; Pfeffer Decl., ¶ 22; Vieira Decl., ¶ 20.

[10] *See* Pl.s' Compl., ¶ 25; Stricklen Decl., ¶ 8; Rios Decl., ¶ 9; Soto Decl., ¶ 9; Holmes Decl., ¶ 11; Tranberg  Decl., ¶ 8; Charles Decl., ¶ 9; Fondrose Decl., ¶ 8; Idress Decl., ¶ 8; Pfeffer Decl., ¶ 8; Vieira Decl., ¶ 8.

[11] *See* Pl.s' Compl., ¶ 29; Stricklen Decl., ¶ 8; Rios Decl., ¶¶ 9-10; Soto Decl., ¶ 9; Holmes Decl., ¶ 11; Tranberg  Decl., ¶ 8; Charles Decl., ¶ 9; Fondrose Decl., ¶ 8; Idress Decl., ¶ 8; Pfeffer Decl., ¶ 8; Vieira Decl., ¶ 8.

[12] *See* Pl.s' Compl., ¶ 29; Stricklen Decl., ¶8; Rios Decl., ¶¶ 9-10; Soto Decl., ¶ 16; Holmes Decl., ¶ 11; Tranberg  Decl., ¶ 8; Charles Decl., ¶ 10; Fondrose Decl., ¶ 9; Idress Decl., ¶ 9; Pfeffer Decl., ¶ 8; Vieira Decl., ¶ 9.

[13] *Id.*

[14] Stricklen Decl., ¶ 8; Rios Decl., ¶ 10; Soto Decl., ¶ 16; Holmes Decl., ¶ 20; Charles Decl., ¶ 10; Fondrose Decl., ¶ 9; Idress Decl., ¶ 9; Pfeffer Decl., ¶ 8; Vieira Decl., ¶ 9.

[15] Stricklen Decl., ¶ 8; Rios Decl., ¶ 10; Soto Decl., ¶ 16; Holmes Decl., ¶ 20; Charles Decl., ¶ 10; Fondrose Decl., ¶ 9; Idress Decl., ¶ 9; Pfeffer Decl., ¶ 8; Vieira Decl., ¶ 9.

4

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

Technicians are not compensated for this pre-shift activity.[16]

Once all uncompensated pre-shift activity is completed, Technicians receive their job assignments for the day – typically around 7:00 a.m.[17] Technicians are generally assigned seven to eight jobs per day.[18] Each job entails one or more tasks, *e.g.*, installing a cable, setting up internet service, and/or creating an electrical outlet.[19]

For each discrete task, OCC provides Technicians with a corresponding code.[20] Each code equals a set dollar amount.[21] Throughout the day, and for each job, Technicians document and submit these codes to OCC as they are completed, so they can be compensated accordingly.[22] OCC, however, routinely deletes codes that Technicians have submitted for completed job tasks.[23] OCC also changes code entries to lower paying codes.[24] OCC also pressures Technicians to not submit

---

[16] *See* Pls.' Compl., ¶ 28, 29; Stricklen Decl., ¶ 8; Rios Decl., ¶ 10; Soto Decl., ¶ 16; Holmes Decl., ¶ 20; Charles Decl., ¶ 10; Fondrose Decl., ¶ 9; Idress Decl., ¶ 9; Pfeffer Decl., ¶ 8; Vieira Decl., ¶ 9.

[17] Stricklen Decl., ¶ 9; Soto Decl., ¶ 10; Holmes Decl., ¶ 12; Tranberg Decl., ¶ 9; Charles Decl., ¶ 11; Fondrose Decl., ¶ 11; Idress Decl., ¶ 11; Pfeffer Decl., ¶ 10; Vieira Decl., ¶ 10.

[18] Stricklen Decl., ¶ 10; Rios Decl., ¶ 11; Soto Decl., ¶ 11; Holmes Decl., ¶ 13; Tranberg Decl., ¶ 10; Charles Decl., ¶ 12; Fondrose Decl., ¶ 12; Idress Decl., ¶ 12; Pfeffer Decl., ¶ 10; Vieira Decl., ¶ 11.

[19] *See* Declaration of Carolyn H. Cottrell, Ex. B.

[20] *Id.*

[21] *Id.*

[22] Stricklen Decl., ¶ 21; Rios Decl., ¶ 17; Soto Decl., ¶ 22; Holmes Decl., ¶ 7; Tranberg Decl., ¶ 18; Charles Decl., ¶ 21; Fondrose Decl., ¶ 21; Idress Decl., ¶ 19; Pfeffer Decl., ¶ 17; Vieira Decl., ¶ 23.

[23] Stricklen Decl., ¶ 23; Rios Decl., ¶ 17; Soto Decl., ¶ 23; Holmes Decl., ¶ 9; Tranberg Decl., ¶ 33; Charles Decl., ¶ 25; Fondrose Decl., ¶ 22; Idress Decl., ¶ 20; Pfeffer Decl., ¶ 18; Vieira Decl., ¶25.

[24] Stricklen Decl., ¶ 23; Rios Decl., ¶ 17; Soto Decl., ¶ 23; Holmes Decl., ¶ 9; Tranberg Decl., ¶ 18; Charles Decl., ¶ 25; Fondrose Decl., ¶ 22; Idress Decl., ¶ 20; Pfeffer Decl., ¶ 18; Vieira Decl., ¶25; Wray Depo Tr. at 57:19-58:5 ("Denae Hefley does what we call our payroll and billing . . . So her group is the one that takes all the time cards, work orders, that sort of thing, *corrects them*, puts them into our programs.") (emphasis added); *see also id.* at 72:16-74:2; 99:24-101:4; 103:3-16.

5

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

code entries for tasks they completed.[25] Indeed, a former Technician supervisor declares he would delete piece rate codes completed by Technicians, pursuant to OCC's express instructions.[26]

Once a Technician completes one job, they drive to their next job. The drive time often takes over thirty minutes, and can take up to an hour.[27] OCC, however, instructs Technicians to underreport their drive time, often limiting Technicians to report ten minutes of drive time.[28]

Most jobs take between one and four hours to complete, however, some jobs can take an entire day.[29] Moreover, throughout the day, Technicians receive instructions from supervisors to assist other Technicians in the field, adding even more work to their daily schedule.[30]

This work schedule requires Technicians to work long hours. Technicians typically work five to six days per week, ten to sixteen hours per day, and between fifty and one-hundred hours per week.[31]  Much of this time, however, goes unreported or is outright eliminated from Technicians' compensation.  OCC systematically pressures Technicians to underreport their hours, and threatens

---

[25] Stricklen Decl., ¶ 23; Rios Decl., ¶ 17; Soto Decl., ¶ 23; Holmes Decl., ¶ 9; Charles Decl., ¶ 25; Fondrose Decl., ¶ 22; Idress Decl., ¶ 20; Pfeffer Decl., ¶ 18; Vieira Decl., ¶ 25.

