Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
Scott L. Gordon (SBN 319872)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com
sgordon@schneiderwallace.com

*[Additional Counsel listed on next page]*

Attorneys for Plaintiffs, the Collective and
Putative Classes

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIDERO SOTO, STEVEN STRICKLEN, STEEVE FONDROSE, LORENZO ORTEGA, and JOSE ANTONIO FARIAS, JR., on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>    vs.<br><br>O.C. COMMUNICATIONS, INC., COMCAST CORPORATION, and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC;<br><br>        Defendants. | Case No.: 3:17-cv-00251-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date: March 21, 2019<br>Time: 10:00 a.m.<br>Courtroom: 4 (17th Floor)<br>Judge: Honorable Vince Chhabria<br><br>Complaint Filed: January 18, 2017 |

1
2   Shanon J. Carson (*pro hac vice*)
    Sarah R. Schalman-Bergen (*pro hac vice*)
3   Neil K. Makhija (*pro hac vice*)
    BERGER MONTAGUE PC
4   1818 Market Street, Suite 3600
    Philadelphia, Pennsylvania 19103
5   Telephone:  (215) 875-3000
    Facsimile:  (215) 875-4604
6   scarson@bm.net
    sschalman-bergen@bm.net
7   nmakhija@bm.net
8
    Attorneys for Plaintiffs, the Collective and
9    Putative Classes
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

2          NOTICE IS HEREBY GIVEN that on March 21, 2019, at 10:00 a.m. in Courtroom 4 before

3    Hon. Vince Chhabria of the United States District Court, Northern District of California, Plaintiffs

4    Desidero Soto, Steven Stricklen, Steeve Fondrose, Lorenzo Ortega, and Jose Antonio Farias, Jr.

5    ("Plaintiffs") move the Court for preliminary approval of the Class Action Settlement Agreement

6    (the "Settlement Agreement" or the "Settlement," attached as **Exhibit 1** to the accompanying

7    Declaration of Carolyn Hunt Cottrell) as to the California and Washington Classes, and approval of

8    the Settlement as to the Collective. In particular, Plaintiffs move for orders:

9    ***As to the California and Washington Classes:***

10         (1)    Granting preliminary approval of the Settlement Agreement as to the California and

11   Washington Classes;

12         (2)    Conditionally certifying the California and Washington Classes for settlement

13   purposes;

14         (3)    Approving the proposed schedule and procedure for completing the final approval

15   process for the Settlement as to the California and Washington Classes, including setting the Final

16   Approval Hearing;

17         (4)    Approving the Notice of Settlement as it pertains to the California and Washington

18   Classes (attached as **Exhibit A** to the Settlement Agreement);

19         (5)    Preliminarily appointing and approving Schneider Wallace Cottrell Konecky

20   Wotkyns LLP and Berger Montague PC as Counsel for the Classes;

21         (6)    Preliminarily approving Class Counsel's request for attorneys' fees and costs;

22         (7)    Preliminarily appointing and approving the Plaintiffs Soto, Stricklen, and Farias as

23   Class Representatives for the California Class, and Plaintiff Ortega as Class Representative for the

24   Washington Class;

25         (8)    Preliminarily appointing and approving CPT Group, Inc. as the Settlement

26   Administrator for the California and Washington Classes; and

27         (9)    Authorizing the Settlement Administrator to mail the approved Notice of Settlement

28   to the California and Washington Classes.

*As to the Collective:*

     (1)    Granting approval of the Settlement Agreement as to the Collective;

     (2)    Approving the Notice of Settlement as it pertains to the Collective;

     (3)    Approving the proposed schedule for completing the settlement process as to the Collective;

     (4)    Approving and appointing Schneider Wallace Cottrell Konecky Wotkyns LLP and Berger Montague PC as Counsel for the Collective for purposes of the Settlement;

     (5)    Appointing and approving the Plaintiffs as Collective Representatives for the Collective for purposes of the Settlement;

     (6)    Appointing and approving CPT Group, Inc. as the Settlement Administrator for the Collective; and

     (7)    Authorizing the Settlement Administrator to mail the approved Notice of Settlement to the Collective as set forth in the Settlement Agreement.

     Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e) and long-established precedent requiring Court approval for Fair Labor Standards Act settlements.[1] The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell, the Declaration of Sarah Schalman-Bergen, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Preliminary Approval of Class and Collective Action Settlement with their moving papers.

//

//

//

//

---

[1] *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).

1  Date: March 1, 2019                        Respectfully submitted,

2

3                                             */s/ Carolyn Hunt Cottrell*
                                              Carolyn Hunt Cottrell
4                                             David C. Leimbach
                                              Scott L. Gordon
5                                             SCHNEIDER WALLACE
                                              COTTRELL KONECKY
6                                             WOTKYNS LLP

7
                                              Shanon J. Carson (*pro hac vice*)
8                                             Sarah R. Schalman-Bergen (*pro hac vice*)
                                              Neil K. Makhija (*pro hac vice*)
9                                             BERGER MONTAGUE PC

10
                                              Attorneys for Plaintiffs, the Collective and Putative
11                                            Classes

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2

3    I.    INTRODUCTION ........................................................................................ 1

4    II.   FACTUAL BACKGROUND ...................................................................... 1

5    III.  PROCEDURAL HISTORY ......................................................................... 3

6          A.    Plaintiffs' Claims .................................................................... 3

7          B.    FLSA Conditional Certification............................................... 4

8          C.    Discovery ................................................................................. 4

9          D.    Motions to Compel Arbitration................................................ 5

10         E.    Mediation ................................................................................ 6

11   IV.   TERMS OF THE SETTLEMENT .............................................................. 7

12         A.    Basic Terms and Value of the Settlement................................ 7

13         B.    Class and Collective Definitions............................................ 10

14         C.    Allocation and Awards .......................................................... 10

15         D.    Scope of Release .................................................................... 12

16         E.    Settlement Administration ..................................................... 12

17   V.    ARGUMENT ............................................................................................ 13

18         A.    The Court Should Grant Preliminary Approval of the Settlement as to the
19               California and Washington Classes and Approval of the Settlement as to the
                 Collective ............................................................................... 13

20         B.    The Court Should Conditionally Certify the California and Washington Classes.14

21               1.    The Classes are numerous and ascertainable. ...............................15

22               2.    Plaintiffs' claims raise common issues of fact or law...................16

23               3.    Plaintiffs' claims are typical of the claims of the Classes. ...........17

24               4.    Plaintiffs and Class Counsel will adequately represent the Class.................17

25               5.    The Rule 23(b)(3) requirements for class certification are also met. ...........18

26         C.    The Settlement Should Be Preliminarily Approved as to the Classes and
                 Approved as to the Collective Because It Is Fair, Reasonable, and Adequate. .... 19

27               1.    The terms of the Settlement are fair, reasonable, and adequate...................20

28

i

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

2.    The Parties have agreed to distribute settlement proceeds tailored to the Classes and Collective and their respective claims.................................21

3.    The extensive discovery enabled the Parties to make informed decisions regarding settlement....................................................................................22

4.    Litigating this action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk. ............................23

5.    The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. ..................................................25

D.    The Class Representative Enhancement Payments are Reasonable. ................... 25

E.    The Requested Attorneys' Fees and Costs are Reasonable. ................................ 26

F.    The Proposed Notice of Settlement and Claims Process Are Reasonable. .......... 29

G.    The Court Should Approve the Proposed Schedule. ............................................ 31

VI.    CONCLUSION ................................................................................................................. 33

1

## **TABLE OF AUTHORITIES**

2

3 **Federal Cases**

4 *Amchem Prod., Inc. v. Windsor*

5    521 U.S. 591 (1997).................................................................................................................19

6 *Boyd v. Bechtel Corp.*

7    485 F.Supp. 610 (N.D. Cal. 1979) ......................................................................................22

8 *Carter v. Anderson Merchandisers, LP*

9    No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010).........................25

10 *Caudle v. Sprint/United Mgmt. Co.*

11    No. C 17-06874 WHA, 2018 WL 6618280 (N.D. Cal. Dec. 18, 2018) .......................................15

12 *Chavez v. IBP, Inc.*

13    No. CV-01-5093-RHW, 2005 WL 6304840 (E.D. Wash. May 16, 2005) ...................................15

14 *Churchill Village, LLC. v. Gen. Elec.*

15    361 F.3d 566 (9th Cir. 2004) ......................................................................................19, 29

16 *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*

17    No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016)..........................................14

18 *Eisen v. Carlisle & Jacquelin*

19    417 U.S. 156 (1974)....................................................................................................29

20 *Entin v. Barg*

21    412 F.Supp. 508 (E.D. Pa. 1976) ........................................................................................20

22 *Fry v. Hayt, Hayt & Landau*

23    198 F.R.D. 461 (E.D. Pa. 2000)................................................................................16, 17

24 *Guilbaud v. Sprint/United Management Co., Inc.*

25    2014 WL 10676582 (N.D. Cal. 2014) ...................................................................................16

26 *Hanlon v. Chrysler Corp.*

27    150 F.3d 1011 (9th Cir. 1998) ......................................................................................passim

28

*Holmes v. Continental Can Co.*

706 F.2d 1144 (11th Cir. 1983) ............................................................................21, 22

*Ikonen v. Hartz Mountain Corp.*

122 F.R.D. 258 (S.D. Cal. 1988) .................................................................................15

*In re Activision Sec. Litig.*

723 F.Supp. 1373 (N.D. Cal. 1989) .............................................................................27

*In Re Armored Car Antitrust Litig.*

472 F.Supp. 1357 (N.D. Ga. 1979) .............................................................................20

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*

789 F.Supp.2d 935 (N.D. Ill. 2011) .......................................................................21, 22

*In Re Four Seasons Secs. Laws Litig.*

58 F.R.D. 19 (W.D. Okla. 1972).................................................................................20

*In re Mego Fin. Corp. Sec. Litig.*

213 F.3d 454 (9th Cir. 2000) ......................................................................................20

*In Re Sunrise Secs. Litig.*

131 F.R.D. 450 (E.D. Pa. 1990)..................................................................................20

*In re Syncor ERISA Litig.*

516 F.3d 1095 (9th Cir. 2008) ....................................................................................20

*In re Warfarin Sodium Antitrust Litig.*

212 F.R.D. 23 (D. Del. 2002) .....................................................................................20

*Jacobson v. Comcast Corp.*

740 F. Supp. 2d 683 (D. Md. 2010)............................................................................24

*Jean-Louis v. Metro. Cable Commc'ns, Inc.*

838 F. Supp. 2d 111 (S.D.N.Y. 2011).........................................................................24

*Kirkpatrick v. Ironwood Commc'ns, Inc.*

No. C05-1428JLR, 2006 WL 2381797 (W.D. Wash. Aug. 16, 2006) .........................15

