Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
Scott L. Gordon (SBN 319872)
SCHNEIDER WALLACE
COTTRELL KONECKY
WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile:  (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com
sgordon@schneiderwallace.com

*[Additional Counsel listed on next page]*

Attorneys for Plaintiffs and the Settlement
Classes

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIDERO SOTO, STEVEN STRICKLEN, STEEVE FONDROSE, LORENZO ORTEGA, and JOSE ANTONIO FARIAS, JR., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>O.C. COMMUNICATIONS, INC., COMCAST CORPORATION, and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC;<br><br>Defendants. | Case No.: 3:17-cv-00251-VC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 17, 2019<br>Time: 10:00 a.m.<br>Courtroom: 4 (17th Floor)<br>Judge: Honorable Vince Chhabria<br><br>Complaint Filed: January 18, 2017 |

1

Shanon J. Carson (*pro hac vice*)
Sarah R. Schalman-Bergen (*pro hac vice*)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Telephone: (215) 875-3000
Facsimile:  (215) 875-4604
scarson@bm.net
sschalman-bergen@bm.net

Attorneys for Plaintiffs and the Settlement
Classes

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on October 17, 2019, at 10:00 a.m. in Courtroom 4 before Hon. Vince Chhabria of the United States District Court, Northern District of California, Plaintiffs Desidero Soto, Steven Stricklen, Steeve Fondrose, Lorenzo Ortega, and Jose Antonio Farias, Jr. ("Plaintiffs") move the Court for final approval of the Class Action Settlement Agreement, as amended (the "Settlement"), in this action.[1] In particular, Plaintiffs move for an order:

(1)    Granting final approval of the Settlement as to the California and Washington Classes;

(2)    Certifying the California and Washington Classes for settlement purposes, and finally certifying the Collective for settlement purposes;

(3)    Finally approving Plaintiffs Soto, Stricklen, and Farias as Class Representatives for the California Class, Plaintiff Ortega as Class Representative for the Washington Class, and all Plaintiffs as Collective Representatives;

(4)    Finally approving Schneider Wallace Cottrell Konecky Wotkyns LLP and Berger Montague PC as Class and Collective Counsel;

(5)    Finally approving payment of $40,000 from the Settlement to the Settlement Administrator, CPT Group, Inc., as compensation for administering the Settlement;

(6)    Finally approving the following implementation schedule, as set forth below; and

| Effective Date | (i) if there is an objection to the Settlement that is not subsequently withdrawn, then the date upon the expiration of time for appeal of the Court's Final Approval Order; or (ii) if there is a timely objection and appeal by an objector, then after such appeal is dismissed or the Court's Final Approval Order is affirmed on appeal; or (iii) if there are no timely objections to the Settlement, or if any objections which were filed are withdrawn before the date of final approval, then the first business day after the Court's order granting Final Approval of the |
|---|---|

---

[1] The Settlement was previously filed at ECF 289-2. The Settlement was already preliminarily approved by this Court on June 17, 2019. *See* ECF 296.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

| | Settlement |
|---|---|
| Deadline for OCC to pay the Gross Settlement Amount into the Qualified Settlement Fund | Within 10 business days after Effective Date |
| Deadline for CPT Group, Inc. to provide Class Counsel and Defendants' Counsel with a final report of all Settlement Awards | At least 10 business days before the Settlement Awards are mailed to Class Members |
| Deadline for CPT Group, Inc. to transfer the 10 percent holdback of the attorneys' fees award into a separate interest-bearing account | As soon as practicable after funding of the Gross Settlement Amount, and prior to any payment of the attorneys' fees award to Class Counsel |
| Deadline for CPT Group, Inc. to make payments for attorneys' fees and costs, service awards, Class Member Settlement Awards, and LWDA Payment | Within 30 days after the Effective Date or as soon as reasonably practicable |
| Deadline for CPT Group, Inc. to send a reminder letter to those Class Members who have not yet cashed their Class Member Settlement Award checks | 90 days before check-cashing deadline |
| Deadline for CPT Group, Inc. to place a reminder phone call to those Class Members who have not yet cashed their Class Member Settlement Award checks | 60 days before check-cashing deadline |
| Check-cashing deadline | 180 days after issuance |
| Deadline for CPT Group, Inc. to either distribute uncashed check funds to *cy pres* recipient or redistribute such funds to those Class Members who cashed their cashed their Class Member Settlement Award checks | As soon as practicable after check-cashing deadline |
| Deadline for Plaintiffs to file the Post-Distribution Accounting | Within 21 days after the distribution of any remaining monies to Settlement Class Members who cashed their Settlement Award check or to the *cy pres* recipient |
| Deadline for CPT Group, Inc. to release the 10 percent holdback of the attorneys' fees award to Class Counsel | As soon as practicable following completion of the distribution process and filing of the Post-Distribution Accounting with the Court |

(7)    Entering a final judgment with the terms of the Settlement.

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell, the Declaration of CPT Group, Inc., and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs also submit a Proposed Order Granting Final Approval of

Settlement and a Proposed Judgment with their moving papers.

Date: September 12, 2019                   Respectfully submitted,

                                           */s/ Carolyn Hunt Cottrell*
                                           Carolyn Hunt Cottrell
                                           David C. Leimbach
                                           Scott L. Gordon
                                           SCHNEIDER WALLACE
                                           COTTRELL KONECKY
                                           WOTKYNS LLP

                                           Shanon J. Carson (*pro hac vice*)
                                           Sarah R. Schalman-Bergen (*pro hac vice*)
                                           BERGER MONTAGUE PC

                                           Attorneys for Plaintiffs and the Settlement Classes

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

III.   PROCEDURAL HISTORY .................................................................................. 3

    A.    Plaintiffs' Claims ..................................................................................... 3

    B.    FLSA Conditional Certification ............................................................... 3

    C.    Discovery ................................................................................................. 3

    D.    Motions to Compel Arbitration ................................................................ 4

    E.    Mediation ................................................................................................. 5

    F.    Preliminary Approval of the Settlement ................................................... 5

    G.    Notice of Settlement and Response of Class Members ............................ 7

    H.    Final Approval of the Settlement .............................................................. 8

IV.    TERMS OF THE SETTLEMENT ....................................................................... 8

    A.    Basic Terms and Value of the Settlement ................................................ 8

    B.    Class and Collective Definitions ............................................................. 9

    C.    Allocation and Awards ........................................................................... 10

    D.    Scope of Release and Final Judgment .................................................... 11

V.     ARGUMENT ..................................................................................................... 12

    A.    Ninth Circuit Precedent Favors and Encourages Class Settlements. ..................... 12

    B.    The Court Should Finally Approve the Settlement. ............................................. 14

        1.    The best practicable notice was provided to the Class Members in accordance with the process approved by the Court .................................... 14

        2.    The terms of the Settlement are fair, reasonable, and adequate .................. 15

        3.    The Parties have agreed to distribute settlement proceeds tailored to the Classes and Collective and their respective claims ....................................... 17

        4.    The extensive discovery enabled the Parties to make informed decisions regarding settlement ........................................................................................ 18

        5.    While Plaintiffs recognize the strength of their claims, there are substantial risks in proceeding with the litigation .............................................. 18

6.   The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel. ...................................................20

7.   Class Members approve of the Settlement. ...................................................21

C.   The Class Representative Service Awards are Reasonable. ...............................22

D.   The Requested Attorneys' Fees and Costs are Reasonable. ...............................22

E.   The Court Should Finally Certify the California and Washington Classes. ..........22

1.   The Classes are numerous and ascertainable. ................................................23

2.   Plaintiffs' claims raise common issues of fact or law. ...................................23

3.   Plaintiffs' claims are typical of the claims of the Classes. ...........................24

4.   Plaintiffs and Class Counsel will adequately represent the Class. ................24

5.   The Rule 23(b)(3) requirements for class certification are also met. ............24

VI.   CONCLUSION ........................................................................................... 25

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC

1

## TABLE OF AUTHORITIES

2

3    **Federal Cases**

4    *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)........................................................25

5    *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945 (N.D. Cal. July 21, 2014)..........15

6    *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ...........................16

7    *Boyd v. Bechtel Corp.,* 485 F.Supp. 610 (N.D. Cal. 1979) ........................................18

8    *Carter v. Anderson Merchandisers, LP,* No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D.