[26] Fondrose Decl., ¶ 30.

[27] Stricklen Decl., ¶ 12; Rios Decl., ¶ 12; Soto Decl., ¶ 12; Holmes Decl., ¶ 15; Tranberg Decl., ¶ 12; Charles Decl., ¶ 13; Fondrose Decl., ¶ 13; Idress Decl., ¶ 13; Pfeffer Decl., ¶ 11; Vieira Decl., ¶ 13.

[28] Stricklen Decl., ¶ 12; Rios Decl., ¶ 12; Soto Decl., ¶ 12; Holmes Decl., ¶ 15; Charles Decl., ¶ 13; Fondrose Decl., ¶ 13; Idress Decl., ¶ 13; Pfeffer Decl., ¶ 11; Vieira Decl., ¶ 13.

[29] Stricklen Decl., ¶ 11; Rios Decl., ¶ 11; Soto Decl., ¶ 11; Holmes Decl., ¶ 15; Tranberg Decl., ¶ 11; Charles Decl., ¶ 12; Fondrose Decl., ¶ 12; Idress Decl., ¶ 12; Pfeffer Decl., ¶ 10; Vieira Decl., ¶ 11.

[30] Stricklen Decl., ¶ 13; Soto Decl., ¶ 13; Holmes Decl., ¶ 17; Tranberg Decl., ¶¶ 14, 37; Charles Decl., ¶¶ 14, 25; Fondrose Decl., ¶ 14, 22, 35; Idress Decl., ¶¶ 14, 20; Pfeffer Decl., ¶ 10; Vieira Decl., ¶¶ 12, 25.

[31] See Pl.s' Compl., ¶¶ 25-26, 28; Stricklen Decl., ¶ 15; Rios Decl., ¶ 8; Soto Decl., ¶ 30; Holmes Decl., ¶ 21; Tranberg Decl., ¶ 17; Charles Decl., ¶ 8; Fondrose Decl., ¶ 17; Idress Decl., ¶ 16; Pfeffer Decl., ¶ 13; Vieira Decl., ¶ 16.

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

1  to – and in fact does – unilaterally change Technician time records.[32] Indeed, during meetings with

2  OCC's Chief Operating Officer, Larry Wray, and OCC's director of operations for the entire State of

3  Florida, Technician Supervisors were explicitly instructed to reduce Technicians' hours.[33]

4     Consider, for example, the manner in which Technicians' days typically conclude.

5  Technicians often find themselves working near or after 9:00 p.m.[34] At 9:00 p.m., OCC's warehouses

6  close.[35] If Technicians finish their work before 9:00 p.m., they are required to drive back to the

7  warehouse and drop off equipment.[36] Technicians are told not to write down this last leg of drive

8  time, and in fact, are not compensated for this drive time.[37] And even if Technicians finish working

9  after 9:00 p.m. – and thus, go home as opposed to the warehouse – OCC routinely instructs

10  Technicians to report that they stopped working several hours earlier than they actually did – often

11  between 6:00 p.m. and 7:30 p.m.[38]

12     As a natural consequence of Technicians' overwhelming workload, and OCC's constant

13  pressure to complete all daily job assignments, they are systematically denied the opportunity to take

14

15

---

16  [32] Stricklen Decl., ¶ 24; Rios Decl., ¶ 19; Soto Decl., ¶ 25; Holmes Decl., ¶ 15; Tranberg Decl., ¶ 19;
17  Charles Decl., ¶¶ 24, 26; Fondrose Decl., ¶¶ 23-24; Idress Decl., ¶¶ 21-22; Pfeffer Decl., ¶¶ 19-20;
   Vieira Decl., ¶¶ 26-27.

18  [33] *See* Wray Depo Tr. at 8:7-12, 32:12-24; Fondrose Decl. ¶¶ 36-40; Tranberg Decl., ¶¶ 38-39.

19
20  [34] Stricklen Decl., ¶ 14; Rios Decl., ¶ 9; Soto Decl., ¶ 14; Holmes Decl., ¶ 18; Tranberg Decl., ¶ 15;
   Charles Decl., ¶ 15; Fondrose Decl., ¶ 15; Idress Decl., ¶ 15; Pfeffer Decl., ¶ 12; Vieira Decl., ¶ 15.

21  [35] Soto Decl., ¶ 14; Holmes Decl., ¶ 19; Tranberg Decl., ¶ 15.

22
23  [36] Stricklen Decl., ¶ 14; Soto Decl., ¶ 14; Holmes Decl., ¶ 19; Tranberg Decl., ¶¶ 15-16; Charles
   Decl., ¶ 15; Fondrose Decl., ¶ 15; Idress Decl., ¶15; Pfeffer Decl., ¶ 12; Vieira Decl., ¶ 15.

24  [37] Stricklen Decl., ¶ 14; Soto Decl., ¶ 14; Holmes Decl., ¶ 19; Charles Decl., ¶ 15; Fondrose Decl., ¶
25  15; Idress Decl., ¶ 15; Pfeffer Decl., ¶ 12; Vieira Decl., ¶ 15.

26  [38] Stricklen Decl., ¶ 24; Rios Decl., ¶ 19; Soto Decl., ¶ 25; Holmes Decl., ¶ 10; Tranberg Decl., ¶ 19;
27  Charles Decl., ¶¶ 24, 26; Fondrose Decl., ¶¶ 23-24; Idress Decl., ¶¶ 21-22; Pfeffer Decl., ¶¶ 19-20;
   Vieira Decl., ¶¶ 26-27.

28

---

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

meal and rest breaks.[39] OCC, however, routinely requires Technicians to falsely document that they took a thirty-minute meal break.[40] These thirty-minute meal periods – meal periods that rarely, in fact, occur – are uncompensated.[41]

If Technicians do not document that they took a thirty-minute meal break, OCC often alters their time sheets to show a thirty-minute meal break.[42]  In fact, former Technician supervisors from OCC testify that OCC instructed them and other supervisors to alter time records to include a thirty-minute meal period if the Technician failed to include one, whether the Technician took a thirty-minute meal period or not.[43]  Former OCC supervisors testify that they routinely altered time records to include a thirty-minute meal period.[44] This was done pursuant to OCC's express instructions.[45]

**C.  OCC's Technician Compensation Model.**

OCC primarily compensates its Technicians on a piece-rate basis.[46]  OCC's piece-rate compensation system uses (1) the total dollar value for "miscellaneous" time,[47] (2) the total dollar

---

[39] Stricklen Decl., ¶¶ 16-19; Rios Decl., ¶¶ 13-16; Soto Decl., ¶¶ 18-21; Holmes Decl., ¶¶ 22-29; Tranberg Decl., ¶¶ 21-28; Charles Decl., ¶¶ 17-19; Fondrose Decl., ¶¶ 18-20; Idress Decl., ¶¶ 17-18; Pfeffer Decl., ¶ 14-16; Vieira Decl., ¶¶ 17-19.