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC

*Knight v. Red Door Salons, Inc.*

2009 WL 248367 (N.D. Cal. 2009) ............................................................27

*Lewis v. Starbucks Corp.*

No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ........................22

*Lynn's Food Stores, Inc. v. United States*

679 F.2d 1350 (11th Cir. 1982) ......................................................... 14, 19

*Monterrubio v. Best Buy Stores, L.P.*

291 F.R.D. 443 (E.D. Cal. 2013) ............................................................22

*Mousai v. E-Loan, Inc.*

No. C 06-01993 SI (N.D. Cal. May 30, 2007)..................................................26

*Mullane v. Cent. Hanover Bank & Trust Co.*

339 U.S. 306, 314 (1950)....................................................................29

*Noyes v. Kelly Servs., Inc.*

2:02-CV-2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008)...................................28

*Officers for Justice v. Civil Serv. Comm'n*

688 F.2d 615 (9th Cir. 1982) ......................................................... 19, 20, 21

*Otey v. CrowdFlower, Inc.*

No. 12-CV-05524-JST, 2015 WL 6091741 (N.D. Cal. Oct. 16, 2015)................................ 14, 19

*Phillips Petroleum Co. v. Shutts*

472 U.S. 797 (1985)..........................................................................29

*Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*

No. CV F 10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011)....................................27

*Rodriguez v. West Publ'g Corp.*

2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) .................................................20

*Romero v. Producers Dairy Foods, Inc.*

235 F.R.D. 474 (E.D. Cal. 2006) ............................................................15

*Shaw v. AMN Healthcare, Inc.*

   326 F.R.D. 247 (N.D. Cal. 2018)................................................................................15

*Silber v. Mabon*

   18 F.3d 1449 (9th Cir. 1994) ....................................................................................29

*Staton v. Boeing Co.*

   327 F.3d 938 (9th Cir. 2003) ..............................................................................26, 27

*Thornton v. Charter Commc'ns, LLC*

   Case No. 4:12CV479 SNLJ, 2014 WL 4794320 (E.D. Mo. 2014) ...........................24

*Van Vranken v. Atl. Richfield Co.*

   901 F. Supp. 294 (N.D. Cal. 1995) ...........................................................................26

*Vasquez v. Coast Valley Roofing*

   266 F.R.D. 482 (E.D. Cal. 2010) ..............................................................................27

*Vizcaino v. Microsoft Corp.*

   290 F. 3d 1043 (9th Cir. 2002) .................................................................................27

*Wang v. Chinese Daily News, Inc.*

   737 F.3d 538 (9th Cir. 2013) ..............................................................................16, 18

*Wren v. RGIS Inventory Specialists*

   No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .................20, 25, 27

*Yokoyama v. Midland Nat. Life Ins. Co.*

   594 F.3d 1087 (9th Cir. 2010) ..................................................................................18

**State Cases**

*Barela v. Ralph's Grocery Co.*

   No. BC070061 (Los Angeles Super. Ct., June 5, 1998) .............................................27

*Benton v. Telecom Network Specialists, Inc.*

   220 Cal.App.4th 701 (Cal. Ct. App. 2014) ................................................................18

*Big Lots Overtime Cases*

   JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004) .........................27

vi

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

*Castellanos* v. *The Pepsi Bottling Group*
    No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) ...................................................26

*Contreras v. Bank of America*
    No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010) ..................................26

*Davis v. The Money Store, Inc.*
    No. 99AS01716 (Sacramento Super. Ct., Dec. 26, 2000) .............................................27

*Ellmore v. Ditech Funding Corp.*
    No. SAVC 01-0093 (C.D. Cal., Sept. 12, 2002)...........................................................27

*Hasty v. Elec. Arts, Inc.*
    No. CIV 444821 (San Mateo Super. Ct., Sept. 22, 2006).............................................26

*Meewes v. ICI Dulux Paints*
    No. BC265880 (Los Angeles Super. Ct. Sept. 19, 2003) .............................................26

*Novak v. Retail Brand Alliance, Inc.*
    No. RG 05-223254 (Alameda Super. Ct., Sept. 22, 2009) ............................................26

*Van Liew v. North Star Emergency Services, Inc., et al.*
    No. RG17876878 (Alameda Cty. Super. Ct., Dec. 11, 2018).........................................26

**Federal Statutes**

29 U.S.C. § 216(b) ..........................................................................................................14

**Rules**

Fed.R.Civ.P. 23(a) ................................................................................................13, 15, 16, 17

Fed.R.Civ.P. 23(b) .....................................................................................................15, 16, 18

Fed.R.Civ.P. 23(c) .............................................................................................................29

Fed.R.Civ.P. 23(e) .....................................................................................................13, 19

**Other Authorities**

Conte, Newberg on Class Actions
    § 8.21 (3rd Ed. 1992) ..............................................................................................30

Conte, Newberg on Class Actions

§ 8.39 (3rd Ed. 1992) ................................................................................ 29

Manual for Complex Litigation, Judicial Role in Reviewing a Proposed Class Action Settlement

§ 21.61 (4th ed. 2004) ............................................................................... 13

Manual for Complex Litigation, Settlement Notice

§ 21.312 (4th ed. 2004) .............................................................................. 30

Posner, Economic Analysis of the Law (4th ed. 1992) ................................................ 28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

## I.  INTRODUCTION

This class and collective action is brought on behalf of Technicians who install cable television, phone, security, and internet services for Defendants O.C. Communications, Inc. ("OCC"), Comcast Corporation and Comcast Cable Communications Management, LLC (collectively, "Comcast"). It is based on Defendants' alleged violations of federal, California, and Washington labor laws. After two years of intensive litigation, including conditional certification, protracted discovery disputes, production of over 1.5 million pages of documents, motions to compel arbitration by OCC and Comcast, two separate mediations, and extensive arm's-length negotiations between counsel, the Parties have reached a settlement of this action, memorialized in the proposed Class Action Settlement Agreement ("Settlement"). Plaintiffs seek preliminary approval of the Settlement as to the California and Washington Classes and approval of the Settlement as to the Collective.[1]

The Parties have resolved the claims of approximately 4,500 Settlement Class Members, for a total non-reversionary settlement of $7,500,000. With this proposed Settlement, the Parties are resolving numerous wage and hour claims unlikely to have been prosecuted as individual actions. The Settlement also resolves the claims of the 1,018 Opt-In Plaintiffs, approximately 990 of whom would have otherwise been compelled to individual arbitration. The Settlement provides an excellent benefit to the Classes and Collective and an efficient outcome in the face of expanding litigation. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiffs respectfully request that the Court grant the requested approvals.

## II.  FACTUAL BACKGROUND

OCC is a national contractor for low-voltage installations, providing cable and equipment installations on behalf of cable operators—primarily, Comcast—throughout the United States. Cottrell Decl., ¶ 8. Comcast is a global telecommunications conglomerate and the largest cable TV company and home Internet service provider in the United States. *Id*. at ¶ 9. Plaintiffs allege that OCC and Comcast jointly employ the Class Members, who are classified as non-exempt employees,

[1] The Settlement is attached as **Exhibit 1** to the accompanying Declaration of Carolyn Hunt Cottrell in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement ("Cottrell Decl.").

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC

1  to carry out installation services.[2] *Id.* at ¶ 10. The workers perform these services throughout the
2  United States, including in California and Washington. *Id.*

3          Plaintiffs allege that Class Members—who work long and difficult hours, typically five to
4  six days per week, and upwards of ten hours per day—experience wage and hour violations in their
5  work with OCC, and with Comcast as an alleged joint employer. Plaintiffs further allege that
6  Defendants compensate Class Members on a hybrid hourly and piece-rate basis, based on the
7  various jobs and tasks that Class Members perform for Comcast's customers.[3] Plaintiffs allege that
8  Defendants implemented and maintained uniform practices of (1) pressuring Class Members to
9  underreport their hours, report meal periods that were never taken, and omit completed piece rates,
10 and; (2) manipulating Class Members' time cards to reduce hours, fabricate meal breaks, and
11 eliminate completed piece rates; (3) refusing to reimburse necessary expenses; (4) actively
12 preventing Class Members from taking meal and rest periods; and (5) issuing wage statements that
13 intentionally conceal the rate at which time and work are compensated, and otherwise make it
    impossible for Class Members to know how they were compensated.

14         As a result of these alleged violations, Plaintiffs allege that Defendants systematically
15 violate the Fair Labor Standards Act, as well as California, and Washington labor law.[4] Throughout
16 the relevant time period, Plaintiffs allege that Defendants eschewed their obligations to Plaintiffs
17 and Class Members by: (1) not paying proper minimum, overtime wages, and completed piece
18 rates; (2) failing to provide a reasonable opportunity to take meal and rest periods, and failing to
19

20

21 [2] Plaintiffs and members of the proposed Classes and Collective are referred to hereafter as "Class
    Members" or "Technicians" for ease of reading.
22 [3] Plaintiffs allege that Defendants also compensate Technicians with a "miscellaneous" hourly rate
    for "non-productive time," such as drive time between jobs. Plaintiffs allege that Defendants add
23 the total dollar value for "miscellaneous" time to the total dollar value for piece-rate work, and
    divide that total by the number of hours recorded as worked to generate Technicians' regular hourly
24 rates for the week, which are reflected on Technicians' pay stubs. Plaintiffs allege that Defendants
    then multiply the regular hourly rates by one-point-five (1.5) or two (2) to compute the overtime
25 rates or double time rates, respectively. The hourly rates reflected on Technicians' OCC pay stubs
    fluctuate weekly. Cottrell Decl., ¶ 11.
26 [4] Plaintiffs Soto, Stricklen, and Farias represent a California Class and assert claims under the
27 California Labor Code, while Plaintiff Ortega represents a Washington Class and asserts claims
    under applicable Washington law. Plaintiff Steeve Fondrose, along with the other Named Plaintiffs,
28 represent the nationwide collective and assert FLSA claims.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC

compensate Class Members when such meal and rest periods are not taken; (3) failing to reimburse necessarily-incurred expenses; and (4) failing to issue accurate, itemized wage statements. Plaintiffs aver that these alleged violations give rise to derivative claims, including failing to provide accurate, itemized wage statements and failing to pay all wages owed after termination of employment.

Plaintiffs allege that, as joint employers, OCC and Comcast are jointly liable for the violations at issue. Defendants have at all times denied, and continue to deny, all of these allegations, including Plaintiffs' theory that OCC and Comcast are joint employers, and deny any and all liability for Plaintiffs' claims. Defendants further deny that Plaintiffs' allegations are appropriate for class/collective and/or representative treatment for any purpose other than for settlement purposes only.