9        Cal. May 11, 2010) ...........................................................................21

10    *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)............................14

11    *Cody v. Hillard*, 88 F.Supp.2d 1049 (D.S.D. 2000) ..............................................21

12    *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13,

13        2013) ........................................................................................18

14    *Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) .........................................13

15    *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000) ...............................23, 24

16    *Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)..................................15

17    *Guilbaud v. Sprint Nextel Corp*. No. 3:13-CV-04357-VC, 2016 WL 7826649 (N.D. Cal. Apr. 15,

18        2016) ........................................................................................13

19    *Hanlon v. Chrysler Corp.* 150 F.3d 1011 (9th Cir. 1998) ..............................13, 20, 24

20    *Holmes v. Continental Can Co.,* 706 F.2d 1144 (11th Cir. 1983) ...................................17

21    *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)..................................23

22    *In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418 (S.D.N.Y. 2001)........................21

23    *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935 (N.D. Ill.

24        2011) ........................................................................................17

25    *In re Mego Financial Corp. Sec. Litig.,* 213 F.3d 454 (9th Cir.2000)..............................15

26    *In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .........................................14

27    *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231 (D. Del. 2002)............................15

28

*Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683 (D. Md. 2010) ...................................................... 20

*Jean-Louis v. Metro. Cable Commc'ns, Inc.,* 838 F. Supp. 2d 111 (S.D.N.Y. 2011) ...................... 20

*Langford v. Devitt*, 127 F.R.D. 41 (S.D.N.Y. 1989) ........................................................................ 15

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ................................................................................................................................................ 18

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .................................................... 16

*Ma v. Covidien Holding, Inc.*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) .................................... 15

*Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832 (9th Cir. 1976) ........................... 14, 21

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443 (E.D. Cal. 2013) ........................................ 18

*Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) ............................................ 22

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................... 13, 14, 15, 22

*Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No. C13-1347 JCC, 2015 WL 11234156 (W.D. Wash. Dec. 11, 2015) ............................................................................................................................... 16

*Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474 (E.D. Cal. 2006) .................................... 23

*Rulli, et al. v. Nielsen Co. (U.S.) LLC*, No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) ............. 13

*Staton v. Boeing Co.,* 327 F.3d 938 (9th Cir. 2003) ........................................................................ 13

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765 (N.D. Cal. June 17, 2015) .................. 15

*Thornton v. Charter Commc'ns, LLC,* Case No. 4:12CV479 SNLJ, 2014 WL 4794320 (E.D. Mo. 2014) ................................................................................................................................................ 20

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ...................................................... 14

*Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ................................................................................................................................................ 15

*Vikram v. First Student Mgmt., LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ............................................................................................................................................ 15

*Wang v. Chinese Daily News, Inc.*, 737 F.3d 538 (9th Cir. 2013) .............................................. 23, 25

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................................................................................................................................ 14

**State Cases**

*7-Eleven Owners for Fair Franchising*, 85 Cal.App.4th 1135 (2000) ................................ 16

*Am. Motorcycle Assn. v. Superior Court*, 20 Cal.3d 578 (1978) ..................................... 20

**Rules**

Fed.R.Civ.P. 23(a) ........................................................................... 13, 23, 24

Fed.R.Civ.P. 23(e) ............................................................................... 12, 14

**Other Authorities**

Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*
§ 21.61 (4th ed. 2004) ......................................................................... 13

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

## I.  INTRODUCTION

Plaintiffs seek final approval of the Settlement[1] in this class and collective action brought on behalf of Technicians who install cable television, phone, security, and internet services for Defendants O.C. Communications, Inc. ("OCC"), Comcast Corporation, and Comcast Cable Communications Management, LLC (collectively, "Comcast"). Plaintiffs allege that OCC and Comcast (collectively, "Defendants") violated federal, California, and Washington labor laws by failing to pay Technicians for all of their work and failing to provide meal and rest periods. The Settlement provides an excellent recovery to resolve the Settlement Class Members' claims and brings closure to two-and-a-half years of intensive litigation, including conditional certification, protracted discovery disputes, production of over 1.5 million pages of documents, motions to compel arbitration by OCC and Comcast, two separate mediations, and extensive arm's-length negotiations.

The Settlement provides for a non-reversionary Gross Settlement Amount of $7,510,555.21 to settle the wage and hour claims for approximately 4,500 Technicians.[2] It encompasses California and Washington Classes asserting respective state law claims pursuant to Rule 23. It also resolves the claims of a Fair Labor Standards Act ("FLSA") Collective comprised of 1,019 Opt-In Plaintiffs, at least 990 of whom would have otherwise been compelled to individual arbitration. The Settlement provides a significant recovery for numerous wage and hour claims that would have otherwise needed to have been prosecuted as individual actions.

The Court granted preliminary approval of the Settlement as to the California and Washington Classes and approval of the Settlement as to the Collective on June 17, 2019. *See* ECF 296. Following the Court's order, notice of the Settlement was sent to the Class Members on July 25, 2019. Cottrell Decl. ¶ 26. The exclusion and objection period will expire on September 23, 2019. *Id.* To date, the Class Members' response has been overwhelmingly positive. *Id.* No objections have been filed, and no Class Members have opted out of the Settlement. *Id.*

The Settlement provides an excellent benefit to the Classes and Collective and an efficient

---

[1] "Settlement" and "Amended Settlement" refer to the Class Action Settlement Agreement, as amended by the Addendum discussed herein, filed as Exhibit 1 to the Declaration of Sarah R. Schalman-Bergen in Support of Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement. *See* ECF 289-2.

[2] For ease of discussion, the Settlement Class Members, as defined in the Settlement, are referred to hereinafter as "Technicians" or "Class Members."

outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Accordingly, Plaintiffs respectfully submit that the Settlement should be finally approved.[3]

## II. FACTUAL BACKGROUND

OCC is a national contractor for low-voltage installations, providing cable and equipment installations on behalf of cable operators—primarily, Comcast—throughout the United States. Cottrell Decl. ¶ 8. Comcast is a global telecommunications conglomerate and the largest cable TV company and home Internet service provider in the United States. *Id.* at ¶ 9. Plaintiffs allege that OCC and Comcast jointly employ the Class Members, who are classified as non-exempt employees, to carry out installation services. *Id.* at ¶ 10. The workers perform these services in California, Washington, Florida, Utah, Oregon and Arizona. *Id.*

Plaintiffs allege that Class Members—who work long and difficult hours, typically five to six days per week, and upwards of ten hours per day—experience wage and hour violations in their work with OCC, and with Comcast as an alleged joint employer, under the Fair Labor Standards Act, as well as California and Washington labor law.[4] Throughout the relevant time period, Plaintiffs allege that Defendants eschewed their obligations to Plaintiffs and Class Members by: (1) not paying proper minimum, overtime wages, and completed piece rates; (2) failing to provide a reasonable opportunity to take meal and rest periods, and failing to compensate Class Members when such meal and rest periods are not taken; and (3) failing to reimburse necessarily-incurred expenses. Plaintiffs aver that these alleged violations give rise to derivative claims, including failing to provide accurate, itemized wage statements and failing to pay all wages owed after termination of employment.

Plaintiffs allege that, as joint employers, OCC and Comcast are jointly liable for the violations at issue. Defendants have at all times denied, and continue to deny, all of these allegations, including Plaintiffs' theory that OCC and Comcast are joint employers, and deny any and all liability for

---

[3] In a separate motion filed on September 9, 2019, Plaintiffs seek approval of an award of attorneys' fees, costs, and service awards for the Named Plaintiffs. ECF 297. Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, this brief does not repeat that request and corresponding background information set forth in the fee, cost, and service award motion.