[40] Stricklen Decl., ¶ 19; Rios Decl., ¶ 15; Soto Decl., ¶ 20; Holmes Decl., ¶ 23; Tranberg Decl., ¶ 22; Charles Decl., ¶ 40; Fondrose Decl., ¶ 20; Pfeffer Decl., ¶ 16; Vieira Decl., ¶ 19.

[41] *See* Wray Depo Tr. at 129:12-18; Stricklen Decl., ¶ 19; Rios Decl., ¶ 15; Soto Decl., ¶¶ 19, 21; Holmes Decl., ¶ 26; Tranberg Decl., ¶ 25; Charles Decl., ¶ 19; Fondrose Decl., ¶ 20.

[42] Stricklen Decl., ¶ 19; Rios Decl., ¶ 15; Soto Decl., ¶ 20; Holmes Decl., ¶ 23; Tranberg Decl., ¶ 22; Charles Decl., ¶ 19; Fondrose Decl., ¶ 20; Pfeffer Decl., ¶ 16; Vieira Decl., ¶ 19.

[43] Tranberg Decl., ¶¶ 33-35; Fondrose Decl., ¶¶ 30-33.
[44] *Id.*
[45] *Id.*

[46] *See* Pl.s' Compl., ¶ 24; Stricklen Decl., ¶ 20; Rios Decl., ¶ 17; Soto Decl., ¶ 22; Holmes Decl., ¶¶ 6-7; Tranberg Decl., ¶ 18; Charles Decl., 20; Fondrose Decl., ¶ 21; Idress Decl., ¶ 19; Pfeffer Decl., ¶ 17; Vieira Decl., ¶ 22.

[47] Florida-based Technicians do not receive compensation for miscellaneous time.  Wray Depo Tr. at 75:16-76:2; 81:12-82:1; 133:20-134:17. Instead, Florida-based Technicians are compensated on a purely piece rate basis. *Id.*

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

value for piece-rate work, and (3) the number of hours recorded as worked, to calculate Technicians' regular hourly rates of pay for each week.  The hourly rates reflected on Technicians' pay stubs fluctuate weekly, and are calculated in an excel database based on a specific OCC formula.[48]

First, OCC aggregates Technicians' total miscellaneous time for the week, which is then paid at separate hourly rates for miscellaneous time.[49] According to OCC, "miscellaneous" time includes any time reflected on Technicians' time sheets where Technicians do not perform an installation or service task (*i.e.*, non-productive time).[50]  OCC relies on the applicable minimum wage for Technicians' geographic locations when determining this separate hourly rate for miscellaneous time.[51] However, the hourly miscellaneous rate is not necessarily that geographic area's applicable minimum wage – the applicable minimum wage is merely a factor in the hourly miscellaneous rate.[52] The miscellaneous hourly rate is a secret, and OCC considers this information their proprietary business information.[53] By design, Technicians are prevented from knowing how they are compensated for non-productive time, and at what rate.[54]

---

[48] *See id.* at 65:14-24; 132:6-133:19; 144:22-145:24; 182:23-185:5. Defendant's Chief Operations Officer, Larry Wray, created this excel database (referred to as the "payroll program"), and its corresponding formulas.  *Id.* at 63:14-64:3; 100:2-20; 101:9-11; *see also* Cottrell Decl., Ex. C.

[49] *Id.* at 132:6-133:19; 141:14-142:5;143:6-12; 149:3-17.

[50] *Id.* at 112:7-11 ("Anytime that you are not at a customer's house doing production is considered miscellaneous time.").

[51] *Id.* at 121:18-124:17.

[52] *Id.*
[53] *Id.* at 122:15-24; 124:12-14.

[54] *Id.* at 149:18-151:23 ("A: [T]hey wouldn't know what their miscellaneous time is by looking at NAVARRO 6 . . . Q: And looking at the wage statement NAVARRO 6, the technician cannot determine what the miscellaneous rate is; correct? A: No. Q: That's not correct? No, that is correct.").

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

1    Next, OCC aggregates Technicians' piece rates, and adds up the dollar values generated by

2    each code entry that were submitted and accepted.[55] OCC then adds Technicians' miscellaneous

3    hourly pay to the dollar value of Technicians' piece rate pay, and divides that aggregated total by

4    Technicians' total reported and accepted hours worked during that week.[56]   This generates

5    Technicians' regular hourly rates for the week, which are reflected on Technicians' pay stubs.[57] OCC

6    then multiplies the regular hourly rates by one-point-five (1.5) or two (2) to compute the overtime

7    rates or double time rates, respectively.[58]

8    All California OCC Technicians have been paid according to this compensation model from

9    January 18, 2014 to the present, except for a period of time in 2014 where OCC contends it paid its

10   Technicians a flat hourly rate for all work.[59]   For all relevant times that OCC utilized the above-

11   referenced piece-rate compensation model, California OCC Technicians used a time sheet that

12   tracked miscellaneous time.[60]

13   All Florida OCC Technicians were paid according to a virtually identical compensation model

14   from January 18, 2014 to approximately June 15, 2017,[61] with the following exceptions: at some

15   unspecified point in time, OCC paid its Florida Technicians a flat hourly rate; and at another

16

---

17   [55] *Id.* at 132:6-133:19; 144:22-145:8; Stricklen Decl., ¶ 21; Rios Decl., ¶ 19; Soto Decl., ¶¶ 22-23;
18   Holmes Decl., ¶¶ 6-9; Charles Decl., ¶ 21, 25; Fondrose Decl., ¶ 21-22; Idress Decl., ¶ 19-20; Pfeffer
     Decl., ¶¶ 17-18; Vieira Decl., ¶ 23, 25.
19
20   [56] Wray Depo Tr. at 132:6-133:19; 145:9-16; Stricklen Decl., ¶¶ 20-22; Rios Decl., ¶ 17; Soto Decl.,
     ¶¶ 22-23; Holmes Decl., ¶¶ 6-10; Tranberg Decl., ¶ 18; Charles Decl., ¶¶ 20, 24, 26; Fondrose Decl.,
21   ¶¶ 21, 23-24; Idress Decl., ¶¶ 19, 21-22; Pfeffer Decl., ¶¶ 17, 19-20; Vieira Decl., ¶¶ 22, 26-27.