## III. PROCEDURAL HISTORY

### A.    Plaintiffs' Claims

Plaintiffs Desidero Soto and Steven Stricklen filed their initial Collective and Class Action Complaint in this action on January 18, 2017, which asserted FLSA and California law claims. Dkt. No. 1. On August 18, 2017, Plaintiffs filed their First Amended Collective and Class Action Complaint, which added Plaintiff Fondrose, refined the factual allegations, and added a cause of action for violation of California Labor Code Section 226.2. Dkt. No. 117. After conducting discovery into the joint employer issue, Plaintiffs filed their Second Amended Collective and Class Action Complaint on March 13, 2018, which added the Comcast Defendants, along with Plaintiff Ortega and the Washington state law claims that he asserts. Dkt. No. 232. On June 20, 2018, Plaintiffs filed their Third Amended Collective and Class Action Complaint ("TAC"), which added Plaintiff Farias and California Private Attorneys General Act ("PAGA") claims against Comcast. *See* Dkt. No. 255.

In the operative TAC (Dkt. No. 253-1), Plaintiffs allege eighteen causes of action under the federal Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the California Labor Code and Business and Professions Code §§ 17200, *et seq.* ("UCL"), and Washington wage and consumer protection laws. Cottrell Decl. at ¶ 17. Plaintiffs assert the first cause of action under the FLSA on behalf of themselves and the Collective for Defendants' alleged failure to compensate

Technicians for all hours worked, including legally mandated overtime premiums. *Id.*

Plaintiffs Soto, Stricklen, and Farias assert eleven additional causes of action under California law on behalf of themselves and the California class: (1) failure to authorize, permit, and/or make available meal and rest periods; (2) failure to compensate piece-rate workers for rest and recovery periods and other non-productive time, and related wage statement violations; (3) failure to pay for all hours worked; (4) failure to pay minimum wage; (5) failure to pay overtime wages; (6) failure to reimburse for necessary business expenditures (including tools and supplies); (7) waiting time penalties; (8) failure to provide itemized wage statements; (9) violation of the UCL for unlawful, unfair, and/or fraudulent business acts or practices; (10) penalties pursuant to § 2699(a) of the PAGA; and (11) penalties pursuant to § 2699(f) of the PAGA. *Id.* at ¶ 18.

Plaintiff Ortega asserts six additional causes of action under Washington law on behalf of himself and the Washington class: (1) failure to pay minimum wage; (2) failure to pay overtime wages; (3) failure to authorize, permit, and/or make available meal and rest periods; (4) failure to pay all wages due upon termination; (5) willful refusal to pay wages; and (6) violation of Washington's Consumer Protection Act, RCW 19.86, *et seq. Id.* at ¶ 19.

**B. FLSA Conditional Certification**

Plaintiffs moved for conditional certification of the FLSA claim and facilitation of notice under 29 U.S.C. § 216(b) on July 17, 2017. Dkt. No. 105. On August 31, 2017, the Court conditionally certified a Collective of Defendants' Technicians. *See* Dkt. No. 127. The Administrator disseminated the Notice to the Collective members on September 29, 2017, including 3,822 mailed notices and 3,243 emailed notices, with an opt-in deadline of December 28, 2017. Cottrell Decl. at ¶ 21. 1,018 Technicians opted into the Collective. *Id.*

**C. Discovery**

The Parties have engaged in extensive and voluminous discovery, including written discovery and depositions. To date, OCC has produced well in excess of 1.5 million documents, which Plaintiff has extensively analyzed using dedicated document-review attorneys and technology-assisted review. Cottrell Decl. at ¶ 22. These documents included policies and procedures regarding how the work should be completed, timekeeping, overtime, compensation, and meal and rest breaks. OCC also produced timecards, payroll documents, personnel files, and

agreements and communications between OCC and Comcast. The production included massive amounts of ESI, including hundreds of thousands of emails and attachments. *Id*.

Plaintiffs secured this sizeable production through extensive, diligent discovery practice. Cottrell Decl. at ¶ 23. Plaintiffs and OCC litigated numerous discovery disputes, which resulted in the Parties filing joint letter briefs with the Court on October 24, 2017 (Dkt. No. 150), December 8, 2017 (Dkt. No. 192), December 29, 2017 (Dkt. No. 208), and March 14, 2018 (Dkt. No. 234).

Plaintiffs also took four depositions of OCC representatives, including Chief Operating Officer Larry Wray, Payroll and Billing Manager Denae Hefley, Vice President Reggie Wight, and Manager and Regional Director Joe Raposa. Cottrell Decl. at ¶ 24. Additionally, Plaintiffs took one deposition of a Comcast representative, Director of Business Partner Development Kristen Shrader, and had noticed depositions of two other Comcast officials when the Parties reached an agreement to settle the case. *Id*. OCC took the depositions of Plaintiffs Soto and Stricklen. *Id*.

### D. Motions to Compel Arbitration

Defendants each filed motions to compel arbitration on August 23, 2018, based on the varying forms of arbitration agreements that OCC had entered with Class Members. Dkt. Nos. 259, 261. Plaintiffs opposed OCC's motion chiefly on the basis that OCC had waived its right to arbitrate by not moving to compel arbitration until 18 months into the proceedings, by which time there had been lengthy and vigorous litigation in federal court. *See* Dkt. No. 262. Plaintiffs cited OCC's delay in producing the arbitration agreements, and that OCC did not move to stay the proceedings pending the Supreme Court's review of the Ninth Circuit's decision in

, in support of their waiver argument. *Id*. Plaintiffs opposed Comcast's motion, *inter alia*, on the grounds that Comcast was not a signatory to the agreements, and by further challenging Comcast's equitable estoppel and agency exception arguments on legal and factual grounds. *See* Dkt. No. 263.

The Court granted Defendants' motion as to all the Named Plaintiff's and approximately 990 Opt-In Plaintiffs on November 21, 2018. *See* Dkt. No. 272. Specifically, the Court ruled that the claims of Plaintiffs who had executed the 2013, 2015, and 2017 versions of the arbitration

agreements were compelled to arbitration. The Court denied in part the motions only and without prejudice in regard to the PAGA claims and the claims of eight Opt-In Plaintiffs who signed a 2004 arbitration agreement. Dkt. No. 272. The Court ruled that Comcast was entitled to compel arbitration on third-party beneficiary and agency principles.

Thereafter, Plaintiffs' counsel served 678 individual demands for arbitration on Defendants on December 12, 2018. Cottrell Decl. at ¶ 28. These demands each asserted the claims on an individual basis for 678 Opt-In Plaintiffs subject to the arbitration order. *Id*. Plaintiffs' counsel were able to serve these hundreds of demands as a result of their outreach and investigation efforts with Opt-In Plaintiffs and other case participants; through that process, Plaintiffs' counsel entered retainers with these workers that allowed Plaintiffs' counsel to file individual arbitration proceedings. *Id*. As OCC was required to pay the arbitration fees under the 2013, 2015, and 2017 versions of the agreements, the filing of these demands would potentially subject Defendants to millions of dollars in arbitration fees. *Id*.

### E.  Mediation

Plaintiffs and OCC first mediated this dispute on November 6, 2017 before Michael Dickstein, a respected and experienced wage and hour mediator. Cottrell Decl. at ¶ 29. This initial mediation was unsuccessful, and litigation continued in the ordinary course, including the addition of the Comcast Defendants to the case in March 2018. *Id*.

On October 18, 2018, the Plaintiffs, OCC and Comcast participated in a mediation session with Jeff Ross, another highly respected and experienced wage and hour mediator. *Id*. at ¶ 30. The session lasted some 14 hours, but the Parties were unable to reach an agreement on that date. *Id*. Litigation continued, and in particular, Plaintiffs commenced depositions of Comcast officials, while additional settlement negotiations continued through the mediator. *Id*.  On December 19, 2018, Mr. Ross issued a mediator's proposal, which contained the essential terms of the instant Settlement. All Parties accepted the proposal by December 20, 2018. *Id*.

Throughout the mediation process, the Parties engaged in serious and arm's-length negotiations, culminating in the mediator's proposal. *Id.* at ¶ 31. After the mediation, counsel for the Parties worked to finalize the proposed long-form Settlement and corresponding notice

1  documents, subject to the Court's approval. *Id.* The Settlement Agreement was fully-executed on

2  March 1, 2019. *Id.*

3  **IV. TERMS OF THE SETTLEMENT**

4  **A. Basic Terms and Value of the Settlement**

5  OCC has agreed to pay a non-reversionary Gross Settlement Amount of $7,500,000.00 to

6  settle all aspects of the case. Cottrell Decl. at ¶ 32. The "Net Settlement Amount," which is the

7  amount available to pay settlement awards to the Class Members, is defined as the Gross Settlement

8  Amount less: the payment made to the California Labor & Workforce Development Agency

9  ("LWDA") pursuant to PAGA ($75,000)[5]; any enhancement payments awarded to the Class

10  Representatives (up to $15,000.00 for Plaintiff Soto and up to $10,000.00 for Plaintiffs Stricklen,

11  Fondrose, Ortega, and Farias); the Settlement Administrator's fees and costs (up to $40,000.00);

12  and any attorneys' fees and costs awarded to Class Counsel (fees of up to one third of the Gross

13  Settlement Amount, or $2,500,000[6], plus costs currently estimated at $180,000). *Id.*

14  The Gross Settlement Amount is a negotiated amount that resulted from substantial arms'

15  length negotiations and significant investigation and analysis by Plaintiffs' Counsel. Plaintiffs'

16  Counsel based their damages analysis and settlement negotiations on formal and informal

17  discovery, including the payroll and timekeeping data, depositions, and approximately 270

18  interviews with Class Members. Schalman-Bergen Decl. at ¶ 9. Plaintiffs' Counsel analyzed the

19  payroll data for all of these employees to obtain average hourly rates of pay, which was then used in

20  conjunction with amounts of unpaid time to determine estimated damages for minimum wage and

21  overtime violations. Based on outreach analysis, Plaintiffs assumed that they could reasonably

22  prove 2.5 hours of off-the-clock time per day, along with meal period and rest break violations

23

24  [5] The Parties agree to allocate $100,000.00 of the Gross Settlement Amount to the settlement of the

25  PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. *Id.*
The Settlement Administrator shall pay 75%, or $75,000.00, of this amount to the LWDA, and

26  25%, or $25,000.00, shall remain as part of the Net Settlement Amount. Cottrell Decl. at ¶ 33.

27  [6] The Settlement Administrator will deposit a ten (10) percent holdback of the Fee Award into a
separate interest-bearing account, which will be released following completion of the distribution

28  process and filing of the Post-Distribution Accounting with the Court. Settlement Agreement, ¶
29.b.4.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC

1    amounting to two penalty hours per week per Technician.

2           Using these averages and assumptions and further assuming that Plaintiffs and the Class

3    Members would certify all of their claims and prevail at trial, Plaintiffs' Counsel calculated the total

4    potential exposure if Plaintiffs prevailed on all of their claims at trial, including all penalties[7] from

5    willful or bad faith conduct, to be approximately $43.6 million.[8] Schalman-Bergen Decl. at ¶ 26.