[4] Plaintiffs Soto, Stricklen, and Farias represent a California Class and assert claims under the California Labor Code and other applicable California law, while Plaintiff Ortega represents a Washington Class and asserts claims under applicable Washington law. Plaintiff Steeve Fondrose, along with the other Named Plaintiffs, represent the nationwide collective and assert FLSA claims.

Plaintiffs' claims. Defendants further deny that Plaintiffs' allegations are appropriate for class, collective, and/or representative treatment for any purpose other than for settlement purposes only.

## III.    PROCEDURAL HISTORY

### A.    Plaintiffs' Claims

Plaintiffs Desidero Soto and Steven Stricklen filed their initial Collective and Class Action Complaint on January 18, 2017, which asserted FLSA and California law claims. ECF 1. On August 18, 2017, Plaintiffs filed their First Amended Collective and Class Action Complaint, which added Plaintiff Fondrose, refined the factual allegations, and added a cause of action for violation of California Labor Code Section 226.2. ECF 117. After conducting discovery into the joint employer issue, Plaintiffs filed their Second Amended Collective and Class Action Complaint on March 13, 2018, which added the Comcast Defendants, along with Plaintiff Ortega and the Washington state law claims that he asserts. ECF 232. On June 20, 2018, Plaintiffs filed their Third Amended Collective and Class Action Complaint ("TAC"), which added Plaintiff Farias and California Private Attorneys General Act ("PAGA") claims against Comcast. *See* ECF 255. In the operative TAC (ECF 253-1), Plaintiffs allege eighteen causes of action under the federal FLSA, 29 U.S.C. §§ 201, *et seq.*, the California Labor Code and Business and Professions Code §§ 17200, *et seq.* ("UCL"), and Washington wage and consumer protection laws. Cottrell Decl. ¶ 15.

### B.    FLSA Conditional Certification

Plaintiffs moved for conditional certification of the FLSA claim and facilitation of notice under 29 U.S.C. § 216(b) on July 17, 2017. ECF 105. On August 31, 2017, the Court conditionally certified a Collective of Defendants' Technicians. *See* ECF 127. The Administrator disseminated the Notice to the Collective members on September 29, 2017, by mail and email, with an opt-in deadline of December 28, 2017. Cottrell Decl. ¶ 18. 1,019 Technicians opted into the Collective. *Id.*

### C.    Discovery

The Parties engaged in extensive and voluminous discovery, including written discovery and depositions. OCC produced well in excess of 1.5 million documents, which Plaintiffs extensively analyzed using dedicated document-review attorneys and technology-assisted review. Cottrell Decl. ¶ 19. These documents included policies and procedures regarding how the work should be completed, timekeeping, overtime, compensation, and meal and rest breaks. OCC also produced

1    timecards, payroll documents, personnel files, and agreements between OCC and Comcast. The

2    production included ESI, including hundreds of thousands of emails and attachments. *Id.*

3           Plaintiffs secured this sizeable production through extensive, diligent discovery practice.

4    Cottrell Decl. ¶ 20. Plaintiffs and OCC litigated numerous discovery disputes, which resulted in the

5    Parties filing joint letter briefs with the Court on October 24, 2017 (ECF 150), December 8, 2017

6    (ECF 192), December 29, 2017 (ECF 208), and March 14, 2018 (ECF 234).

7           Plaintiffs also took four depositions of OCC representatives, including Chief Operating

8    Officer Larry Wray, Payroll and Billing Manager Denae Hefley, Vice President Reggie Wight, and

9    Manager and Regional Director Joe Raposa. Cottrell Decl. ¶ 21. Additionally, Plaintiffs took one

10   deposition of a Comcast representative, Director of Business Partner Development Kristen Schrader,

11   and had noticed depositions of two other Comcast officials when the Parties reached an agreement to

12   settle the case. *Id.* OCC took the depositions of Plaintiffs Soto and Stricklen. *Id.*

13       **D.**       **Motions to Compel Arbitration**

14          OCC and Comcast each filed motions to compel arbitration on August 23, 2018, based on the

15   varying forms of arbitration agreements that OCC had entered with Class Members. ECF 259, 261.

16   Plaintiffs opposed OCC's motion chiefly on the basis that OCC had waived its right to arbitrate by

17   not moving to compel arbitration until 18 months into the proceedings, by which time there had been

18   lengthy and vigorous litigation in federal court. *See* ECF 262. Plaintiffs cited OCC's delay in

19   producing the arbitration agreements, and that OCC did not move to stay the proceedings pending

20   the Supreme Court's review of the Ninth Circuit's decision in *Morris v. Ernst & Young, LLP*, 834

21   F.3d 975 (9th Cir. 2016)[5], in support of their waiver argument. *Id.* Plaintiffs opposed Comcast's

22   motion, *inter alia*, on the grounds that Comcast was not a signatory to the agreements, and by further

23   challenging Comcast's equitable estoppel and agency exception arguments. *See* ECF 263.

24          The Court granted Defendants' motion as to the Named Plaintiffs and approximately 990 Opt-

25   In Plaintiffs who had executed the 2013, 2015, and 2017 versions of the arbitration agreements. *See*

26

27

28

---

[5] *Rev'd sub nom. Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (2018), *and vacated*, 894 F.3d 1093 (9th Cir. 2018).

ECF 272. The Court denied in part the motions only and without prejudice in regard to the PAGA claims and the claims of eight Opt-In Plaintiffs who signed a 2004 arbitration agreement. ECF 272.

Thereafter, Plaintiffs' counsel served 678 individual demands for arbitration on Defendants on December 12, 2018. Cottrell Decl. ¶ 24. These demands each asserted the claims on an individual basis for 678 Opt-In Plaintiffs subject to the arbitration order. *Id*. Plaintiffs' counsel were able to serve these hundreds of demands as a result of their outreach and investigation efforts with Opt-In Plaintiffs and other case participants. *Id*. As OCC was required to pay the arbitration fees under the 2013, 2015, and 2017 versions of the agreements, the filing of these demands would potentially subject Defendants to millions of dollars in arbitration fees. *Id*.

**E.    Mediation**

Plaintiffs and OCC first mediated this dispute on November 6, 2017 before Michael Dickstein, a respected and experienced wage and hour mediator. Cottrell Decl. ¶ 25. This initial mediation was unsuccessful, and litigation continued in the ordinary course, including the addition of the Comcast Defendants to the case in March 2018. *Id*.

On October 18, 2018, the Plaintiffs, OCC and Comcast participated in a mediation session with Jeff Ross, another highly respected and experienced wage and hour mediator. *Id*. at ¶ 26. The session lasted some 14 hours, but the Parties were unable to reach an agreement on that date. *Id*. Litigation continued, and in particular, Plaintiffs commenced depositions of Comcast officials, while additional settlement negotiations continued through the mediator. *Id*.  On December 19, 2018, Mr. Ross issued a mediator's proposal, which contained the essential terms of the instant Settlement. All Parties accepted the proposal by December 20, 2018. *Id*.

Throughout the mediation process, the Parties engaged in serious and arm's-length negotiations, culminating in the mediator's proposal. *Id.* at ¶ 27. After the mediation, counsel for the Parties worked to finalize the long-form Settlement and corresponding notice documents, subject to the Court's approval. *Id.* The initial Settlement Agreement was fully-executed on March 1, 2019. *Id.*

**F.    Preliminary Approval of the Settlement**

Plaintiffs filed their Preliminary Approval Motion on March 1, 2019. *See* ECF 284. Following the hearing on March 21, 2019, the Court issued an order on April 1, 2019 that declined to preliminarily approve the initial Settlement, and asked Counsel to address the allocation of Settlement

5

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

proceeds relating to state laws and Defendants' conduct going forward. *See* ECF 286. To address the Court's concerns, Class Counsel conducted extensive factual and legal reviews of state wage and hour laws for every state where the OCC Technicians worked, and analyzed potential recoveries under each of those state's laws in order to formulate a revised allocation plan. Cottrell Decl. ¶ 28. As a result of these analyses and after extensive meet and confer sessions, the Parties reached agreement on the Addendum to the Settlement, executed on May 10, 2019. *Id.*

Among other modifications to the Settlement, the Addendum addressed language in the Notice and modified the allocation formula relating to the wage laws and remedies released in the various states where Technicians worked. Specifically, California workweeks are weighted as three settlement shares, Washington and Oregon workweeks are weighted as two settlement shares, and Arizona and Utah workweeks are weighted as 1.25 settlement shares; workweeks in all other states are unweighted (*i.e.*, one settlement share per workweek).[6] The Addendum also includes an accompanying increase of $10,555.21 to the Gross Settlement Amount to account for the addition of settlement shares attributable to the approximately 18 Collective Members who performed work in Oregon, Utah and Arizona; the total non-reversionary settlement amount is $7,510,555.21. The increase to the Gross Settlement Amount ensures that the increased allocation does not reduce the awards to other Technicians below the amounts proposed under the original Settlement Agreement. Class Counsel does not seek additional fees on the increase to the Gross Settlement Amount. Cottrell Decl. ¶ 31.