22   [57] *See* Wray Depo Tr. at 132:6-133:19; 145:9-16; 182:23-185:5; *see also* Cottrelly Decl. Ex. C.

23   [58] *Id.* at 145:9-16; 157:7-15.

24   [59] *Id.* at 65:14-19; 74:18-76:2; 134:9-17.

25   [60] *Id.* at 79:9-80:24.

26   [61] *Id.* at 28:24-29:14; 31:20-32:6 (Approximately one month ago, Defendant sold its Florida
     locations' assets, but not its liabilities, to ITG.  Plaintiff intends to move for leave to amend to add
27   ITG as a defendant under a successor liability theory.

28

---

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

1   unspecified point in time, OCC stopped paying its Florida Technicians for "miscellaneous" time, and

2   only paid Florida Technicians for submitted and accepted piece rates.[62]

3       All Washington, Arizona, and Utah OCC Technicians have also been paid according to this

4   piece-rate compensation model since the end of June of 2017, when Defendant acquired these

5   locations.[63]   In sum, the compensation system has been virtually the same for all OCC Technicians

6   since 2014.[64]

7       Through this uniform compensation system, Technicians are systematically denied the wages

8   to which they are due and entitled.   Technicians are routinely denied the piece rate compensation they

9   earned for completed job tasks.[65]   Technicians' hours are customarily slashed, and their compensation

10   cannot be squared with the long hours they *in fact* work.[66]   Indeed, former OCC Technician

11   supervisors *admit* it is OCC's policy and practice to unilaterally alter time cards to minimize the

12   amount of reported Technician work time.[67]   Technicians' pay – undercompensated as it already is –

13   is not given unconditionally, free and clear of unlawful kickbacks to OCC by virtue of the countless

14

15

16   _____

17   [62] *Id.* at 65:14-19; 74:18-76:2; 79:9-80:24; 134:9-17.

18   [63] Defendant acquired these locations March 1, 2017, but did not transition these locations onto its
19   piece rate compensation system until end of June of 2017.  *Id.* at 33:9-16; 34:1-3; 35:9-23; 62:24-
     63:15; 65:1-3; 76:3-78:4.

20   [64] *Id.* at 65:14-19; 74:18-76:2; 79:9-80:24; 134:9-17. Defendant also owned one Texas location at
21   some point, but could not recall when Defendant began and ceased operations in Texas.  *Id.* at 36:18-
     37:10.

22

23   [65] Stricklen Decl., ¶ 23; Rios Decl., ¶¶ 17-18; Soto Decl., ¶¶ 22-23; Holmes Decl., ¶¶ 6-9; Tranberg
     Decl., ¶ 18; Charles Decl., ¶ 25; Fondrose Decl., ¶ 22; Idress Decl., ¶ 20; Pfeffer Decl., ¶ 18; Vieira
24   Decl., ¶¶;

25   [66] Stricklen Decl., ¶ 24; Rios Decl., ¶ 19; Soto Decl., ¶¶ 24-25; Holmes Decl., ¶¶ 10, 15; Tranberg
     Decl., ¶ 19; Charles Decl., ¶¶ 24, 26; Fondrose Decl., ¶¶ 23-24; Idress Decl., ¶¶ 21-22; Pfeffer Decl.,
26   ¶¶ 19-20; Vieira Decl., ¶ 26-27.

27   [67] Tranberg Decl., ¶¶ 38-39; Fondrose Decl., ¶¶ 36-40.

28

1  expenses Technicians must incur for OCC's benefit.[68] And to top it all off, OCC, by design,

2  obfuscates – indeed, OCC intentionally conceals[69] – the manner in which Technicians are

3  compensated, preventing them from fully understanding the extent to which they have been

4  wronged.[70]

5  **III.   ARGUMENT**

6      **A.   The FLSA Permits Collective Actions to Prohibit Unlawful Labor Practices.**

7         The FLSA is a remedial statute that protects the rights of workers and is applied liberally.

8  *Tennessee Coal Iron & R. Co., v. Muscoda Local No. 123*, 321 U.S. 590, 597-98 (1944); *see also*

9  *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1202-03 (N.D. Cal. 2013). The FLSA's purpose

10  is to "eliminate" unfair labor practices.  29 U.S.C. § 202(a)(b). It prohibits "customs and contracts

11  which allow an employer to claim all of an employee's time while compensating him for only a part

12  of it" and provides employees a private right of action to recover their unpaid wages. *Tennessee Coal*

13  *Iron & R. Co.*, 321 U.S. at 602. Specifically, Sections 206 and 207 require that employers pay non-

14  exempt, hourly employees overtime of at least one and one-half times the regular rate of pay for hours

15  worked in excess of forty per week.  29 U.S.C. §§ 206, 207(a)(1). The calculation of hours worked is

16  not limited to hours "clocked-in" and may include pre-shift and post-shift work. *Ramirez*, 941 F.

17  Supp. 2d  at 1201-06. "Working time" also includes meal or rest periods, when an employee does not

18  actually take a break but instead continues to work. 29 C.F.R. §§ 785.18, 785.19(a);  *Hill v. RL*

19  *Carriers, Inc.*, 690 F. Supp. 2d 1001, 1010 (N.D. Cal. 2010); *Rother v. Lupenko*, 515 Fed. Appx. 672,

20  674 (9th Cir. 2013). Employers are required to create and maintain accurate records of all hours

---

[68] Stricklen Decl., ¶¶ 24-25; Rios Decl., ¶¶ 20, 22; Soto Decl., ¶¶ 26-27 ; Holmes Decl., ¶¶ 30-32; Tranberg Decl., ¶¶ 29-30; Charles Decl., ¶¶ 27-28; Fondrose Decl., ¶¶ 25-26; Idress Decl., ¶¶ 23-24; Pfeffer Decl., ¶ 22; Vieira Decl., ¶¶ 20-21.

[69] Wray Depo Tr. at 149:18-151:23.

[70] Stricklen Decl., ¶¶ 20-22; Rios Decl., ¶¶ 17-19; Soto Decl., ¶ 28; Holmes Decl., ¶¶ 6-10; Tranberg Decl., ¶¶ 18-20; Charles Decl., ¶¶ 20-24; Fondrose Decl., ¶¶ 21-22; Idress Decl., ¶¶ 19-20; Pfeffer Decl., ¶¶ 17-18; Vieira Decl., ¶¶ 24-25.