6    The total amount of damages is broken down as follows:

7           Plaintiffs calculated that unpaid wages owed, either as a result of minimum wage violations

8    or overtime violations based on the assumption of 2.5 hours off the clock in each workweek would

9    total approximately $8.7 million for Settlement Class Members. Additionally, these amounts are

10   subject to liquidated damages, assuming that willfulness could be demonstrated, which would

11   double the potential unpaid wage damages to approximately $17.4 million. Schalman-Bergen Decl.

12   at ¶ 27.

13          While Opt-In Plaintiffs who did not work in California and Washington would only be able

14   to recover under the FLSA, individuals who worked in California and Washington who were

15   successful in their claims would also be entitled to recover additional penalties and damages

16   available under those state laws, which can be substantial, and could total as much as an additional

17   $26.2 million. Schalman-Bergen Decl. at ¶ 28. For meal and rest break violations, the estimated

18   potential damages associated with premium pay for missed meal and rest breaks to the California

19   and Washington Class Members would be $5.9 million. *Id*. For derivate and penalty claims,

20   Plaintiffs estimate the waiting time penalty claim for California Class Members under Labor Code

21

22   [7] The damages figures included Defendants' additional exposure to PAGA penalties. But note,
23   because Labor Code §§ 1194.2, 203, and 226 already incorporate their own penalty provisions, an
     award of additional PAGA penalties – or an award of the maximum penalty amount provided by
24   PAGA – is uncertain. *See* Cal. Lab. Code § 2699(f); *see also Guifi Li v. A Perfect Day Franchise
     Inc.*, 2012 WL 2236752 at *17 (N.D. Cal. 2012). Moreover, even assuming Plaintiffs' remaining
25   claims qualify for PAGA penalties, any such award is not automatic. Cal. Lab. Code § 2699(e)(2);
     *see* also *Thurman v. Bayshore Transit Mgmt., Inc.*, .App.4th 1112, 1135-36 (Cal. App. Ct. 2012).
26   [8] This figure includes liquidated damages for unpaid overtime under the FLSA. 29 U.S.C. § 216(b)
     (Liquidated damages for unpaid overtime is in an amount equal to the unpaid overtime.); *Haro v.*
27   *City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014). If an employer's conduct constitutes a
     "knowing violation" of the statute, the FLSA's standard two-year statute of limitations may be
28   extended to three years. 29 U.S.C. § 255(a).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

Section 203 at approximately $3.3 million. *Id.* Plaintiff estimate the wage statement claim for California Class Members under Labor Code Section 226 could total as much as $8.3 million. Plaintiffs estimated the PAGA penalties for applicable California Technicians at approximately $8.7 million. *Id.*

The negotiated non-reversionary Gross Settlement Amount of $7,500,000 represents more than 86% of the approximate $8.7 million that we calculated in unpaid wages that could have been owed to all Class Members if each class member had been able to prove that he or she worked 2.5 hours off the clock in every workweek during the relevant time period, which, for individuals who did not work in Washington and California, might be the only damages that they could potentially recover.  Schalman-Bergen Decl. ¶ 29.  When adding potential penalties that Class Members who worked in California and Washington could be owed in addition to their unpaid wages available under their Fair Labor Standards Act claims, the $7,500,000 million settlement amount represents approximately 17.2% of Defendants' total potential exposure of $43.6 million. *Id.* Again, these figures are based on Plaintiffs' assessment of a best-case-scenario. To have obtained such a result at trial (or in thousands of individual arbitrations), Plaintiffs would have had to prove that all Class Members worked off the clock 2.5 hours in every work week and that Defendants acted knowingly or in bad faith. Schalman-Bergen Decl. at ¶ 29.

Further, in reaching this settlement, Plaintiffs considered the risk that the OCC would be unable to pay a significant portion of damages, and that the Court, in the end, would decline to find Comcast liable as a joint employer. Schalman-Bergen Decl. at ¶ 30-32. Defendant OCC provided confidential financial information to Plaintiffs to support its assertion of an inability to pay these damages. Schalman-Bergen Decl. at ¶ 30. Plaintiffs' counsel analyzed and took these figures into account in assessing the risks inherent in refusing the mediator's proposal for settlement. *Id.* Plaintiffs also considered the likelihood that Comcast would not be held liable under a theory of joint employer liability, as evidenced by several cases in other district courts. Schalman-Bergen Decl. at ¶ 31.

Plaintiffs and their counsel considered all of these risks, and those described hereinafter, when considering the proposed Settlement. Schalman-Bergen Decl. at ¶ 33. The settlement will result in immediate and certain payment to Settlement Class Members of meaningful amounts. The

9

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC

average recovery is $1,033 per Class Member (this amount divides the net recovery by total number of Class Members), or approximately $40 per workweek. Schalman-Bergen Decl. at ¶ 23. This amount provides significant compensation to the Class Members, and the Settlement provides an excellent recovery in the face of expanding and uncertain litigation. In light of all of the risks, the settlement amount is fair, reasonable, and adequate. Cottrell Decl. at ¶ 36. Schalman-Bergen Decl. at ¶ 33.

### B.  Class and Collective Definitions

An individual is a member of the Settlement Class under the proposed Settlement if he or she belongs to any of the following:

▪ The "**California Class**" means all Technicians who are or were employed by OCC in the State of California at any time from January 18, 2013 through December 21, 2018, and who do not validly exclude themselves from the Settlement. The California Class is to be certified for settlement purposes only under Federal Rule of Civil Procedure 23.

▪ The "**Washington Class**" means all Technicians who are or were employed by OCC in the State of Washington from March 13, 2015 through December 21, 2018, and who do not validly exclude themselves from the Settlement. The Washington Class is to be certified for settlement purposes only under Federal Rule of Civil Procedure 23.

▪ The "**Collective**" is a certified collective action for settlement purposes only pursuant to 29 U.S.C. § 216(b), which includes all Opt-In Plaintiffs who are or were employed by OCC at any time from and including January 18, 2014 through December 21, 2018. There are 1,018 Opt-In Plaintiffs. Cottrell Decl. at ¶ 37.

### C.  Allocation and Awards

The Net Settlement Amount to be paid to Class Members is approximately $4,650,000.00. Cottrell Decl. at ¶ 38. Class Members will each receive a settlement award check without the need to submit a claim form. *Id.* at ¶ 39. Each Class Member's settlement share will be determined based on the total number of weeks that the respective Class Member worked for Defendants during the applicable limitations period. *Id.* at ¶ 40. Specifically, each Class Member will be credited for the number of weeks that he or she worked for OCC at any time from January 18,

2013 through December 21, 2018 for California Class Members; from March 13, 2015 through December 21, 2018 for Washington Class members, and three years prior to the Opt-In Date through December 21, 2018 for Opt-In Plaintiffs. Settlement Agreement, ¶ 33.a.i. Each workweek will be equal to one settlement share, but to reflect the increased value of state law claims, workweeks during which work was performed in California or Washington will be equal to three settlement shares. *Id*.

The total number of settlement shares for all Settlement Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. Settlement Agreement, ¶ 33.a.ii. That figure will then be multiplied by each Class Member's number of settlement shares to determine the Class Member's Settlement Award. *Id*. The Settlement Notice will provide the estimated Settlement Award and number of workweeks for each Class Member, assuming full participation in the settlement. Settlement Award and eligibility determinations will be based on employee workweek information that OCC will provide to the Settlement Administrator; however Class Members will be able to dispute their workweeks by submitting convincing evidence proving that they worked more workweeks than shown by OCC records. Settlement Agreement, ¶ 23.

Settlement Awards will be paid to Class Members by the Settlement Administrator within 30 days after the occurrence of the "Effective Date." Settlement Agreement, ¶ 39. Settlement Award checks will remain valid for 180 days from the date of their issuance. Settlement Agreement, ¶ 40.  The Settlement Administrator will send a reminder letter via U.S. mail and email to those Class Members with uncashed checks at 90 days remaining, and will place a call at 60 days remaining. *Id*.  The disposition of any uncashed check funds remaining after the check-cashing deadline will depend on the total amount.

If the total residual amount is less than $75,000, then the amount will revert to *cy pres*. Settlement Agreement, ¶ 41.a. The Parties have proposed the University of California Berkeley's Institute for Research on Labor and Employment, which promotes better understanding of the conditions, policies, and institutions that affect the well-being of workers and their families and

communities, as the *cy pres* recipient, subject to the Court's approval.[9] If the total residual amount is $75,000 or greater, a second distribution will occur to those Class Members who cashed their Settlement Award checks. Settlement Agreement, ¶ 41.b. The second distribution will occur on a *pro rata* basis according to workweeks. In the event of such a redistribution, the additional settlement administration costs will be deducted from the total amount of uncashed checks prior to the redistribution. Within 21 days after the final distribution to the *cy pres* recipient or to Class Members who cashed their checks, Plaintiffs will file a Post-Distribution Accounting in accordance with the Northern District's Procedural Guidance. Settlement Agreement, ¶ 41.d.

### D.  Scope of Release

The release contemplated by the proposed Settlement will release all claims in connection with the lawsuit that were or could have been asserted in the operative TAC based on the facts alleged in support of Plaintiffs' specific causes of action. Settlement Agreement, ¶ 17. Upon final approval, Class Members will be deemed to have released such claims based on California and Washington law. Additionally, upon final approval, Named Plaintiffs[10] and Collective Members will be deemed to have released their claims under the FLSA. As to other Class Members, only those who cash or deposit their Settlement Award check will release their FLSA claims. The release extends to December 21, 2018, and the Released Parties are Defendants and their related persons and entities. Settlement Agreement, ¶¶ 2.bb, 17. The release period for PAGA claims runs from November 14, 2015 through December 21, 2018. Settlement Agreement, ¶ 18.

### E.  Settlement Administration

The Parties have agreed to use CPT Group, Inc. to administer the Settlement, for total fees and costs it has agreed will not exceed $40,000. Cottrell Decl. at ¶ 50.  The Settlement Administrator will distribute the Notice of Settlement via mail and email, calculate individual settlement payments, calculate all applicable payroll taxes, withholdings and deductions, and

---

[9] The Parties and their counsel do not have any financial, business, or personal relationships with the Institute for Research on Labor and Employment, to the knowledge of Plaintiffs' counsel. Cottrell Decl., ¶ 45.

[10] The Named Plaintiffs also agree to a general release. Settlement Agreement, ¶ 20.

1   prepare and issue all disbursements to Class Members, the LWDA, the Class Representatives, Class

2   Counsel, the LWDA, and applicable state, and federal tax authorities. *Id.*; Settlement Agreement, ¶¶

3   22, 33, 36.  The Settlement Administrator is also responsible for the timely preparation and filing of

4   all tax returns and reporting, and will make timely and accurate payment of any and all necessary

5   taxes and withholdings. Settlement Agreement, ¶ 36 The Settlement Administrator will establish a

6   settlement website that will allow Class Members to view the Class Notice (in generic form), the

7   Settlement Agreement, and all papers filed by Class Counsel to obtain preliminary and final

8   approval of the Settlement. Settlement Agreement, ¶ 22.b. The Settlement Administrator will also

9   establish a toll-free call center for telephone inquiries from Class Members. *Id*.