Plaintiffs filed their Renewed Motion for Preliminary Approval of Class and Collective Action Settlement (the "Renewed Motion") on May 10, 2019, which sought preliminary approval of the Settlement, as modified by the Addendum. *See* ECF 289. After holding a telephonic hearing on June 13, 2019, the Court granted the Renewed Motion on June 17, 2019. *See* ECF 296. The Court found "on a preliminary basis that the class and collective action settlement memorialized in the Amended Settlement is fair, reasonable, and adequate." The Court further approved the Notice of Settlement, in the form attached to the Preliminary Approval Order[7], and authorized the proposed notice plan. With respect to the Collective, the Court "granted Approval of the terms and conditions

---

[6] Addendum to Settlement Agreement, ¶ E.33.
[7] The Notice of Settlement, in the form attached to the Preliminary Approval Order, incorporates changes proposed by the Court and accepted by the Parties. *See* ECF 295.

1    contained in the Amended Settlement as to the Collective" and confirmed its August 31, 2017 Order

2    conditionally certifying the Collective (ECF 127).

3          **G.**     **Notice of Settlement and Response of Class Members**

4         CPT Group, Inc. ("CPT Group") is responsible for distributing the Notice of Settlement,

5    calculating individual settlement payments, calculating all applicable payroll taxes, withholdings and

6    deductions, preparing and issuing all disbursements to be paid to Class Members, the Class

7    Representatives, Class Counsel, the LWDA, any applicable local, state, and federal tax authorities,

8    and handling inquiries and/or disputes from Class Members. Cottrell Decl. ¶ 33. CPT Group is also

9    responsible for the timely preparation and filing of all tax returns, and making the timely and accurate

10    payment of all necessary taxes and withholdings. *Id.* CPT Group established a case website[8], which

11    provides (1) the case name, case number, and Court; (2) CPT Group's toll-free telephone number for

12    Class Member inquiries; (3) Class Counsel's name and contact information; (4) PDF versions of the

13    Settlement, a generic form of the Notice of Settlement, the documents filed by Plaintiffs to obtain

14    approval of the Settlement, and the Preliminary Approval Order. *Id.* at ¶ 34. CPT Group established

15    a toll-free call center to field questions, address updates, and inquiries from Class Members. *Id.*

16         Following the Court's order, CPT Group received the class data from OCC on July 2, 2019.

17    Cottrell Decl. ¶ 35. The data contained the names, last known mailing addresses, last known personal

18    email addresses, workweeks, and other personal information for 4,502 Technicians. *Id.* From this

19    data, CPT Group identified 3,745 California Class Members and 419 Washington Class Members.[9]

20    CPT Group sent the Notice of Settlement to the 4,502 Technicians on July 25, 2019 via U.S. Mail,

21    and via email to those Technicians for whom a personal email address was available.[10] *Id.* at ¶ 36. As

22    OCC provided email addresses for most Technicians, the majority of the Class Member received

23    _____

[8] The case website is available at https://www.cptgroup.com/occommunicationsettlement/. A true and correct printout of the website is attached to the Cottrell Decl. as Exhibit 1.

[9] Additionally, six Technicians worked in Arizona, three Technicians worked in Oregon, and eight Technicians worked in Utah. 321 Technicians worked only in other states (*i.e.*, Florida) and assert only FLSA claims. *Id.* at ¶ 35.

[10] The Notice was supposed to be disseminated by July 17, 2019, pursuant to the terms of the Settlement and the Preliminary Approval Order. However, this timeline could not be met despite the Parties' best efforts due to revisions to the case website, changes to the formatting of the email notice used by CPT Group to send the email Notice of Settlement, and obtaining required approvals from all counsel through several rounds of changes. *Id.* at ¶ 37. The Parties were required to finalize and approve the case website and the logistics for the email blast prior to the dissemination of the notice.

email notice in addition to hard copy notice. *Id.*

In order to mail notices to the Class Members, CPT Group first calculated the individual Settlement Awards for every Technician, using the workweek data provided by OCC, in order to include such information on the notices. *Id.* at ¶ 38. The Notice informed the Class Members of: the Settlement terms; their expected share; the September 23, 2019 deadline to submit objections, requests for exclusions, or disputes; the October 17, 2019 final approval hearing; and that Plaintiffs would seek attorneys' fees, costs, and service awards and the corresponding amounts. *Id.; see also* ECF 296-2. CPT Group included the URL for the case website, the toll-free call center number in the Notice of Settlement, and the names and contact information for Class Counsel. Cottrell Decl. ¶ 38.

As of September 9, 2019, 443 hard-copy notices have been returned to CPT Group as undeliverable. *Id.* at ¶ 39. CPT Group performed skip-tracing and other techniques to identify current addresses, and 98 hard-copy notices remain undelivered after remailing. *Id.* The deadline for Class Members to opt-out, object, and dispute their reported workweeks expires September 23, 2019. *Id.*

To date, roughly three quarters of the way into the notice period, not a single objection has been filed and not a single Class Member has opted out of the Settlement.[11] *Id.* at ¶ 40. Moreover, only five Class Members have disputed the workweek figures reported in their notices. *Id.* Following final approval of the Settlement, CPT Group will issue checks to the Class Members. *Id.*

### H.  Final Approval of the Settlement

The Final Approval Hearing is currently scheduled for October 17, 2019. With this Motion, Plaintiffs ask the Court to grant final approval of this Settlement as to the California and Washington Classes. Following an order by the Court on this Motion, the Parties and the Settlement Administrator will execute the final steps of the settlement process, including sending individual checks to all participating Class Members for their Settlement Awards.

## IV.  TERMS OF THE SETTLEMENT

### A.  Basic Terms and Value of the Settlement

OCC has agreed to pay a non-reversionary Gross Settlement Amount of $7,510,555.21 to

---

[11] Plaintiffs will file a declaration from CPT Group, after the opt-out, objection, and dispute deadline passes, that will attest to its dissemination of the notice via U.S. Mail and email, including the number of undelivered, skip-traced, and remailed notices; the final number of objections, opt-out requests, and disputes; and the settlement administration fees. *Id.* at ¶ 41.

settle all aspects of the case. Cottrell Decl. ¶ 42. The "Net Settlement Amount," which is the amount available to pay settlement awards to the Class Members, is defined as the Gross Settlement Amount less: the payment made to the California Labor & Workforce Development Agency ("LWDA") pursuant to PAGA ($75,000)[12]; any enhancement payments awarded to the Class Representatives (up to $15,000 for Plaintiff Soto and up to $10,000 for Plaintiffs Stricklen, Fondrose, Ortega, and Farias); the Settlement Administrator's fees and costs ($40,000); and any attorneys' fees and costs awarded to Class Counsel (fees of up to one third of the initial $7,500,000 Gross Settlement Amount, or $2,500,000,[13] plus costs in the amount of $207,361.46). *Id.*

### B. Class and Collective Definitions

An individual is a member of the Settlement Class under the proposed Settlement if he or she belongs to any of the following:

▪ The "**California Class**" means all Technicians who are or were employed by OCC in the State of California at any time from January 18, 2013 through December 21, 2018, and who do not validly exclude themselves from the Settlement. The California Class is to be certified for settlement purposes only under Federal Rule of Civil Procedure 23.