1   worked by employees.  29 U.S.C. §§ 211(c), 215(a)(5); 29 C.F.R. § 516.2(a)(7). An employer cannot

2   shift this duty to employees. 29 U.S.C. § 211(c).

3   　　　　The FLSA permits employees to bring a collective action on behalf of himself or themselves

4   and other employees similarly situated.  29 U.S.C. § 216(b). Although the FLSA does not explicitly

5   define the term "similarly situated," district courts have broad discretion to allow a party asserting

6   FLSA claims on behalf of others to notify potential "similarly situated" plaintiffs that they may

7   choose to "opt in" to the suit. *Hoffman-La Roche, Inc., v. Sperling*, 493 U.S. 165, 169 (1989). District

8   courts, including those in this District, usually exercise their discretion to permit collective actions to

9   proceed. *See, e.g., Guilbaud v. Sprint/United Mgmt. Co., Inc.,* 2014 WL 10676582 (N.D. Cal. Oct. 3,

10  2014) (Chhabria, J.) (conditionally certifying a nationwide group of retail store employees asserting

11  FLSA claims based upon allegations of uncompensated pre- and post-shift work, as well as

12  allegations that they performed work during uncompensated meal periods); *Brown v. Permanente*

13  *Med. Grp.,* 2017 WL 1536493 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.) (conditionally certifying

14  nationwide group of call center-based "Advice Nurses," asserting FLSA claims based upon

15  allegations of uncompensated pre- and post-shift work, as well as allegations that they performed

16  work during uncompensated meal periods); *Ramirez*, 941 F .Supp. 2d at 1206 (granting plaintiff's

17  motion for conditional collective action certification); *Bonner v. SFO Shuttle Bus Co.*, No. C13–1606

18  THE, 2013 WL 6139758, at *5 (N.D. Cal. Nov. 21, 2013) (same); *Flores v. Velocity Exp., Inc.*, No.

19  12–cv–05790-JST, 2013 WL 2468362, at *8 (N.D. Cal. June 7, 2013) (same); *Zaborowski v. MHN*

20  *Gov't Servs., Inc.*, 2013 WL 1787154, at *4 (N.D. Cal. Apr. 25, 2013) (same); *Daniels v. Aeropostale*

21  *W., Inc.*, No. C 12-05755 WHA, 2013 WL 1758891, at *4 (N.D. Cal. Apr. 24, 2013) (same); *Brewer*

22  *v. Gen. Nutrition Corp.*, No. 11–CV–03587 YGR, 2013 WL 100195, at *6 (N.D. Cal. Jan. 7, 2013)

23  (same); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 848 (N.D. Cal. 2010) (same); *Luque v.*

24  *AT&T Corp.*, No. C 09–05885 CRB, 2010 WL 4807088, at *7 (N.D. Cal., Nov. 19, 2010) (same);

25  *Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1129-30 (N.D. Cal. 2009) (same); *Escobar v.*

26  *Whiteside Const. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715, at *6 (N.D. Cal. Aug. 21, 2008)

27  (same).

28

1

**B.  Collective Action Certification is a Two-Stage Process.**

Section 216(b) requires a person to affirmatively "opt in" to an FLSA action by filing a consent form. It also authorizes a court to issue notice to "similarly situated" employees informing them of the case and their right to opt-in.  *Shaia v. Harvest Mgmt. Sub LLC,* 306 F.R.D. 268, 272 (N.D. Cal. 2015). Unlike Rule 23 class actions, in collective actions, the statute of limitations for proposed collective members is not tolled with the filing of the action, but rather with the filing of an opt-in consent. 29 C.F.R. § 790.21(b)(2). Thus, court-authorized notice protects against "misleading communications" by the parties, resolves the parties' disputes regarding the content of any notice, prevents the proliferation of multiple individual cases, assures that joinder of additional parties is accomplished properly and efficiently, and expedites resolution of the dispute. *Hoffman-La Roche, Inc.*, 493 U.S. at 171-72.

Courts in this District have employed the now well-established, two-tiered approach to these cases. *See, e.g., Guilbaud,* 2014 WL 10676582 at *1 ("Certification of collective actions under the FLSA generally proceed in two stages"); *Ramirez*, 941 F. Supp. 2d at 1203; *Brewer*, 2013 WL 100195 at *2-*3; *Daniels*, 2013 WL 1758891 at *42; *Zaborowski*, 2013 WL 1787154 at *41; *Flores*, 2013 WL 2468362 at *85; *Bonner*, 2013 WL 6139758 at *2; *Hill*, 690 F. Supp. 2d at 1009; *Harris*, 716 F. Supp. 2d at 837; *Luque*, 2010 WL 4807088 at *3. First, the court makes an initial, conditional determination of whether plaintiffs are similarly situated, "deciding whether a collective action should be certified for the purpose of sending notice to potential class members." *Ramirez*, 941 F. Supp. 2d at 1203. Then, once discovery is complete, the court makes a second determination as to the propriety and scope of the class. *Id.* Only the first step is relevant to a motion for conditional certification. *Id.*

The first step requires the court to determine whether the plaintiffs are "similarly situated" and whether notice of the action should be given to potential opt-in plaintiffs. *See Guilbaud,* 2014 WL 10676582 at *1 (N.D. Cal. Oct. 3, 2014) (Chhabria, J.) "The initial notice stage determination uses a 'lenient [standard] that typically results in certification.'" *Ramirez*, 941 F. Supp. 2d at 1203 (quoting, *Lewis*, 669 F. Supp. 2d at 1128 ); *see also, Guilbaud,* 2014 WL 10676582  at *1 (N.D. Cal.

28

Oct. 3, 2014) (Chhabria, J.) ("Although certification is not automatic, the plaintiffs' burden is nonetheless a light one"); *Brown*, 2017 WL 1536493 at *1 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.) ("This 'fairly lenient standard' typically results in conditional certification being granted").