10   **V.   ARGUMENT**

11       **A.   The Court Should Grant Preliminary Approval of the Settlement as to the
California and Washington Classes and Approval of the Settlement as to the
Collective**

12

13          A certified class action may not be settled without Court approval. *See* Fed.R.Civ.P. 23(e).

14   Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed

15   settlement upon a written motion; (2) dissemination of notice of the settlement to all class members;

16   and (3) a final settlement approval hearing at which objecting class members may be heard, and at

17   which evidence and argument concerning the fairness, adequacy, and reasonableness of the

18   settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed*

19   *Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed

20   settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150

21   F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two

22   primary prerequisites before a court may grant certification for purposes of preliminary approval:

23   (1) that the settlement class meets the requirements for class certification if it has not yet been

24   certified; and (2) that the settlement is fair, reasonable, and adequate. Fed.R.Civ.P. 23(a), (e)(2);

25   *Hanlon*, 150 F.3d at 1020.

26          This class action settlement satisfies the requirements of Rule 23(a) and (b), and it is fair,

27   reasonable, and adequate in accordance with Rule 23(e)(2). Cottrell Decl. at ¶ 53. Accordingly, the

28

1   Court should preliminary approve the settlement as to the Classes.[11]

2       In the FLSA context, court approval is required for FLSA collective settlements, but the

3   Ninth Circuit has not established the criteria that a district court must consider in determining

4   whether an FLSA settlement warrants approval. *See, e.g., Dunn v. Teachers Ins. & Annuity Ass'n of*

5   *Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016); *Otey v.*

6   *CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015).

7   Most courts in this Circuit, however, first consider whether the named plaintiffs are "similarly

8   situated" to the putative class members within the meaning of 29 U.S.C. § 216(b), and then evaluate

9   the settlement under the standard established by the Eleventh Circuit in *Lynn's Food Stores, Inc. v.*

10  *United States*, 679 F.2d 1350, 1355 (11th Cir. 1982), which requires the settlement to constitute "a

11  fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey*, 2015 WL

12  6091741, at *4. "If a settlement in an employee FLSA suit does reflect a reasonable compromise

13  over issues...that are actually in dispute," the district court may "approve the settlement in order to

14  promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354;

15  *Otey*, 2015 WL 6091741, at *4.

16      The Court has already conditionally certified a collective under § 216(b) for Plaintiffs'

17  FLSA claims, and 1,018 Technicians have opted in to the action. *See* Dkt. No. 127; Cottrell Decl. at

18  ¶¶ 20-21. Defendants have not moved for decertification of the FLSA claim. Cottrell Decl. at ¶ 54.

19  The proposed Settlement provides an excellent recovery to the Opt-In Plaintiffs in a reasonable

20  compromise. Accordingly, the Court should approve the Settlement as to the Collective.

21      **B.  The Court Should Conditionally Certify the California and Washington**
22      **Classes.**

23      A class may be certified under Rule 23 if (1) the class is so numerous that joinder of all

24  members individually is "impracticable"; (2) questions of law or fact are common to the class; (3)

25

26

27  [11] Plaintiffs acknowledge that, in the event that the Settlement Agreement is not approved by the
    Court, class and collective certification would be contested by Defendants, and Defendants fully
28  reserve and do not waive any arguments and challenges regarding the propriety of class and
    collective action certification.

1   the claims or defenses of the class representative are typical of the claims or defenses of the class;

2   and (4) the person representing the class is able to fairly and adequately protect the interests of all

3   members of the class. Fed.R.Civ.P. 23(a). Furthermore, Rule 23(b)(3) provides that a class action

4   seeking monetary relief may only be maintained if "the court finds that the questions of law or fact

5   common to class members predominate over any questions affecting only individual members, and

6   that a class action is superior to other available methods for fairly and efficiently adjudicating the

7   controversy." Fed.R.Civ.P. 23(b)(3). Applying this standard, numerous cases similar to this case

8   have certified classes of employees who have suffered wage and hour violations under California

9   and Washington law.[12] Likewise, the California and Washington Classes meet all of these

10  requirements.

11              **1.   The Classes are numerous and ascertainable.**

12          The numerosity prerequisite demands that a class be large enough that joinder of all

13  members would be impracticable. Fed.R.Civ.P. 23(a)(1). While there is no exact numerical cut-off,

14  courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g.,*

15  *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy*

16  *Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The approximately 3,500 members of the

17  California Class and 350 members of the Washington Class render the each class so large as to

18  make joinder impracticable. Cottrell Decl. at ¶ 55. The Class Members may be readily identified

19  from OCC's payroll records. *Id.*

20

21

22

---

23  [12] *See, e.g., Caudle v. Sprint/United Mgmt. Co.,* No. C 17-06874 WHA, 2018 WL 6618280, at *7

24  (N.D. Cal. Dec. 18, 2018) (certifying California Rule 23 class in a case asserting policy-driven
     wage violations); *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 275 (N.D. Cal. 2018) (certifying
     California Rule 23 class in a case asserting policy-driven off-the-clock, overtime, and meal and rest

25  break violations, in joint employment context); *Kirkpatrick v. Ironwood Commc'ns, Inc.*, No. C05-
     1428JLR, 2006 WL 2381797, at *14 (W.D. Wash. Aug. 16, 2006) (certifying Washington Rule 23

26  class in highly analogous case involving off-the-clock, overtime, and meal break violations under
     Washington law for technicians who install DirecTV services); *Chavez v. IBP, Inc.*, No. CV-01-

27  5093-RHW, 2005 WL 6304840, at *2 (E.D. Wash. May 16, 2005) (denying motion to decertify
     FLSA and Rule 23 classes of employees asserting federal and Washington law claims for wage and

28  hour violations).

### 2.   Plaintiffs' claims raise common issues of fact or law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Rule 23(a)(2) has been construed permissively. *Hanlon*, 150 F.3d at 1019. Plaintiffs "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

Common questions of law and fact predominate here, satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaint. Cottrell Decl. at ¶ 56. Defendants have uniform policies applicable to all Technicians. *Id.* at ¶ 57. Specifically, Plaintiffs allege that Technicians all perform essentially the same job duties—installing Comcast services pursuant to Defendants' standards and requirements. Plaintiffs allege that the wage and hour violations are in large measure borne of OCC's relationship with Comcast and the standardized policies, practices, and procedures that Comcast imposes, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. In particular, the Technicians are subject to the same: hiring and training process; timekeeping, payroll, and compensation policies; meal and rest period policies and practices; and reimbursement policies. *Id.* Plaintiffs' other derivative claims will rise or fall with the primary claims. *Id.* Because these questions can be resolved at the same juncture, Plaintiffs contend the commonality requirement is satisfied for the Classes. *Id.*

With regards to the Collective, this Court has already made an initial determination that the Technicians are similarly situated. Plaintiffs' conditional certification motion called on the Court to "decid[e] whether a collective action should be certified for the purpose of sending notice of the action to potential class members." *Guilbaud v. Sprint/United Management Co.*, Inc., 2014 WL 10676582, at *1 (N.D. Cal. 2014). The Court concluded that Plaintiffs have satisfied their burden of making substantial allegations and a modest factual showing Technicians were subject to a common practice or policy that violated the FLSA. Dkt. No. 127, p. 2. As an example, the Court pointed to Plaintiffs' allegation that Technicians are not compensated for time spent while at company warehouses at the beginning of their shifts, supported by the declarations of ten Technicians. These

practices and policies raise common issues of law and fact. Cottrell Decl. at ¶ 58. Because

Defendants maintain various common policies and practices as to what work they compensate and

what work they do not compensate, and apply these policies and practices to the Technicians,

Plaintiffs contend that there are no individual defenses available to Defendants. *Id*. at ¶ 35.

### 3.   Plaintiffs' claims are typical of the claims of the Classes.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the

members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a

representative's claims are 'typical' if they are reasonably coextensive with those of absent class

members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs'

claims are typical of those of all other Class Members. Cottrell Decl. at ¶ 59. They were subject to

the alleged illegal policies and practices that form the basis of the claims asserted in this case. *Id.*

Interviews with Class Members and review of timekeeping and payroll data confirm that the

employees throughout California and Washington were apparently subjected to the same alleged

illegal policies and practices to which Plaintiffs were subjected. *Id.* at ¶ 60. Thus, the typicality

requirement is also satisfied. *Id.*

### 4.   Plaintiffs and Class Counsel will adequately represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show

"(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the

class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict

between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469.

Plaintiffs' claims are in line with the claims of the Classes, and Plaintiffs' claims are not

antagonistic to the claims of Class Members. Cottrell Decl. at ¶ 61. *Id.* Plaintiffs have prosecuted

this case with the interests of the Class Members in mind. *Id.* Moreover, Class Counsel has

extensive experience in class action and employment litigation, including wage and hour class

actions, and do not have any conflict with the classes. *Id.* at ¶¶ 5-7, 62; Declaration of Sarah

Schalman-Bergen in Support of Plaintiffs' Motion for Preliminary Approval of Class and

Collective Action Settlement, ¶¶ 1-4.

1

**5.   The Rule 23(b)(3) requirements for class certification are also met.**

2

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over

3

any questions affecting only individual members" and that a class action is "superior to other

4

available methods for fairly and efficiently adjudicating the controversy." "The predominance

5

analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual

6

issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant

7

adjudication by representation.'" *Wang,* 737 F.3d at 545.

8

Here, Plaintiffs contend the common questions raised in this action predominate over any

9

individualized questions concerning the California Class. Cottrell Decl. at ¶ 63. The Classes are

10

entirely cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and

11

practices of Defendants, rather than the treatment the Class Members experienced on an individual

12

level. *Id.* As a result, the resolution of these alleged class claims would be achieved through the use

13

of common forms of proof, such as Defendants' uniform policies, and would not require inquiries

14

specific to individual class members.[13] *Id.*

15

Further, Plaintiffs contend the class action mechanism is a superior method of adjudication

16

compared to a multitude of individual suits. Cottrell Decl. at ¶ 64. To determine whether the class

17

approach is superior, courts are to consider: (A) the class members' interests in individually

18

controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation

19

concerning the controversy already begun by or against class members; (C) the desirability or

20

undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely

21

difficulties in managing a class action. Fed.R.Civ.P. 23(b)(3)(A)-(D).