▪ The "**Washington Class**" means all Technicians who are or were employed by OCC in the State of Washington from March 13, 2015 through December 21, 2018, and who do not validly exclude themselves from the Settlement. The Washington Class is to be certified for settlement purposes only under Federal Rule of Civil Procedure 23.

▪ The "**Collective**" is a certified collective action for settlement purposes only pursuant to 29 U.S.C. § 216(b), which includes all Opt-In Plaintiffs who are or were employed by OCC at any time from and including January 18, 2014 through December 21, 2018. There are 1,019 Opt-In Plaintiffs. Cottrell Decl. ¶ 45.

---

[12] The Parties agree to allocate $100,000.00 of the Gross Settlement Amount to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. *Id.* The Settlement Administrator will pay 75%, or $75,000.00, of this amount to the LWDA, and 25%, or $25,000.00, will remain as part of the Net Settlement Amount. Settlement Agreement, ¶ 29.c.

[13] The Settlement Administrator will deposit a ten (10) percent holdback of the Fee Award into a separate interest-bearing account, which will be released following completion of the distribution process and filing of the Post-Distribution Accounting with the Court. Settlement Agreement, ¶ 29.b. (iv).

### C.     Allocation and Awards

The Net Settlement Amount to be paid to Class Members is approximately $4,633,000. Cottrell Decl. ¶ 46. Class Members will each receive a settlement award check without the need to submit a claim form. *Id.* at ¶ 47. Each Class Member's settlement share will be determined based on the total number of weeks that the respective Class Member worked for Defendants during the applicable limitations period. *Id.* at ¶ 48. Specifically, each Class Member will be credited for the number of weeks that he or she worked for OCC at any time from January 18, 2013 through December 21, 2018 for California Class Members; from March 13, 2015 through December 21, 2018 for Washington Class members, and three years prior to the Opt-In Date through December 21, 2018 for Opt-In Plaintiffs. Settlement Agreement, ¶ 33; Addendum to Settlement Agreement, ¶ E.33. Each workweek will be equal to one settlement share, but to reflect the increased value of state law claims, California workweeks are weighted as three settlement shares, Washington and Oregon workweeks are weighted as two settlement shares, and Arizona and Utah workweeks are weighted as 1.25 settlement shares. *Id.*

The total number of settlement shares for all Settlement Class Members will be added together and the resulting sum will be divided into the Net Settlement Amount to reach a per share dollar figure. *Id.* That figure will then be multiplied by each Class Member's number of settlement shares to determine the Class Member's Settlement Award. *Id.* The Notice of Settlement provides the estimated Settlement Award and number of workweeks for each Class Member, assuming full participation in the Settlement. Settlement Award and eligibility determinations are based on employee workweek information that OCC provided to the Settlement Administrator; however, Class Members are able to dispute their workweeks by submitting convincing evidence proving that they worked more workweeks than shown by OCC records. Settlement Agreement, ¶ 23.

Settlement Awards will be paid to Class Members by the Settlement Administrator within 30 days after the occurrence of the "Effective Date." Settlement Agreement, ¶ 39. Settlement Award checks will remain valid for 180 days from the date of their issuance. Settlement Agreement, ¶ 40. CPT Group will send a reminder letter via U.S. Mail and email to those Class Members with uncashed checks at 90 days remaining, and will place a call at 60 days remaining. *Id.* The disposition of any uncashed check funds remaining after the check-cashing deadline will depend on the total

1  amount.[14] Within 21 days after the final distribution to the *cy pres* recipient or to Class Members

2  who cashed their checks, Plaintiffs will file a Post-Distribution Accounting in accordance with the

3  Northern District's Procedural Guidance. Settlement Agreement, ¶ 41.d.

4        **D.**    **Scope of Release and Final Judgment**

5       The release contemplated by the Settlement is dependent upon the Technicians' membership

6  in the FLSA Collective and/or the California and Washington Classes, and relatedly, whether they

7  deposit or cash their Settlement Award checks.[15] The Collective Members release any and all claims

8  against the Releasees[16] through December 21, 2018 that were or could have been asserted under the

9  FLSA and under Arizona, California, Florida, Oregon, Utah, and Washington law based on the

10  identical factual predicate alleged in the operative TAC. These waived claims include claims for the

11  alleged failure to pay minimum, straight time, overtime, and double time wages or any other form of

12  compensation, failure to authorize and permit and/or make available meal and rest periods, failure to

13  pay wages upon termination, engaging in unfair and unlawful business practices, and statutory and

14  civil penalties. The released claims include other penalties, related tort, contract, liquidated, and

15  punitive damages claims, claims for interest, attorneys' fees, litigation and other costs, expenses,

16  restitution, and equitable and declaratory relief. For California and Washington Class Members who

17  did not file consents to join the action as FLSA Opt-In Plaintiffs, only those who cash or deposit their

18  Settlement Award checks will become Collective Members and release their FLSA claims.

19       California Class Members release any and all claims against Releasees through December 21,

20  2018 that were or could have been asserted under California law based on the identical factual

---

22  [14] If the total residual amount is less than $75,000, then the amount will revert to *cy pres*. Settlement
23  Agreement, ¶ 41.a. The Parties have proposed the University of California Berkeley's Institute for
   Research on Labor and Employment, which promotes better understanding of the conditions, policies,
24  and institutions that affect the well-being of workers and their families and communities, as the *cy
   pres* recipient, subject to the Court's approval. If the total residual amount is $75,000 or greater, a
25  second distribution will occur to those Class Members who cashed their Settlement Award checks.
   Settlement Agreement, ¶ 41.b. The second distribution will occur on a *pro rata* basis according to
26  workweeks. In the event of such a redistribution, the additional settlement administration costs will
   be deducted from the total amount of uncashed checks prior to the redistribution.
27  [15] The finalized terms of the release are set forth in the Addendum to Settlement Agreement (¶ B.17)
   and in the Notice of Settlement (Section 5).
28  [16] The Releasees are defined as OCC, Comcast, and their affiliated entities and persons. Settlement
   Agreement, ¶ 2.bb.

1    predicate alleged in the TAC. These waived claims include claims for the alleged failure to provide

2    meal and rest breaks, failure to compensate for all hours worked, failure to pay minimum, straight

3    time, overtime, and double time wages or any other form of compensation, failure to pay all wages

4    due upon termination, failure to provide timely and compliant itemized wage statements, failure to

5    properly compensate piece-rate workers for rest and recovery periods and other nonproductive time,

6    failure to maintain accurate records, failure to reimburse for necessary business expenses, engaging

7    in unfair and unlawful business practices, statutory and civil penalties, other penalties, related tort,

8    contract, liquidated, and punitive damages claims, claims for interest, attorneys' fees, litigation and

9    other costs, expenses, restitution, and equitable and declaratory relief. The release period for PAGA

10   claims runs from November 14, 2015 through December 21, 2018.

11          Washington Class Members release any and all claims against Releasees through December

12   21, 2018 that were or could have been asserted under Washington law based on the identical factual

13   predicate alleged in the TAC. These waived claims include claims for the alleged failure to pay

14   minimum, straight time, overtime, and double time wages or any other form of compensation, failure

15   to authorize and permit and/or make available meal and rest periods, failure to pay wages upon

16   termination, engaging in unfair and unlawful business practices, statutory and civil penalties, other

17   penalties, related tort, contract, liquidated, and punitive damages claims, claims for interest,

18   attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief.