The court's determination is based on plaintiffs' allegations, supported by declarations or discovery, showing that the putative collective members were victims of a common policy. *See Guilbaud*, 2014 WL 10676582 at *1 (N.D. Cal. Oct. 3, 2014) (Chhabria, J.) (conditionally certifying class based on consistent statements contained in declarations submitted by the plaintiffs); *Brown*, 2017 WL 1536493 at *2 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.) (same); *see also, Harris*, 716 F. Supp. 2d at 837 (referencing *Gilbert v. Citigroup, Inc.*, 2009 WL 424320, at *2 (N.D. Cal. Feb. 18, 2009) (finding lenient standard met based on declarations from plaintiff and four other individuals); *Escobar*, 2008 WL 3915715, at *3–4 (finding lenient standard met based on declarations from three plaintiffs); *Leuthold v. Destination Am.*, 224 F.R.D. 462, 468–69 (N.D. Cal. 2004) (finding lenient standard met based on affidavits from three proposed lead plaintiffs)). Plaintiffs need only show that their claims are similar, not identical to other putative class members. *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536-38 (N.D. Cal. 2007); *Wren v. RGIS Inventory Specialists*, 2007 WL 4532218, at *5 (N.D. Cal. Dec. 19, 2007).  Indeed, "many courts have indicated that a plaintiff must simply show that 'there is some factual basis beyond the mere averments in their complaint for the class allegations.'" *Id.*  "And, courts need not even consider evidence provided by defendants at this stage." *Ramirez*, 941 F. Supp. 2d at 1203 (citing, *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 627 (E.D. Cal. 2009); *Lewis*, 669 F. Supp. 2d at 1128).

**C.  This Case Should Be Conditionally Certified Because Plaintiffs Satisfy the "Similarly Situated" Standard.**

Plaintiffs meet the lenient standard for conditional FLSA certification because the proposed Collective members are "similarly situated."  *Hill*, 690 F. Supp. 2d at 1009. The Complaint, numerous declarations submitted with this motion, deposition testimony of OCC's person most knowledgeable, and the opt-in consent forms on file with the Court provide far more evidence than necessary to support conditional certification. *See Guilbaud,* 2014 WL 10676582 at *1 (N.D. Cal.

Oct. 3, 2014) (Chhabria, J.) (Declarations attesting to common types of unlawful conduct is sufficient for conditional certification purposes); *Brown,* 2017 WL 1536493 at *2 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.) (same); *See also, Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 996 (C.D. Cal. 2008) ("The consistency of the statements in the various declarations submitted by Plaintiffs is sufficient to satisfy a modest factual showing that they were similarly situated, in that they routinely worked unpaid overtime in violation of the FLSA.").

OCC's non-exempt Technicians around the country have similar job duties, are subject to the same compensation and overtime polices, and share the same complaints regarding unpaid work and improper timekeeping records.[71] ¶; *See Harris*, 716 F. Supp. 2d at 837; *Guilbaud,* 2014 WL 10676582 (N.D. Cal. Oct. 3, 2014) (Chhabria, J.); *Brown,* 2017 WL 1536493 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.). Not only have Plaintiffs submitted 10 declarations from members of the Collective attesting to these circumstances, but Plaintiffs have also submitted the testimony of two former OCC Technician supervisors, as well as the deposition testimony of OCC's person most knowledgeable. *See* Tranberg Decl., ¶¶ 31-39; Fondrose Decl., ¶¶ 28-40, Wray Depo Tr. 132:6-133:19. This is much more than is required to conditionally certify the Collective.  Accordingly, the Court should grant Plaintiffs' Section 216(b) Motion and conditionally certify the collective action.

### 1. Collective Members Have Similar Job Duties, Responsibilities, Work Hours, and Compensation

Plaintiffs and proposed Collective Members have similar job responsibilities across the United States. All OCC Technicians are non-exempt.[72] All OCC Technicians perform various services related to the installation and repair of wireless services for OCC's clients; primarily,

---

[71] *See* Wray Depo Tr. 132:6-133:19; Stricklen Decl., ¶¶ 5, 7-26; Rios Decl., ¶¶ 4, 7-22; Soto Decl., ¶¶ 5, 8-28; Holmes Decl., ¶¶ 3, 5-32; Tranberg Decl., ¶¶ 5, 7-30; Charles Decl., ¶¶ 4, 7, 20-28; Fondrose Decl., ¶¶5, 7-30; Idress Decl., ¶¶ 5, 7-25; Pfeffer Decl., ¶¶ 4, 7-23, ; Vieira Decl., ¶ 4, 7-28.

[72] *See* Stricklen Decl., ¶ 5 ; Rios Decl., ¶ 4; Soto Decl., ¶¶ 5; Holmes Decl., ¶ 3; Tranberg Decl., ¶ 5; Charles Decl., ¶ 4; Fondrose Decl., ¶ 4; Idress Decl., ¶ 4; Pfeffer Decl., ¶ 4; Vieira Decl., ¶ 4.

Comcast.[73] The services uniformly included installing cable, internet and phone; troubleshooting; running new telephone lines; running coax cables for new outlets; installing ground cable; educating customers on equipment; providing customer service; replacing and installing drops; and installing alarm systems.[74] All declarants testify they regularly worked in excess of forty hours a week and were subject to the same piece rate compensation policy.[75]

### 2.  OCC Uniformly Victimizes Collective Members in the Same Way.

As a result of the practices described above, OCC systematically violated, and continues to violate, the FLSA.

Before the beginning of their shifts, OCC requires Technicians to work off-the-clock.  *See supra,* Section II.B. at 4: 4 – 5: 1; fn. 10-16.  Whether by virtue of a Technicians' acquiescence to OCC's pressure or OCC's unilateral altering of time sheets, Technicians work thirty minutes, off-the-clock, during periods that are falsely designated as a meal period.  *See supra,* Section II.B. at 7: 13 – 8: 9; fn. 39-45. [76] And whether by virtue of a Technicians' acquiescence to OCC's pressure or OCC's unilateral altering of time sheets, Technicians often work several hours off-the-clock towards the end of the day. *See supra,* Section II.B. at 7: 4 – 7: 11; fn. 34-38.

OCC's conduct in requiring Technicians to work off-the-clock reduces the total hours factored into OCC's compensation formula, which necessarily reduces Technicians' total compensation,

---

[73] *See* Stricklen Decl., ¶ 7 ; Rios Decl., ¶ 7; Soto Decl., ¶ 8; Holmes Decl., ¶ 5; Tranberg Decl., ¶ 7; Charles Decl., ¶ 7; Fondrose Decl., ¶ 7; Idress Decl., ¶ 7; Pfeffer Decl., ¶ 7; Vieira Decl., ¶ 7.
[74] *Id.*

[75] *See* Stricklen Decl., ¶¶ 15, 20-26; Rios Decl., ¶¶ 8, 17-22; Soto Decl., ¶¶ 17, 22-23; Holmes Decl., ¶¶ 21, 6-9; Tranberg Decl., ¶¶ 17, 18-20; Charles Decl., ¶¶ 8, 20-28; Fondrose Decl., ¶¶ 17, 21-27; Idress Decl., ¶¶ 16, 19-25; Pfeffer Decl., ¶¶ 13, 17-23; Vieira Decl., ¶¶ 16, 20-28;  *see also, supra,* Part II.C.