22

Here, the Class Members do not have a strong interest in controlling their individual claims,

23

although many Class Members have agreed to pursue their claims in individual arbitrations as a last

24

---

25

26

[13] Although the amount of time worked off-the-clock and number of missed meal and rest periods may vary, these are damages questions and should not impact class certification. *Yokoyama v.*

27

*Midland Nat. Life Ins. Co*., 594 F.3d 1087, 1094 (9th Cir. 2010). The fact that individual inquiry might be necessary to determine whether individual employees were able to take breaks despite the

28

Defendants' allegedly unlawful policy is not a proper basis for denying certification. *Benton v. Telecom Network Specialists, Inc.*, 220 Cal.App.4th 701 (Cal. Ct. App. 2014).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC

resort. Cottrell Decl. at ¶ 65. The action involves thousands of workers with very similar, but relatively small, claims for monetary injury. *Id.* If the Class Members proceeded on their claims as individuals, their many individual suits would require duplicative discovery and duplicative litigation, and each Class Member would have to personally participate in the litigation effort to an extent that would never be required in a class proceeding. *Id.* Thus, the class action mechanism would efficiently resolve numerous substantially identical claims at the same time while avoiding a waste of judicial resources and eliminating the possibility of conflicting decisions from repetitious litigation and arbitrations. *Id.*

The issues raised by the present case are much better handled collectively by way of a settlement. *Id.* at ¶ 66. Manageability is not a concern in the settlement context. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality, ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal system with cases that could easily be kept in this proceeding. Cottrell Decl. at ¶ 66. Accordingly, class treatment is efficient and warranted, and the Court should conditionally certify the California and Washington Classes for settlement purposes.

### C. The Settlement Should Be Preliminarily Approved as to the Classes and Approved as to the Collective Because It Is Fair, Reasonable, and Adequate.

In deciding whether to approve a proposed class or collective settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Lynn's Food Stores*, 679 F.2d at 1354-55; *Otey*, 2015 WL 6091741, at *4. Included in this analysis are considerations of: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length

1    bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6

2    (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly

3    where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095,

4    1101 (9th Cir. 2008). In light of these factors, the proposed settlement is fair, reasonable, and

5    adequate.

6              **1.   The terms of the Settlement are fair, reasonable, and adequate.**

7              In evaluating the fairness of a proposed settlement, courts compare the settlement amount

8    with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp.*

9    *Sec. Litig.,* 213 F.3d 454, 459 (9th Cir.2000). Courts routinely approve settlements that provide a

10   fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice,* 688 F.2d at 623.[14] A

11   review of the Settlement Agreement reveals the fairness, reasonableness, and adequacy of its terms.

12   Cottrell Decl. at ¶ 68. The Gross Settlement Amount of $7,500,000, will represents more than 86%

13   of the approximate $8.7 million that we calculated in unpaid wages that would have been owed to

14   all class members if each class member had been able to prove that he or she worked 2.5 hours off

15   the clock in every workweek during the relevant time period. Schalman-Bergen Decl. at ¶ 29. When

16   adding potential penalties that class members who worked in California and Washington could be

17   owed in addition to their unpaid wages available under their Fair Labor Standards Act claims, the

18   $7,500,000 settlement amount represents approximately 17.2% of Defendants' total potential

19   exposure of $43.6 million. *Id.* Again, these figures are based on Plaintiffs' assessment of a best-

20   case-scenario. To have obtained such a result at trial and potentially in hundreds of individual

21   arbitrations, Plaintiffs would have had to prove that each Plaintiff worked off the clock 2.5 hours in

22   every work week and that Defendants acted knowingly or in bad faith. *Id.* These figures would of

---

24   [14] *Rodriguez v. West Publ'g Corp.*, 2007 WL 2827379, at *9 (C.D. Cal. Sept. 10, 2007) (approving
25   30% of damages); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256-58 (D. Del. 2002)
     (approving 33% of damages); *In Re Sunrise Secs. Litig.*, 131 F.R.D. 450, 457 (E.D. Pa. 1990)
26   (approving 20% of damages); *In Re Armored Car Antitrust Litig.*, 472 F.Supp. 1357, 1373 (N.D.
     Ga.1979) (settlements with a value of 1% to 8% of the estimated total damages were approved);
27   *Entin v. Barg*, 412 F.Supp. 508, 514 (E.D. Pa. 1976) (approving 17% of damages); *In Re Four
     Seasons Secs. Laws Litig.*, 58 F.R.D. 19, 37 (W.D. Okla.1972) (approving 8% of damages).

1  course be disputed and hotly contested. Schalman-Bergen Decl. at ¶ 30. The result is well within the

2  reasonable standard when considering the difficulty and risks presented by pursuing further

3  litigation. Schalman-Bergen Decl. at ¶ 25. Furthermore, after reviewing financial information

4  provided by OCC, Plaintiffs recognize OCC's potential inability to pay a significant portion of

5  damages and the reality that while Comcast may have an ability to pay, Comcast could successfully

6  avoid joint employer liability here as it has in similar cases. Schalman-Bergen Decl. at ¶ 32. The

7  final settlement amount takes into account the substantial risks inherent in any class action wage-

8  and hour case, as well as the procedural posture of this action and the specific defenses asserted by

9  Defendants, many of which are unique to this case. Cottrell Decl. at ¶ 70*; Schalman-Bergen Decl.*

10  at ¶¶ 30-33*; see Officers for Justice*, 688 F.2d at 623.

11  **2.  The Parties have agreed to distribute settlement proceeds tailored to the Classes and Collective and their respective claims.**

12  In an effort to ensure fairness, the Parties have agreed to allocate the settlement proceeds

13  amongst Class Members in a manner that recognizes that amount of time that the particular Class

14  Member worked for Defendants in the applicable limitations period. The allocation method, which

15  is based on the number of workweeks, will ensure that longer-tenured workers receive a greater

16  recovery. Moreover, the allocation tracks the differences in substantive law and penalty claims,

17  including the limitations period for each claims, by weighting the workweek shares more heavily

18  for work performed in California and Washington. Cottrell Decl. at ¶ 71. The allocation was made

19  based on Class Counsel's assessment to ensure that employees are compensated accordingly and in

20  the most equitable manner. *Id.* To the extent that any Class Member is *both* a FLSA Opt-In Plaintiff

21  and a member of the California or Washington Classes, these workers will only receive a recovery

22  based on their workweeks as a California or Washington Class Member. *Id.* Such workers will not

23  receive a "double recovery." *Id.* at ¶ 72.

24  A class action settlement need not benefit all class members equally. *Holmes v. Continental*

25  *Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales*

26  *Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather,

27  although disparities in the treatment of class and collective members may raise an inference of

28  unfairness and/or inadequate representation, this inference can be rebutted by showing that the

21

unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979–80, 2011 WL 2204584 at \*42. Plaintiffs provide rational and legitimate bases for the allocation method here, and the Parties submit that it should be approved by the Court.

### 3. The extensive discovery enabled the Parties to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979) ("The Court therefore finds that plaintiffs have been represented by competent, experienced counsel, who, after a great deal of discovery and complete trial preparation, reasonably concluded that … the class would be better served by a fair settlement than by a costly, lengthy trial…."); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at \*6 (E.D. Cal. Sept. 11, 2008)[15]. In *Boyd*, the court repeatedly looked to the "massive" amount of discovery conducted as a factor counseling in favor of a disputed class action settlement. 485 F.Supp. at 626. Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive formal and informal discovery that has enabled both sides to assess the claims and potential defenses in this action. Cottrell Decl. at ¶¶ 22-25, 73. The Parties were able to accurately assess the legal and factual issues that would arise if the case proceeded to trial. *Id.* at ¶ 73. In addition, in reaching this Settlement, Class Counsel relied on their substantial litigation experience in similar wage and hour class and collective actions. Cottrell Decl. at ¶¶ 5-7, 39; Schalman-Bergen Decl. at ¶¶ 1-4. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendants' compensation policies and practices on Class Members' pay. Cottrell Decl. at ¶ 75; Schalman-Bergen Decl. at ¶¶ 25-28. Ultimately, facilitated by mediator Jeff Ross, the Parties used this information and discovery to

---

[15] Notably, *Lewis* held that class counsel's "actions in compelling discovery demonstrate their commitment to achieving the common cause for all class members." 2008 WL 4196690, at \*3.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC

fairly resolve the litigation. Cottrell Decl. at ¶¶ 30, 76.

### 4. Litigating this action not only would delay recovery, but would be expensive, time consuming, and involve substantial risk.

The monetary value of the proposed Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. Cottrell Decl. at ¶ 77. If this case were to go to trial as a class and collective action (which Defendants would vigorously oppose if this Settlement Agreement were not approved), Class Counsel estimates that fees and costs would exceed $5,000,000.00. *Id.* at ¶ 78. Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.*

Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiffs' claims, a questionable feat in light of developments in wage and hour and class and collective action law as well as the legal and factual grounds that Defendants have asserted to defend this action. *Id.* at ¶ 79. Plaintiffs face risk that the Court would decline to certify the Classes for at least some claims. *Id.* at ¶ 80. Certification of off-the-clock work claims is complicated by the lack of documentary evidence and reliance on employee testimony, and Plaintiffs would likely face motions for decertification as the case progressed. *Id.*

Plaintiffs would encounter difficulties in moving for certification and proving their claims on the merits in part due to the fact that key Class Member compensation documents were kept in paper format. *Id.* at ¶ 81. For example, Class Member timecards and the work orders that controlled the services performed were largely written by hand and heavily edited. *Id.* Plaintiffs would face fundamental logistical difficulties in reviewing and analyzing the massive amounts of hard copy records. *Id.*

Plaintiffs also recognize the impact of the Court's order granting Defendants' motion to compel arbitration. *Id.* at ¶ 82. Although certain Class Members and claims, including the PAGA claims, would remain in the federal forum, the underlying FLSA and state law claims for thousands of Class Members are compelled to individual arbitration. *Id.* Though Plaintiffs' Counsel are

prepared to litigate hundreds of individual arbitrations, and the PAGA claims continue on a representative basis, the arbitration order undeniably affects the prospects for recovery for the Classes and Collective. *Id.*

Moreover, Plaintiffs considered the risk that the Court would, in the end, decline to find Comcast liable as a joint employer. *Id.* at ¶ 83. Though OCC would still be liable in the event of a favorable outcome for Plaintiffs, a finding that Comcast is a joint employer would ensure that the Class Members would be able to obtain full recovery, particularly in the event of a large award.[16] *Id.* Though Plaintiffs successfully amended their complaint to aver claims of liability against Comcast on a joint employer basis, the issue would be heavily contested at summary judgment and/or trial. *Id.* If Comcast is found not to be a joint employer, the value of the case would be lessened, and Plaintiffs had to consider this risk. *Id.* at ¶ 84. Furthermore, on December 18, 2017, OCC produced confidential financial information to Plaintiffs' counsel in support of its contention of an inability to pay a significant portion of damages. Schalman-Bergen Decl. at ¶ 30. If the Court declined to find Comcast liable as a joint employer, and OCC did not have an ability pay damages, Plaintiffs risked receiving no recovery at all. Schalman-Bergen Decl. at ¶ 31-32.