19          The Settlement Award checks will also include release language on the back of each check

20   that provides brief information about the case and the nature of the release. *See* Addendum to

21   Settlement Agreement, ¶ C.19. The release language is tailored to whether the Technician is a FLSA

22   Opt-In Plaintiff or solely a Member of the California or Washington Classes. In particular, it explains

23   that Rule 23 Class Members will release their FLSA claims by signing or cashing their check, to the

24   extent that they are not FLSA Opt-In Plaintiffs. Lastly, the Named Plaintiffs also agree to a general

25   release of any and all claims against the Releasees. Settlement Agreement, ¶ 20

26   **V.    ARGUMENT**

27          **A.    Ninth Circuit Precedent Favors and Encourages Class Settlements.**

28          A certified class action may not be settled without Court approval. *See* Fed.R.Civ.P. 23(e).
     Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed

1   settlement upon a written motion; (2) dissemination of notice of the settlement to all class members;

2   and (3) a final settlement approval hearing at which objecting class members may be heard, and at

3   which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement

4   is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action*

5   *Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed settlement is

6   committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027

7   (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two primary prerequisites

8   before a court may grant certification for purposes of preliminary approval: (1) that the settlement

9   class meets the requirements for class certification if it has not yet been certified; and (2) that the

10  settlement is fair, reasonable, and adequate. Fed.R.Civ.P. 23(a), (e)(2); *Hanlon*, 150 F.3d at 1020.

11      Federal law strongly favors and encourages settlements, especially in class actions. *See*

12  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public

13  interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover,

14  when reviewing a motion for approval of a class settlement, the Court should give due regard to "what

15  is otherwise a private consensual agreement negotiated between the parties," and must therefore limit

16  the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product

17  of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement,

18  taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv.*

19  *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court of Appeals will rarely overturn approval of a

20  class action settlement unless "the terms of the agreement contain convincing indications that the

21  incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the

22  outcome of the negotiations and that the district court was wrong in concluding otherwise." *Staton v.*

23  *Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003).

24      Applying this standard of review to other federal and California wage and hour class actions,

25  this Court has previously approved settlements similar to that reached in this case. *See Guilbaud v.*

26  *Sprint Nextel Corp.*, No. 3:13-CV-04357-VC, 2016 WL 7826649, at *1 (N.D. Cal. Apr. 15, 2016)

27  (granting final approval of a hybrid FLSA and California Rule 23 class action settlement); *Rulli, et*

28  *al. v. Nielsen Co. (U.S.) LLC*, No. 3:14-cv-01835-VC (N.D. Cal. May 21, 2015) (same). In its June

17, 2019 order, the Court preliminarily approved the Settlement with respect to these Class Members. ECF 296. Consistent with the precedent of this Circuit and this Court's own decisions, the Settlement should be finally approved.

### B.    The Court Should Finally Approve the Settlement.

In deciding whether to approve a proposed class action settlement, the Court must find that the proposed settlement is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); *Officers for Justice*, 688 F.2d at 625. Included in this analysis are considerations of: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the Court should find that the Settlement is fair, reasonable, and adequate, and grant final approval to the Settlement.

### 1.    The best practicable notice was provided to the Class Members in accordance with the process approved by the Court.

Pursuant to the Court's June 17, 2019 Preliminary Approval Order, CPT Group sent the Court-approved Notice of Settlement to the Class Members in accordance with the terms of the Settlement. Cottrell Decl. ¶¶ 34-36. The notice was sent via U.S. Mail and email, and the Parties created a case website where Class Members can view the Settlement and accompanying court filings. *Id.*

Notice of a class action settlement is adequate where the notice is given in a "form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). The notice should be the best "practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993).

1    Sending individual notices to settlement class members' last-known addresses constitutes the

2    requisite effort. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *Langford v.*

3    *Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved

4    repeatedly as sufficient notice of a proposed settlement.").

5           The Settlement Administrator followed the procedures set forth in the Court-approved notice

6    plan. Reasonable steps have been taken to ensure that all Class Members receive the Notice. *See*

7    *supra* Section III.G. Ultimately, of the 4,502 notices distributed via U.S. Mail, 98 notices (2.18%) are

8    undeliverable following skip-tracing and other techniques. Cottrell Decl. ¶ 39. Moreover, the

9    dissemination of notice via email in addition to U.S. Mail increases the likelihood that Class Members

10   successfully receive the notice. *Id.* Accordingly, the notice process satisfies the "best practicable

11   notice" standard.

12               **2.        The terms of the Settlement are fair, reasonable, and adequate.**

13          In evaluating the fairness of a proposed settlement, courts compare the settlement amount

14   with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp.*

15   *Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a

16   fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice*, 688 F.2d at 623; *Vikram*

17   *v. First Student Mgmt., LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169, at *5 (N.D. Cal. Mar. 7,

18   2019) (approving gross settlement amount that represents "30.6% of the California labor law

19   violations and PAGA penalties"); *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016

20   WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement which represented

21   8.1% of the total verdict value).[17] "Even a small percentage of the maximum possible recovery can

22   be a reasonable settlement. Dollar amounts are judged not in comparison with possible recovery in

23   the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."

24   *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 258 (D. Del. 2002), aff'd, 391 F.3d 516 (3d

25

26   [17] *See also Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17,
     2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v.*

27   *Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross
     settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien*

28   *Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the
     action" is within the range of reasonableness).

1    Cir. 2004).

2    It is equally well-settled that a proposed settlement is not to be measured against a hypothetical

3    ideal result that might have been achieved. *See, e.g.*, *7-Eleven Owners for Fair Franchising*, 85

4    Cal.App.4th 1135, 1150 (2000) (citing *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1242 (9th

5    Cir. 1998) with approval). "Notably, [a court must consider whether] a substantial portion of

6    Defendant's total potential liability exposure would not translate into awards to class members at all.

7    . . . [For example, where] the estimated potential liability is comprised of PAGA penalties, [] these

8    large penalties do not necessarily translate into take-home awards for members of the class…."

9    *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015). Moreover, the Court

10   may consider the defendant's financial resources and ability to pay a larger settlement when deciding

11   whether to approve a class settlement. *See, e.g., Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No. C13-

12   1347 JCC, 2015 WL 11234156, at *4 (W.D. Wash. Dec. 11, 2015) (considering defendants' ability

13   to pay a larger settlement).

14   A review of the Settlement reveals the fairness, reasonableness, and adequacy of its terms.

15   Cottrell Decl. ¶ 62. The Gross Settlement Amount of $7,510,555, resulting in a Net Settlement

16   Amount of approximately $4,633,000, will result in fair and just relief to the Class Members. *Id.* The

17   Gross Settlement Amount represents more than 86% of the approximately $8.7 million that Class

18   Counsel have calculated in unpaid wages that would have been owed to all Class Members if each

19   had been able to prove that he or she worked 2.5 hours off the clock in every workweek during the

20   relevant time period. *Id.* at ¶ 63. Moreover, the $7,510,555 settlement amount represents

21   approximately 17.2% of Defendants' total potential exposure of $43.6 million. *Id.*

22   The average individual Settlement Awards for Class Members are estimated as follows. With

23   respect to California Class Members, the average award is approximately $1,112.86, and the

24   maximum award is approximately $8,409.53. With respect to Washington Class Members, the

25   average award is approximately $797.88, and the maximum award is approximately $2,449.38. *Id.*

26   With respect to Opt-In Plaintiffs who assert FLSA-only claims, the average award is approximately

27   $391.47, and the maximum award is approximately $2,331.44. *Id.* These results are well within the

28   reasonable standard when considering the difficulty and risks presented by pursuing further litigation.

*Id.* at ¶ 64. The final settlement amount takes into account the substantial risks inherent in any class action wage and hour case as well as the specific risks presented here. *Id.; see Officers for Justice*, 688 F.2d at 623.

### 3. The Parties have agreed to distribute settlement proceeds tailored to the Classes and Collective and their respective claims.

In an effort to ensure fairness, the Parties have agreed to allocate the settlement proceeds amongst Class Members in a manner that recognizes that amount of time that the particular Class Member worked for Defendants in the applicable limitations period. The allocation method, which is based on the number of workweeks, will ensure that longer-tenured workers receive a greater recovery. Moreover, the allocation tracks the differences in substantive law and penalty claims, including the limitations period for each claims, by weighting the workweek shares more heavily for work performed in states that have wage and hour laws with protections above and beyond the FLSA. Cottrell Decl. ¶ 66. The allocation was made based on Class Counsel's assessment to ensure that employees are compensated accordingly and in the most equitable manner.[18] *Id.* To the extent that any Class Member is *both* a FLSA Opt-In Plaintiff and a member of the California or Washington Classes, these workers will only receive a recovery based on their workweeks as a California or Washington Class Member. *Id.* at ¶ 67. Such workers will not receive a "double recovery." *Id.*

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979–80, 2011 WL 2204584 at *42. Plaintiffs provide rational and legitimate bases for the allocation method here, and the Parties submit that it should be approved by the Court.