[76] Though not at issue in this motion, which concerns Plaintiffs' claims under the FLSA, OCC also fails to provide Technicians with legally mandated meal and rest break premiums, in violation of California law.  *See* Cal. Lab. Code § 226.

---

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

1    overtime compensation, as well as the total number of hours compensated at the required, bona fide,

2    overtime rate.[77] This uniformly violates the FLSA. *See* 29 U.S.C. § 207 (a), (g).

3           Additionally, because OCC eliminates, reduces, or pressures Technicians to omit piece rate

4    codes for completed work activities, Technicians' total compensation and overtime compensation is

5    necessarily reduced, and Technicians are not compensated at the bona fide regular rate, nor are they

6    compensated at the bona fide overtime rate.  *See supra,* Section II.B. at 5: 6 – 6: 2; fn. 20-26.  This,

7    too, uniformly violates the FLSA. *See* 29 U.S.C. § 207(a), (g).[78]

8           Moreover, because OCC requires Technicians to regularly incur a multitude of expenses for

9    OCC's sole benefit, *See supra,* Section II.A. at 3: 11 – 4: 2; fn. 9, the regular and overtime

10   compensation provided to Technicians is not paid unconditionally, free, and clear of deductions

11   and/or kickbacks. This also uniformly violates the FLSA.  *See* 29 U.S.C. § 206; 29 C.F.R. § 531.35.

12          Finally, for all the reasons discussed above, OCC does not keep required, accurate records of

13   all hours and piece rates worked by Plaintiffs and the Collective.  This uniformly violates the FLSA.

14   *See* 29 U.S.C. § 211(c).

15

16   _____

17   [77] Take, for example, a Technician who was paid $400 in piece rates, and $100 in miscellaneous time,

18   for a total of $500 in a given week. Now also assume the Technician in fact worked 60 hours, but
     because he was required to work 10 hours off-the-clock, OCC only factored 50 hours into its formula.

19   OCC would compensate the Technician as follows: $500 / 50 hours, for a regular rate of pay of $10
     per hour. OCC would then pay 10 of those hours at 1.5x his regular rate, resulting in total

20   compensation of $550 ($400 for 40 regular rate hours[$10/hour x 40 hours]; $150 for 10 overtime
     hours [$15/ overtime hour x 10 hours]). However, if OCC paid that Technician for all time he *in fact*

21   worked, his regular rate of pay would be $8.33 ($500/ 60 hours), resulting in regular pay of $333.20
     ($8.33 x 40 hours), overtime pay of  $249.90 (($8.33 x 1.5) x 20 overtime hours), and total

22   compensation of $583.1 ($333.20 + $249.90). Notably, this anecdote shows only a fraction of OCC's
     unlawful treatment of its Technicians, as it does not address the systematic elimination and reduction

23   of piece rate pay.

24   [78] Plaintiffs have outstanding document requests that would provide critical evidence confirming that

25   OCC regularly manipulates Technicians' time sheets, in terms of hours worked, eliminating and/or
     reducing piece rates, as well as creating meal periods that never took place.  This discovery has been

26   outstanding for over two months, but OCC has yet to produce any of the relevant time sheets.
     Ironically enough, OCC has recently promised to produce these documents: On July 18, 2017 – the

27   day *after* this conditional certification brief is due.

28

18

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

### 3.   Similar Cases Have Been Certified.

Substantially similar cases involving FLSA claims on behalf of cable installers and piece rate workers are routinely certified, both within the Ninth Circuit and nationally. For example, in *Balarezo v. NTH Connect Telcom, Inc.*, the Northern District of California conditionally certified a nationwide class of cable installation technicians who worked for a contractor hired by Comcast to perform installation services, and alleged their piece rate compensation did not pay the overtime required by the FLSA. No. C 07-5243 JF (PVT), 2008 WL 1944116, at *3 (N.D. Cal. May 2, 2008). Likewise, just a few months ago in *Luviano v. Multi Cable, Inc.*, the Central District of California conditionally certified a class of installation technicians who were allegedly misclassified as independent contractors, relying on the fact that the installers had the same job duties, *i.e.*, cable installation, repair and maintenance services, and were compensated pursuant to a uniform piece rate system.  No. 2:15-cv-05592-BRO (FFM) (C.D. Cal. Jan. 3, 2013) Order, p. 41 (ECF 140); *See also, Gounev v. Delta Mech., Inc.,* 2015 WL 11658711, at *9 (S.D. Cal. July 24, 2015) (conditionally certifying collective action where "all Installers had the same job duties, were compensated according to a uniform pay structure, received job assignments via DMI's scheduling system, and were required to sign the same "Independent Contractor" agreement with DMI when they were hired"); *Gomez v. H.R. Gunland Ranches, Inc.*, No. CV F 10–1163 LJO MJS, 2010 WL 5232973, at *8 (E.D. Cal., Dec. 16, 2010) (conditionally certifying a collective of employees who were paid on a piece rate basis for farming grapes, who alleged they were not paid the required minimum and overtime wages); *Escobar*, 2008 WL 3915715 (certifying a nationwide class of construction employees who met the lenient Section 216(b) standard for certification by demonstrating that they did not get similarly compensated for working through meal and rest breaks).[79] And indeed, this Court has repeatedly recognized the low

---

[79] *Beasley v. Custom Commc'ns, Inc.*, No. 5:15-CV-583-F, 2016 WL 5468255, at *5 (E.D.N.C. Sept. 28, 2016) (conditionally certifying cable installer technicians who were paid on a piece rate compensation scheme); *Williams v. Grayco Cable Servs., Inc.*, 187 F. Supp. 3d 760, 768 (S.D. Tex. 2016) (same); *Taylor v. Bear Commc'ns, LLC*, No. 4:12–CV–01261–BCW, 2013 WL 3270971, at *3 (W.D. Mo. June 27, 2013) (granting conditional certification of cable installer technicians); *Jason v. Falcon Data Com, Inc.*, No. 09-cv-03990 (JG)(ALC), 2011 WL 2837488, at *7 (E.D.N.Y. July 18, 2011) (granting nationwide conditional certification of cable installer technicians); *Joiner v.