This risk was substantial, particularly given that district courts around the country have determined that cable providers such as Comcast and Time Warner were not joint employers of a third party vendor's cable installation technicians. Schalman-Bergen Decl. at ¶ 31. *See Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683 (D. Md. 2010) (holding that Comcast was not a joint employer of cable technicians who worked for a cable installation contractor). S*ee also Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 131 (S.D.N.Y. 2011) (granting Time Warner Cable's motion for summary judgment and holding that Time Warner was not a joint employer of installation technicians who worked for a vendor contracted by Time Warner to provide cable installation services); *Thornton v. Charter Commc'ns, LLC,* Case No. 4:12CV479 SNLJ, 2014 WL 4794320, at *16 (E.D. Mo. 2014) (granting Charter Cable's motion for summary judgment and holding that Charter was not a joint employer of a third party vendor's cable installation

---

[16] *See, e.g., Am. Motorcycle Assn. v. Superior Court*, 20 Cal.3d 578, 590 (1978) (joint and several liability permits an injured person to obtain full recovery even when one or more of the responsible parties do not have the financial resources to cover their liability).

1    technicians).

2          In contrast to litigating this suit, resolving this case by means of the Settlement will yield a

3    prompt, certain, and very substantial recovery for the Class Members. Cottrell Decl. at ¶ 87.Such a

4    result will benefit the Parties and the court system. Schalman-Bergen Decl. at ¶ 32. It will bring

5    finality to the two years of arduous litigation in this action, and will foreclose the possibility of

6    expanding litigation across arbitration and the federal forum.

7                  **5.    The settlement is the product of informed, non-collusive, and arm's-
                          length negotiations between experienced counsel.**

8

9          Courts routinely presume a settlement is fair where it is reached through arm's-length

10   bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where

11   counsel are well-qualified to represent the proposed class and collective in a settlement based on

12   their extensive class and collective action experience and familiarity with the strengths and

13   weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL

14   1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL

15   1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

16         Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell

17   Decl. at ¶ 88. The Parties participated in two mediations. The second mediation before Jeff Ross,

18   who is a skilled mediator with many years of experience mediating employment matters, was a

19   marathon session that lasted until 11:00 p.m. *Id.* Mr. Ross assisted the Parties in their extensive,

20   continued arm's-length negotiations subsequent to the mediation. *Id.* The Parties then spent weeks

21   negotiating the long form settlement agreement, with several rounds of meet and confer and

22   correspondence related to the terms and details of the Settlement. *Id.* at ¶ 89. Plaintiffs are

23   represented by experienced and respected litigators of representative wage and hour actions, and

24   these attorneys feel strongly that the proposed Settlement achieves an excellent result for the Class

25   Members. *Id.* at ¶ 90; Schalman-Bergen Decl. at  ¶ 33.

26         **D.  The Class Representative Enhancement Payments are Reasonable.**

27         Named plaintiffs in class action litigation are eligible for reasonable service awards. *See*

28

1   *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).[17]  The enhancement payments of up to

2   $15,000.00 for Plaintiff Soto and up to $10,000.00 for Plaintiffs Stricklen, Fondrose, Ortega, and

3   Farias are intended to compensate Plaintiffs for the critical role they played in this case, and the

4   time, effort, and risks undertaken in helping secure the result obtained on behalf of the Class

5   members.[18] Cottrell Decl. at ¶ 91. In agreeing to serve as Class and Collective representatives,

6   Plaintiffs formally agreed to accept the responsibilities of representing the interests of all Class

7   Members. *Id.* at ¶ 92. Defendants do not oppose the requested payments to the Plaintiffs as

8   reasonable service awards. *Id.* at ¶ 93.

9         Moreover, the service awards are fair when compared to the payments approved in similar

10  cases. *See, e.g., Guilbaud v. Sprint/United Management Co., Inc.,* No. 3:13-cv-04357-VC, Dkt. No.

11  181 (N.D. Cal. Apr. 15, 2016) (Chhabria, J., approving $10,000 service payments for each class

12  representative in FLSA and California state law representative wage and hour action); *Van Liew v.*

13  *North Star Emergency Services, Inc., et al.*, No. RG17876878 (Alameda Cty. Super. Ct., Dec. 11,

14  2018) (approving $15,000 and $10,000 service awards, respectively, to class representatives in

15  California Labor Code wage and hour class action).[19]

16              **E.  The Requested Attorneys' Fees and Costs are Reasonable.**

17         In their fee motion to be submitted with the final approval papers, Class Counsel will

18  request up to one third of the Gross Settlement Amount, or $2,500,000, plus reimbursement of

19

---

20  [17] "Courts routinely approve incentive awards to compensate named plaintiffs for the services they

21  provided and the risks they incurred during the course of the class action litigation." *Van Vranken v.*
    *Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) (named plaintiff received $50,000 for

22  work in class action).

23  [18] Moreover, Plaintiffs have agreed to a general release, unlike other Class Members. See
    Settlement Agreement, ¶ 20.

24  [19] *Contreras v. Bank of America*, No. CGC-07-467749 (San Francisco Super. Ct., Sept. 3, 2010)
    (approving $10,000 service payment for each class representative); *Castellanos* v. *The Pepsi*

25  *Bottling Group*, No. RG07332684 (Alameda Super Ct., Mar. 11, 2010) (approving award of
    $12,500); *Novak v. Retail Brand Alliance, Inc.*, No. RG 05-223254 (Alameda Super. Ct., Sept. 22,

26  2009) (approving award of $12,500); *Hasty v. Elec. Arts, Inc.*, No. CIV 444821 (San Mateo Super.
    Ct., Sept. 22, 2006) (approving award of $30,000); *Meewes v. ICI Dulux Paints*, No. BC265880

27  (Los Angeles Super. Ct. Sept. 19, 2003) (approving service awards of $50,000, $25,000 and
    $10,000 to the named plaintiffs); *Mousai v. E-Loan, Inc.*, No. C 06-01993 SI (N.D. Cal. May 30,

28  2007) (approving service award of $20,000).

1   costs, which to date total approximately $180,000. Cottrell Decl. at ¶ 94; Schalman-Bergen Decl. at

2   ¶ 35. Here, Class Counsel's current cumulative lodestar is $3,360,825.90, which exceeds the

3   requested fee award, not inclusive of all of the work that Class Counsel will continue to perform in

4   bringing this settlement to a close. Cottrell Decl. at ¶¶ 94-95; Schalman-Bergen Decl. at ¶ 34. On

5   this basis, the requested attorneys' fees award is eminently reasonable. Cottrell Decl. at ¶ 95. *See,*

6   *e.g., Vizcaino v. Microsoft Corp.*, 290 F. 3d 1043, 1050-51 (9th Cir. 2002) ("Calculation of the

7   lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the

8   reasonableness of the percentage award").

9          The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the

10  total settlement value, with 25% considered the benchmark. *Vasquez v. Coast Valley Roofing*, 266

11  F.R.D. 482, 491-492 (E.D. Cal. 2010) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.

12  2000)); *Hanlon*, 150 F.3d at 1029; *Staton*, 327 F.3d at 952. However, the exact percentage varies

13  depending on the facts of the case, and in "most common fund cases, the award exceeds that

14  benchmark." *Id.* (citing *Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009); *In re*

15  *Activision Sec. Litig.*, 723 F.Supp. 1373, 1377-78 (N.D. Cal. 1989) ("nearly all common fund

16  awards range around 30%")). In California, federal and state courts have customarily approved

17  payments of attorneys' fees amounting to one-third of the common fund in comparable wage and

18  hour class actions. *See Regino Primitivo Gomez, et al. v. H&R Gunlund Ranches, Inc.*, No. CV F

19  10–1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011) (approving attorneys' fees award equal to

20  45% of the settlement fund).[20]

21         In this case, given the excellent results achieved, the effort expended litigating the case,

22  including the preparation of 678 individual arbitration demands, and the difficulties attendant to

23

24  [20] *Wren,* 2011 WL 1230826 (approving attorneys' fee award of just under 42% of common fund);

25  *Big Lots Overtime Cases*, JCC Proceeding No. 4283 (San Bernardino Super. Ct., Feb. 4, 2004)
    (approving award of attorneys' fees of 33% of the recovery); *Barela v. Ralph's Grocery Co.,* No.

26  BC070061 (Los Angeles Super. Ct., June 5, 1998) (same); *Davis v. The Money Store, Inc.*, No.
    99AS01716 (Sacramento Super. Ct., Dec. 26, 2000) (same); *Ellmore v. Ditech Funding Corp.*, No.

27  SAVC 01-0093 (C.D. Cal., Sept. 12, 2002) (same); *Miskell v. Auto. Club of S. Cal.* (Orange County
    Super. Ct., No. 01CC09035, May 27, 2003) (same); *Sconce/Lamb Cremation Cases*, JCC

28  Proceeding No. 2085, (Los Angeles Super. Ct., Mar. 24, 1992) (same).

1  litigating this case, such an upward adjustment is warranted. Cottrell Decl. at ¶ 98. There was no

2  guarantee of compensation or reimbursement. *Id.* Rather, counsel undertook all the risks of this

3  litigation on a completely contingent fee basis. *Id.* These risks were front and center. *Id.*

4  Defendants' vigorous and skillful defense further confronted Class Counsel with the prospect of

5  recovering nothing or close to nothing for their commitment to and investment in the case. *Id.*

6      Nevertheless, Plaintiffs and Class Counsel committed themselves to developing and

7  pressing Plaintiffs' legal claims to enforce the employees' rights and maximize the class and

8  collective recovery. *Id.* at ¶ 99. During the litigation, counsel had to turn away other less risky cases

9  to remain sufficiently resourced for this one. *Id.* The challenges that Class Counsel had to confront

10 and the risks they had to fully absorb on behalf of the class and collective here are precisely the

11 reasons for multipliers in contingency fee cases. *See, e.g.*, *Noyes v. Kelly Servs., Inc.,* 2:02-CV-

12 2685-GEB-CMK, 2008 WL 3154681 (E.D. Cal. Aug. 4, 2008); Posner, Economic Analysis of the

13 Law, 534, 567 (4th ed. 1992) ("A contingent fee must be higher than a fee for the same legal

14 services paid as they are performed… because the risk of default (the loss of the case, which

15 cancels the debt of the client to the lawyer) is much higher than that of conventional loans").

16     Attorneys who litigate on a wholly or partially contingent basis expect to receive

17 significantly higher effective hourly rates in cases where compensation is contingent on success,

18 particularly in hard-fought cases where, like in the case at bar, the result is uncertain. This does not

19 result in any windfall or undue bonus. In the legal marketplace, a lawyer who assumes a significant

20 financial risk on behalf of a client rightfully expects that his or her compensation will be

21 significantly greater than if no risk was involved (*i.e.,* if the client paid the bill on a monthly basis),

22 and that the greater the risk, the greater the "enhancement." Adjusting court-awarded fees upward

23 in contingent fee cases to reflect the risk of recovering no compensation whatsoever for hundreds of

24 hours of labor simply makes those fee awards consistent with the legal marketplace, and in so

25 doing, helps to ensure that meritorious cases will be brought to enforce important public interest

26 policies and that clients who have meritorious claims will be better able to obtain qualified counsel.