---

[18] Plaintiffs provided a detailed analysis of the workweek weightings, and the underlying factual background and state law protections on which they are based, in their Renewed Motion for Preliminary Approval. *See* ECF 289, III.A to III.C, and ECF 289-3 (Wage Law Chart). Plaintiffs incorporate that analysis by reference.

### 4. The extensive discovery enabled the Parties to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979) ("The Court therefore finds that plaintiffs have been represented by competent, experienced counsel, who, after a great deal of discovery and complete trial preparation, reasonably concluded that … the class would be better served by a fair settlement than by a costly, lengthy trial…."); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008).[19] In *Boyd*, the court repeatedly looked to the "massive" amount of discovery conducted as a factor counseling in favor of a disputed class action settlement. 485 F.Supp. at 626. Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive formal and informal discovery that has enabled both sides to assess the claims and potential defenses in this action. Cottrell Decl. ¶¶ 19-21, 68. The Parties were able to accurately assess the legal and factual issues that would arise if the case proceeded to trial. *Id.* at ¶ 68. Class Counsel also relied on their substantial litigation experience in similar wage and hour class and collective actions. *Id.* at ¶¶ 5-7, 68. Class Counsel's liability and damages evaluation was premised on a careful and extensive analysis of the effects of Defendants' compensation policies and practices on Class Members' pay. *Id.* at ¶ 69. Ultimately, facilitated by mediator Jeff Ross, the Parties used this information and discovery to fairly resolve the litigation. *Id.* at ¶¶ 26, 69.

### 5. While Plaintiffs recognize the strength of their claims, there are substantial risks in proceeding with the litigation.

"Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Eddings v. Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *3 (C.D. Cal. June 13, 2013). The monetary value of the Settlement represents a fair compromise given the risks and uncertainties posed by continued litigation. Cottrell Decl. ¶ 70. If this case were to go to trial as a class and collective

---

[19] Notably, *Lewis* held that class counsel's "actions in compelling discovery demonstrate their commitment to achieving the common cause for all class members." 2008 WL 4196690, at *3.

action (which Defendants would vigorously oppose if this Settlement Agreement were not approved), Class Counsel estimates that fees and costs would exceed $5,000,000.00. *Id.* at ¶ 71. Litigating the class and collective action claims would require substantial additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of voluminous documentary evidence and the preparation and analysis of expert reports. *Id.*

Recovery of the damages and penalties previously referenced would also require complete success and certification of all of Plaintiffs' claims, a questionable feat in light of developments in wage and hour and class and collective action law as well as the legal and factual grounds that Defendants have asserted to defend this action. *Id.* at ¶ 72. Plaintiffs face risk that the Court would decline to certify the Classes for at least some claims. *Id.* at ¶ 73. Certification of off-the-clock work claims is complicated by the lack of documentary evidence and reliance on employee testimony, and Plaintiffs would likely face motions for decertification as the case progressed. *Id.*

Plaintiffs would encounter difficulties in moving for certification and proving their claims on the merits in part due to the fact that key Class Member compensation documents were kept in paper format. *Id.* at ¶ 74. For example, Class Member timecards and the work orders that controlled the services performed were largely written by hand and heavily edited. *Id.* Plaintiffs would face logistical difficulties in reviewing and analyzing the massive amounts of hard copy records. *Id.*

Plaintiffs also recognize the impact of the Court's order granting Defendants' motion to compel arbitration. *Id.* at ¶ 75. Although certain Class Members and claims, including the PAGA claims, would remain in the federal forum, the underlying FLSA and state law claims for thousands of Class Members are compelled to individual arbitration. *Id.* Though Plaintiffs' Counsel are prepared to litigate hundreds of individual arbitrations, and the PAGA claims continue on a representative basis, the arbitration order affects the prospects for recovery for the Classes and Collective. *Id.*

Moreover, Plaintiffs considered the risk that the Court would, in the end, decline to find Comcast liable as a joint employer. *Id.* at ¶ 76. Though OCC would still be liable in the event of a favorable outcome for Plaintiffs, a finding that Comcast is a joint employer would ensure that the

Class Members would be able to obtain full recovery, particularly in the event of a large award.[20] *Id.* Though Plaintiffs successfully amended their complaint to aver claims of liability against Comcast on a joint employer basis, the issue would be heavily contested at summary judgment and/or trial. *Id.* If Comcast is found not to be a joint employer, the value of the case would be lessened, and Plaintiffs had to consider this risk. *Id.* Furthermore, during the mediation process OCC produced confidential financial information to Plaintiffs' counsel in support of its contention of an inability to pay a significant portion of damages. *Id.* at ¶ 77. If the Court declined to find Comcast liable as a joint employer, and OCC did not have an ability pay damages, Plaintiffs risked receiving no recovery. *Id.*

This risk was substantial, particularly given that district courts around the country have determined that cable providers such as Comcast and Time Warner were not joint employers of a third party vendor's cable installation technicians. *Id.* at ¶ 78; s*ee Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683 (D. Md. 2010) (holding that Comcast was not a joint employer of cable technicians who worked for a cable installation contractor); *see also Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 131 (S.D.N.Y. 2011) (granting Time Warner Cable's motion for summary judgment and holding that Time Warner was not a joint employer of installation technicians who worked for a vendor contracted by Time Warner to provide cable installation services); *Thornton v. Charter Commc'ns, LLC,* Case No. 4:12CV479 SNLJ, 2014 WL 4794320, at *16 (E.D. Mo. 2014) (granting Charter Cable's motion for summary judgment and holding that Charter was not a joint employer of a third party vendor's cable installation technicians).

In contrast to litigating this suit, resolving this case by means of the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Cottrell Decl. ¶ 79. Such a result will benefit the Parties and the court system. It will bring finality to over two years of litigation, and will foreclose the possibility of expanding litigation across arbitration and the federal forum.

### 6.    The settlement is the product of informed, non-collusive, and arm's-length negotiations between experienced counsel.

Courts routinely presume a settlement is fair where it is reached through arm's-length bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where

---

[20] *See, e.g., Am. Motorcycle Assn. v. Superior Court*, 20 Cal.3d 578, 590 (1978) (joint and several liability permits an injured person to obtain full recovery even when one or more of the responsible parties do not have the financial resources to cover their liability).

counsel are well-qualified to represent the proposed class and collective in a settlement based on their extensive class and collective action experience and familiarity with the strengths and weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL 1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell Decl. ¶ 80. The Parties participated in two mediations. The second mediation before Jeff Ross, who is a skilled mediator with many years of experience mediating employment matters, was a marathon session that lasted until 11:00 p.m. *Id.* Mr. Ross assisted the Parties in their extensive, continued arm's-length negotiations subsequent to the mediation. *Id.* The Parties then spent weeks negotiating the long form settlement agreement, with several rounds of meet and confer and correspondence related to the terms and details of the Settlement. *Id.* at ¶ 81. Plaintiffs are represented by experienced and respected litigators of representative wage and hour actions, and these attorneys feel strongly that the proposed Settlement achieves an excellent result for the Class Members. *Id.* at ¶¶ 5-7, 82; *see also* Declaration of Sarah R. Schalman-Bergen in Support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs and of Service Awards to Class Representatives (ECF 297-4), ¶¶ 3-7, 12.

### 7.   Class Members approve of the Settlement.

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a factor of great significance. *See Mandujano*, 541 F.2d at 837; *see also In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."). Courts have found that a relatively low percentage of objectors or opt outs is a very strong sign of fairness that factors heavily in favor of approval. *See, e.g., Cody v. Hillard*, 88 F.Supp.2d 1049, 1059-60 (D.S.D. 2000) (approving the settlement in large part because only 3% of the apparent class had objected to the settlement).