1    threshold for conditional certification, and conditionally certified nationwide classes of mistreated

2    workers. *See Guilbaud,* 2-14 WL 10676582 (N.D. Cal. Oct. 3, 2014) (Chhabria, J.); *Brown,* 2017 WL

3    1536493 (N.D. Cal. Feb. 2, 2017) (Chhabria, J.).

4    **D.  Notice is Appropriate and Necessary to Protect Collective Members' Rights.**

5    Plaintiffs' proposal for Court-approved notice to the proposed Collective members is timely,

6    accurate, and informative – as required. *Hoffman-La Roche*, 493 U.S. at 172.  The Proposed Notice

7    of Collective Action Lawsuit and Proposed Opt-in Consent Form (which are attached as **Exhibits G**

8    **and H**, respectively, to Cottrell Decl.) provide notice of the pendency of the action and opportunity

9    to opt in. Plaintiffs' legal claims are accurately described, and proposed Collective members are

10   advised that OCC is defending the claims. The Notice also clearly states that they are not required to

11   participate in this action. The Notice provides clear instructions on how to opt in, accurately states

12   the prohibition against retaliation for participation in a FLSA action, and informs proposed Collective

13   members that this Court has not made any determination regarding the merits of Plaintiffs' claims.

14   Thus, Plaintiffs request that the Court approve the Proposed Notice and Opt-In Consent Form

15   submitted herewith for distribution to proposed Collective members.

16   Early distribution of the Notice is essential. *See, e.g., Adams*, 242 F.R.D. at 542-43. The

17   declarations submitted herewith contain ample evidence that proposed Collective members are

18   "similarly situated" and that OCC has violated the FLSA. Given this evidence, Notice to proposed

19   Collective members should be expedited, as delay threatens to destroy their ability to seek

20   compensation for numerous hours of work for which they were not paid. In order to facilitate notice,

21   Plaintiffs request that the Court require OCC to produce to Plaintiffs' counsel, within fourteen (14)

22   days of the Court's order granting Plaintiffs' Section 216(b) Motion, a computer-readable database

23   that includes the names of all proposed Collective members, along with their last known mailing

24   addresses, email addresses, telephone numbers, and social security numbers. Based on this contact

25

26   _____

27   *Groupware Int'l, Inc.*, No. 8:09–cv–1943–T–26MAP, 2010 WL 2136533, at *2 (M.D. Fla. May 27, 2010) (granting conditional certification of piece rate cable installer technicians).

28

1   information, a third-party notice administrator will mail the Court-approved Notice of Collective

2   Action Lawsuit and Opt-In Consent Form to proposed Collective members. Further, Plaintiffs request

3   that proposed Collective members be required to return their signed Opt-In Consent Forms to the

4   notice administrator within ninety (90) days (received or postmarked, or completed via an electronic

5   signature service) after the date on which the Notice and Consent Forms are mailed. *Id.* at 542 (also

6   approving a 90-day notice period in light of the number of potential plaintiffs). Plaintiffs' counsel

7   will file the Consent Forms with the Court on an ongoing basis and no later than two weeks after the

8   end of this 90-day notice period.

9         **E.  The Statute of Limitations Should Be Tolled for Collective Members.**

10         Plaintiffs also respectfully request that this Court toll the statute of limitations for all opt-in

11   Plaintiffs as of May 18, 2017 the date by which Plaintiffs requested that OCC provide proposed

12   Collective members' identities and contact information. *See* Cottrell Decl., ¶ 4. The claims of the

13   potential opt-in Plaintiffs are being extinguished every day. *Id.* at 542-43 (equitably tolling the statute

14   of limitations to prevent potential plaintiffs from being "deprived of their legal rights"). Unlike Rule

15   23 class actions, in Section 216(b) collective actions, the statute of limitations for proposed collective

16   members is not tolled with the commencement of the action, but rather with the filing of an opt-in

17   consent. 29 C.F.R. § 790.21(b)(2). Thus, every day that passes is a day of unpaid wages and damages

18   each potential Plaintiff will be unable to recover. As the court did in *Adams*, this Court should toll

19   the statute of limitations because of the procedural difficulties and delay in consolidating the cases

20   and because Plaintiffs timely requested proposed Collective member contact information from OCC,

21   which OCC has not produced.[80]

22

23

24

---

25   [80] On May 18, 2017, Plaintiffs served discovery requests on OCC, including Plaintiffs' Request for the Production of

26   Documents, Set One. In particular, Document Request No. 2 requests that OCC produce "[a] list identifying all Collective Members from January 18, 2014, to the present. The list should include each Collective Member's name, last-known

27   address, last-known phone number, last-known email address, dates of employment, and location at which the employee worked." OCC objected to this Interrogatory and has not provided the information Plaintiffs requested in their Document

28   Requests. *See* Cottrell Decl., ¶ 3.

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

1   **IV.**     <u>**CONCLUSION**</u>

2          For the foregoing reasons, Plaintiffs respectfully request that the Court conditionally certify

3   the Collective class under Section 216(b), authorize notice to allow potential Plaintiffs to opt in to

4   preserve their rights, and toll the statute of limitations for all proposed Collective members.

5

6   Date: July 17, 2017                           Respectfully submitted,

7                                            <u>/s/ *Carolyn H. Cottrell*</u>
                                             Carolyn H. Cottrell
8                                            SCHNEIDER WALLACE
                                             COTTRELL KONECKY LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC

1

## CERTIFICATE OF SERVICE

2      I hereby certify that I electronically filed the foregoing document with the Clerk of the Court

3  for the United States District Court, Northern District of California, by using the Court's CM/ECF

4  system on July 17, 2017.

5      I certify that all participants in the case are registered CM/ECF users and that service will

6  be accomplished by the Court's CM/ECF system.

7

8  Date: July 17, 2017                     Respectfully Submitted,

9                                          /s/ Carolyn H. Cottrell
                                           Carolyn Cottrell (SBN 166977)
10                                         SCHNEIDER WALLACE
                                           COTTRELL KONECKY WOTKYNS LLP
11                                         2000 Powell Street, Suite 1400
                                           Emeryville, California 94608
12                                         Telephone: (415) 421-7100
                                           Facsimile:  (415) 421-7105
13                                         ccottrell@schneiderwallace.com

14
                                           Attorneys for Plaintiffs, the Collective and Putative
15                                         Class

16

17

18

19

20

21

22

23

24

25

26

27

28

---

MOTION FOR CONDITIONAL CERTIFICATION AND TO FACILITATE NOTICE UNDER 29 U.S.C. § 216(B)
*Soto and Stricklen v. O.C. Communications, Inc.*, Case No.: 3:17-cv-00251-VC