27     For these reasons, Class Counsel respectfully submits that a one-third recovery for fees is

28 modest and appropriate. *Id.* at ¶ 101. The lodestar amount will increase with preparation of the final

1    approval papers, preparation and attendance at remaining hearings, correspondence and

2    communications with Class Members, and settlement administration and oversight. *Id.* Class

3    Counsel also requests reimbursement for their litigation costs. *Id.* Class Counsel's efforts resulted in

4    an excellent settlement, and the requested fee award is exceeded by Class Counsel's lodestar. *Id*.

5    The fee and costs award should be preliminarily approved as fair and reasonable.

6                    **F.   The Proposed Notice of Settlement and Claims Process Are Reasonable.**

7            The Court must ensure that Class Members receive the best notice practicable under the

8    circumstances of the case. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen*

9    *v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Procedural due process does not guarantee

10   any particular procedure but rather requires only notice reasonably calculated "to apprise interested

11   parties of the pendency of the action and afford them an opportunity to present their objections."

12   *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d

13   1449, 1454 (9th Cir. 1994). A settlement notice "is satisfactory if it 'generally describes the terms

14   of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to

15   come forward and be heard.'" *Churchill Village LLC*, 361 F.3d at 575.

16           The Notice of Settlement, attached as **Exhibit A** to the Settlement Agreement, and manner

17   of distribution negotiated and agreed upon by the Parties is "the best notice practicable." Cottrell

18   Decl. at ¶ 104. Fed.R.Civ.P. 23(c)(2)(B). All Class Members have been identified and the Notice of

19   Settlement will be mailed directly to each Class Member, and emailed to those for whom

20   Defendants have an email address. Cottrell Decl. at ¶ 105. The proposed Notice is clear and

21   straightforward, and provide information on the nature of the action and the proposed Classes and

22   Collective, the terms and provisions of the Settlement Agreement, and the monetary awards that the

23   Settlement will provide Class Members. *Id.* In addition, the Parties will provide a settlement

24   website that provides a generic form of the Notice, the Settlement Agreement, and other case

25   related documents and contact information. *Id*. at ¶ 106.

26           The proposed Notices fulfill the requirement of neutrality in class notices. Cottrell Decl. at ¶

27   107. *See* Conte, Newberg on Class Actions, § 8.39 (3rd Ed. 1992). They summarize the proceedings

28   necessary to provide context for the Settlement Agreement and summarize the terms and conditions

1    of the Settlement, including an explanation of how the settlement amount will be allocated between

2    the named Plaintiffs, Class Counsel, the Settlement Administrator, and the Class Members, in an

3    informative, coherent and easy-to-understand manner, all in compliance with the Manual for

4    Complex Litigation's recommendation that "the notice contain a clear, accurate description of the

5    terms of the settlement." Cottrell Decl. at ¶ 107; Manual for Complex Litigation, Settlement Notice,

6    § 21.312 (4th ed. 2004).

7            The Class Notice clearly explains the procedures and deadlines for requesting exclusion

8    from the Settlement, objecting to the Settlement[21], the consequences of taking or foregoing the

9    various options available to Class Members, and the date, time and place of the Final Approval

10   Hearing. Cottrell Decl. at ¶ 108. Pursuant to Rule 23(h), the proposed Class Notice also sets forth

11   the amount of attorneys' fees and costs sought by Plaintiffs, as well as an explanation of the

12   procedure by which Class Counsel will apply for them. *Id.* The Class Notice clearly states that the

13   settlement does not constitute an admission of liability by Defendants. *Id.* It makes clear that the

14   final settlement approval decision has yet to be made. *Id.* at ¶ 109. Accordingly, the Class Notice

15   complies with the standards of fairness, completeness, and neutrality required of a settlement class

16   notice disseminated under authority of the Court. *See* Conte, Newberg on Class Actions, §§ 8.21

17   and 8.39 (3rd Ed. 1992); Manual for Complex Litigation, Certification Notice, § 21.311; Settlement

18   Notice, § 21.312 (4th ed. 2004).

19           Furthermore, reasonable steps will be taken to ensure that all Class Members receive the

20   Notice. Cottrell Decl. at ¶ 110. Before mailing, OCC will provide to the Settlement Administrator a

21   database that contains the names, last known addresses, last known telephone numbers (if any), last

22   known email addresses (if any), and social security numbers or tax ID numbers of each Class

23   Member, along with the total number of workweeks they worked as a Technician for OCC

24   beginning from the longest applicable statute of limitations for calculating the respective settlement

25   shares. *Id.* The notice will be sent by United States Mail, and also via email to the maximum extent

26

27

---

28   [21] The Notice clarifies that the failure to submit a written objection may be excused upon a showing of good cause.

1    possible. The Settlement Administrator will make reasonable efforts to update the contact

2    information in the database using public and private skip tracing methods. Within ten business days

3    of receipt of the database from OCC, the Settlement Administrator will mail the Class Notice to

4    each Class Member. *Id.*

5    With respect to Class Notices returned as undeliverable, the Settlement Administrator will

6    re-mail any Notices returned to the Settlement Administrator with a forwarding address within three

7    business days following receipt of the returned mail. *Id.* at ¶ 111. If any Notice is returned to the

8    Settlement Administrator without a forwarding address, the Settlement Administrator will

9    undertake reasonable efforts to search for the correct address, and will promptly re-mail the

10   Settlement Notice to any newly found address. *Id.*

11   Class Members will have 60 days from the mailing of the Notice to opt-out or object to the

12   Settlement. *Id.* at ¶ 112. Any Class Member who does not submit a timely request to exclude

13   themselves from the Settlement will be deemed a Class Member whose rights and claims are

14   determined by any order the Court enters granting final approval, and any judgment the Court

15   ultimately enters in the case.[22] *Id.* Administration of the Settlement will follow upon the occurrence

16   of the Effective Date of the Settlement. *Id.* at ¶ 113. The Settlement Administrator will provide

17   Class Counsel and Defendants' Counsel with a final report of all Settlement Awards at least ten

18   business days before the Settlement Awards are mailed to Class Members. *Id.* at ¶ 114.

19   Because the proposed Notice of Settlement clearly and concisely describe the terms of the

20   Settlement and the awards and obligations for Class Members who participate, and because the

21   Notices will be disseminated in a way calculated to provide notice to as many Class Members as

22   possible, the Class Notice should be preliminarily approved.

23   **G.  The Court Should Approve the Proposed Schedule.**

24   The Settlement Agreement contains the following proposed schedule, which Plaintiffs

25   respectfully request this Court approve:

26

27   [22] However, California and Washington Class Members who are not Named Plaintiffs or Opt-In
     Plaintiffs will only release their FLSA claims if they endorse or cash their Settlement Award
28   checks.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

| | |
|---|---|
| Date of preliminary approval of the Settlement as to Class and approval of the Settlement as to the Collective | |
| Deadline for OCC to provide to CPT Group, Inc. a database containing Class Members' contact information | Within 10 business days after the Court's preliminary approval of the Settlement |
| Deadline for CPT Group, Inc. to mail the Notice of Settlement to Class Members | Within 10 business days after CPT Group, Inc. receives the Class Member database |
| Deadline for Class Counsel to file attorneys' fees motion and motion for service awards | At least 14 days before the opt-out/objection deadline |
| Deadline for Class Members to postmark requests to opt-out or file objections to the Settlement | 60 days after Notice of Settlement is mailed |
| Deadline for filing of Final Approval Motion | According to Northern District of California Local Rules |
| Final Approval Hearing | No earlier than thirty (30) days after the opt-out/objection deadline |
| Effective Date | (i) if there is an objection to the Settlement that is not subsequently withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order; or (ii) if there is a timely objection and appeal by an objector, then after such appeal is dismissed or the Court's Final Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the Settlement, or if any objections which were filed are withdrawn before the date of final approval, then the first business day after the Court's order granting Final Approval of the Settlement |
| Deadline for OCC to pay the Gross Settlement Amount into the Qualified Settlement Fund | Within 10 business days after Effective Date |
| Deadline for CPT Group, Inc. to provide Class Counsel and Defendants' Counsel with a final report of all Settlement Awards | At least 10 business days before the Settlement Awards are mailed to Class Members |
| Deadline for CPT Group, Inc. to transfer the 10 percent holdback of the attorneys' fees award into a separate interest-bearing account | As soon as practicable after funding of the Gross Settlement Amount, and prior to any payment of the attorneys' fees award to Class Counsel |
| Deadline for CPT Group, Inc. to make payments for attorneys' fees and costs, service awards, Class Member Settlement Awards, and LWDA Payment | Within 30 days after the Effective Date or as soon as reasonably practicable |
| Deadline for CPT Group, Inc. to send a reminder letter to those Class Members who have not yet cashed their Class Member Settlement Award | 90 days before check-cashing deadline |

| | |
|---|---|
| checks | |
| Deadline for CPT Group, Inc. to place a reminder phone call to those Class Members who have not yet cashed their Class Member Settlement Award checks | 60 days before check-cashing deadline |
| Check-cashing deadline | 180 days after issuance |
| Deadline for CPT Group, Inc. to either distribute uncashed check funds to *cy pres* recipient or redistribute such funds to those Class Members who cashed their cashed their Class Member Settlement Award checks | As soon as practicable after check-cashing deadline |
| Deadline for Plaintiffs to file the Post-Distribution Accounting. | Within 21 days after the distribution of any remaining monies to Settlement Class Members who cashed their Settlement Award check or to the *cy pres* recipient |
| Deadline for CPT Group, Inc. to release the 10 percent holdback of the attorneys' fees award to Class Counsel | As soon as practicable following completion of the distribution process and filing of the Post-Distribution Accounting with the Court |

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement Agreement as to the California and Washington Classes and approval of the Settlement Agreement as to the Collective, in accordance with the schedule set forth herein.

Date: March 1, 2019                    Respectfully submitted,


                                        */s/ Carolyn Hunt Cottrell*
                                        Carolyn Hunt Cottrell
                                        David C. Leimbach
                                        Scott L. Gordon
                                        SCHNEIDER WALLACE
                                        COTTRELL KONECKY
                                        WOTKYNS LLP

                                        Shanon J. Carson (*pro hac vice*)
                                        Sarah R. Schalman-Bergen (*pro hac vice*)
                                        Neil K. Makhija (*pro hac vice*)
                                        BERGER MONTAGUE PC

                                        Attorneys for Plaintiffs, the Collective and Putative Classes