To date, ***no Class Members have objected to the Settlement, and no Class Members have opted out of the Settlement***. *See* Cottrell Decl. ¶ 83. In addition, all five Class Representatives support the terms of the Settlement. *Id.*; *see also* Declarations of Plaintiffs in Support of Service Awards (ECF 297-6 – 297-10). This shows widespread support for the Settlement among Class Members, and gives

rise to a presumption of fairness.

### C. The Class Representative Service Awards are Reasonable.

In approving the Settlement, the Court must determine whether "the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In addition to the terms and details of the Settlement discussed above, the Settlement also establishes service awards of up to $15,000.00 for Plaintiff Soto and up to $10,000.00 for Plaintiffs Stricklen, Fondrose, Ortega, and Farias. Plaintiffs set forth their arguments in support of the service awards in full in their Motion for an Award of Attorneys' Fees and Costs and of Service Awards to Class Representatives (ECF 297). Plaintiffs do not repeat those arguments here. The Court should grant final approval to the requested service awards as reasonable.

### D. The Requested Attorneys' Fees and Costs are Reasonable.

Likewise in evaluating the Settlement, the Court should evaluate Plaintiffs' request for attorneys' fees and costs pursuant to the terms of the Settlement. In their fee motion, Class Counsel request up to one-third of the Gross Settlement Amount, for a total of $2,500,000, plus reimbursement of litigation costs of $207,361.46. Cottrell Decl. ¶ 42. Plaintiffs set forth their arguments in support of the fee and costs request in full in their Motion for an Award of Attorneys' Fees and Costs and of Service Awards (ECF 297). Plaintiffs do not repeat those arguments here. The Court should grant final approval to the requested fees and costs as reasonable.

### E. The Court Should Finally Certify the California and Washington Classes.[21]

In its June 17, 2019 Preliminary Approval Order, the Court granted conditional certification

---

[21] With regards to the Collective, this Court has already granted "Approval of the terms and conditions contained in the Amended Settlement as to the Collective" and "confirm[ed] its August 31, 2017 Order, conditionally certifying the Collective." ECF 296, ¶ 4. In that prior August 31, 2017 Order, the Court concluded that Plaintiffs have satisfied their burden of making substantial allegations and a modest factual showing Technicians were subject to a common practice or policy that violated the FLSA. Dkt. No. 127, p. 2. In final certification of and FLSA collective, the court makes a determination about whether the plaintiffs are similarly situated by weighing such factors as "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations. *See Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) The same rationale for approving the collective at preliminary approval applies here, including, as set forth in Section E, *infra*, that Settlement Class Members are all Technicians with common issues, that defenses are not individualized, and that the purposes of the FSLA are carried out by providing

of the provisional California and Washington Classes. ECF 296. Now that notice has been effectuated, the Court should finally certify these classes in its Final Approval Order. The California and Washington Classes meet all of the requirements for final approval as set forth below.

### 1. The Classes are numerous and ascertainable.

First, the numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed.R.Civ.P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The approximately 3,745 members of the California Class and 419 members of the Washington Class render the each class so large as to make joinder impracticable. Cottrell Decl. ¶ 84.

### 2. Plaintiffs' claims raise common issues of fact or law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Plaintiffs "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id.*

Common questions of law and fact predominate here, satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaint. Cottrell Decl. ¶ 85. Defendants have uniform policies applicable to all Technicians. *Id*. Specifically, Plaintiffs allege that Technicians all perform essentially the same job duties—installing Comcast services pursuant to Defendants' standards and requirements. Plaintiffs allege that the wage and hour violations are in large measure borne of OCC's relationship with Comcast and the standardized policies, practices, and procedures that Comcast imposes, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. In particular, the Technicians are subject to the same: hiring and training process; timekeeping, payroll, and compensation policies; meal and rest period policies and practices; and reimbursement

---

Collective Members with certain settlement awards for unpaid wages alleged to be owed. To the extent not already granted, the Court should confirm final certification of the Collective.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

1  policies. *Id*. Plaintiffs' other derivative claims will rise or fall with the primary claims. *Id*. Because

2  these questions can be resolved at the same juncture, Plaintiffs contend the commonality requirement

3  is satisfied for the Classes. *Id*.

### 3. Plaintiffs' claims are typical of the claims of the Classes.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs' claims are typical of those of all other Class Members. Cottrell Decl. ¶ 86. They were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. *Id.* Interviews with Class Members and review of timekeeping and payroll data confirm that the employees throughout California and Washington were apparently subjected to the same alleged illegal policies and practices to which Plaintiffs were subjected. *Id.* Thus, the typicality requirement is also satisfied. *Id.*

### 4. Plaintiffs and Class Counsel will adequately represent the Class.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiffs' claims are in line with the claims of the Classes, and Plaintiffs' claims are not antagonistic to the claims of Class Members. Cottrell Decl. ¶ 87. Plaintiffs have prosecuted this case with the interests of the Class Members in mind. *Id.* Moreover, Class Counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the classes, as the Court recognized when conditionally certifying the FLSA Collective. *Id.* at ¶¶ 5-7; Declaration of Sarah Schalman-Bergen in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement (ECF 284-3), ¶¶ 1-4, Ex. 1.

### 5. The Rule 23(b)(3) requirements for class certification are also met.

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available

1   methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under

2   Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case and

3   'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'"

4   *Wang,* 737 F.3d at 545.

5          Here, Plaintiffs contend the common questions raised in this action predominate over any

6   individualized questions concerning the California and Washington Classes. Cottrell Decl. ¶ 87. The

7   Classes are entirely cohesive because resolution of Plaintiffs' claims hinge on the uniform policies

8   and practices of Defendants, rather than the treatment the Class Members experienced on an

9   individual level. *Id.* at ¶ 88. Further, Plaintiffs contend the class action mechanism is a superior

10  method of adjudication compared to a multitude of individual suits, because it involves thousands of

11  workers with very similar, but relatively small, claims for monetary injury. *Id.* at ¶ 94. If the Class

12  Members proceeded on their claims as individuals, their many individual suits would require

13  duplicative discovery and duplicative litigation, and each Class Member would have to personally

14  participate in the litigation effort to an extent that would never be required in a class proceeding. *Id.*

15  Thus, the class action mechanism would efficiently resolve numerous substantially identical claims

16  at the same time while avoiding a waste of judicial resources and eliminating the possibility of

17  conflicting decisions from repetitive litigation and arbitrations. *Id.*

18         The issues raised by the present case are much better handled collectively by way of a

19  settlement. *Id.* at ¶ 95. Manageability is not a concern in the settlement context. *Amchem Prod., Inc.*

20  *v. Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality,

21  ensures that workers receive redress for their relatively modest claims, and avoids clogging the legal

22  system with cases that could easily be kept in this proceeding. *Id.* Accordingly, class treatment is

23  efficient and warranted, and the Court should finally certify the California and Washington Classes

24  for settlement purposes.

25  **VI.    CONCLUSION**

26         For the foregoing reasons, Plaintiffs respectfully request that this Court grant this Motion for

27  final approval and enter the accompanying proposed Order.

28

1 | Date: September 12, 2019

Respectfully submitted,

2

*/s/ Carolyn Hunt Cottrell*
Carolyn Hunt Cottrell
3
David C. Leimbach
Scott L. Gordon
4
SCHNEIDER WALLACE
COTTRELL KONECKY
5
WOTKYNS LLP

6

Shanon J. Carson (*pro hac vice*)
7
Sarah R. Schalman-Bergen (*pro hac vice*)
BERGER MONTAGUE PC
8

9 | Attorneys for Plaintiffs and the Settlement Classes

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC

1

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing document(s) with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system on September 12, 2019.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.

/s/ *Carolyn Hunt Cottrell*
Carolyn Hunt Cottrell

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Soto, et al. v. O.C. Communications, Inc., et al.,* Case No. 3:17-cv-00251-VC